IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **TEAL PEAK CAPITAL, LLC;**<br><br>Plaintiff,<br><br>v.<br><br>**ALAN BRAM GOLDMAN;**<br><br>Defendants. | Civil No. 3:20-cv-1747<br><br>BREACH OF CONTRACT; SPECIFIC PERFORMANCE OF CONTRACT; REIMBURSEMENT OF FUNDS, COSTS AND EXPENSES |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW**, Plaintiff **Teal Peak Capital, LLC** ("TPC" and/or "Plaintiff") through the undersigned attorney, and respectfully alleges, states, and prays as follows:

### I.    NATURE OF ACTION

1. This action arises out of the captioned Defendant's blatant breach of his contractual obligations towards TPC, by negligently, willfully and in bad-faith failing to sell TPC certain property, as will be described herein, the purchase of which TPC has the exclusive right in accordance with the contractual agreement between the parties.

2. For the reasons set out above and those hereinafter set forth, TPC respectfully requests this Honorable Court to grant the remedy prayed for in this Complaint.

### II.    THE PARTIES

3. TPC is a limited liability company organized and existing under the laws of the Commonwealth of Puerto Rico. TPC's registered office and mailing address is: 412 Dorado Beach East, Dorado, Puerto Rico 00646.

4. The defendant, **Alan Bram Goldman** ("Goldman" and/or "Defendant") is of legal age, single, and resident of the State of Vermont, U.S.A. Upon information and belief, Goldman's mailing address is: 1014 Terrace St., Montpelier, VT 05602.

### III.    JURISDICTION AND VENUE

5. Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. §1332 because there is complete diversity of citizenship between the Plaintiff (a Puerto Rico limited liability company) and Defendant, a citizen of the State of Vermont, U.S.A. Furthermore, the amount in controversy of the captioned *Complaint*, exclusive of interests and costs, exceeds seventy-five

thousand dollars ($75,000.00).

6. Venue is proper pursuant to 28 U.S.C. §1391, in as much as the real property object of this *Complaint* is located in the Commonwealth of Puerto Rico.

## IV.   GENERAL ALLEGATIONS

7. On October 23, 2020, John-Michael Grzan ("Grzan"), his wife, Namrata Khimani ("Khimani" and together with Grzan, the "Grzan-Khimani"), and Goldman executed an *Option to Purchase Agreement*, whereby Goldman granted to Grzan-Khimani an exclusive option to purchase certain property (the "Option Agreement") located at The Estates #13, Dorado, Puerto Rico 00646 (the "Property"). The Property has a registry description as follows:

> "RUSTIC: Lot located in the North Side Development, Phase One of Dorado Beach Estates, Inc. Ward Higuillar of the Municipality of Dorado, Puerto Rico, which is described in the inscription plan of said North Side Development, Phase One with number, area and boundaries that are hereinafter related: Lot number Thirteen (13) with an area of Five Thousand Three Hundred Ninety Nine square meters and Four Thousand Seven Hundred Thirty One Ten-Thousands of a Square Meter (5,399.4731); bounding on the South, with an interior Street of the North Side of the Development, Phase One Dorado Beach Estates, Inc. on the North, with lots number Seventeen (17) and Eighteen (18) of the said North Side Development, Phase One, on the East, with Lot number Twelve (12) of the said North Side Development, Phase One; and on the West, with lot number Fourteen (14) of the said North Side Development, Phase One."
>
> The Property is recorded in the Registry at page 123 of volume 46 of Dorado, property number 1,746.

8. Grzan-Khimani subsequently designated TPC as their assignee to the *Option Agreement*, as TPC would be purchasing the Property.

9. TPC includes a true, accurate, correct, and legible copy of the *Option Agreement* as **Exhibit 1** of this Complaint and incorporates it by reference herein, making it part of the Complaint for all legal, procedural, and/or evidentiary purposes.

10. Pursuant to the *Option Agreement,* the purchase price of the Property was the total sum of **THREE MILLION ONE HUNDRED FIFTY THOUSAND DOLLARS ($3,150,000.00)**, payable as follows: (i) initial deposit of **$200,000.00** (the "Deposit"), payable by check, money order or wire transfer, deposited in an escrow account held by The Title Security Group, LLC (the "Escrow Agent"), and (ii) the remaining balance of **$2,950,00.00** payable to Defendant on the closing date (the "Purchase Price"). *See,* **Exhibit 1,** Option Agreement, ¶¶3, 5.

11. Additionally, the *Option Agreement* provides that TPC had thirty (30) calendar days from the date of signing the *Option Agreement* –or until November 23, 2020– to exercise the option

(the "Exercise Period"). *See,* **Exhibit 1,** Option Agreement, ¶5. However, if closing was not possible within the Exercise Period due to unexpected delays, TPC could extend the *Exercise Period* for an additional thirty (30) days (the "Extension Period") by paying to Defendant, before the expiration of the *Exercise Period*, another deposit for the amount of $600,000.00 in addition to the *Deposit*, for an aggregate amount of **$800,000.00** (the "Extension Payment"), and pay the remaining balance of **$2,350,000.00** at closing. *See,* id. The *Extension Payment* would be applied to the *Purchase Price* and would be used by Defendant to purchase a land located in Vermont, U.S.A. *See,* id.

12. Further, pursuant to Clause 5 of the *Option Agreement*, and because the *Purchase Price* was to be used by Defendant for funding a time-sensitive project, the parties agreed that the *Option Agreement* was "subject to the good faith belief of the title company and attorney that closing within the given time frame is reasonable[,]" and therefore both TPC and Defendant agreed to **"make best and reasonable efforts to provide needed material and take reasonable action necessary to close in a timely manner."** *See,* **Exhibit 1,** Option Agreement, ¶5.

13. Since the signing of the *Option Agreement*, TPC exercised its exclusive right of option and actively and diligently made multiple efforts to purchase the Property and close within the *Exercise Period*.

14. However, throughout the duration of the *Exercise Period* –during which TPC was ready and able to close on the Property– Defendant refused to comply with his obligations under the *Option Agreement* by failing to provide TPC with the necessary documentation for closing.

15. Because of Defendant's seemingly blatant efforts to *not* close within the *Exercise Period*, TPC –**prior** to the expiration of such– wired the *Extension Payment* to the *Escrow Agent*, therefore extending its exercise option for an additional thirty (30) days –**or until December 23, 2020** (the "Closing Date"). Among these efforts to delay were the failure by Defendant to take proper and timely action to ensure the closing of the sale of the Property within the original *Exercise Period* –that is, by November 23, 2020.

16. On November 24, 2020, the *Escrow Agent* subsequently wired the *Extension Payment* to Defendant, who is still in possession of said funds to this day.

17. Since then, in full compliance with its obligations under the *Option Agreement*, TPC has taken all the necessary steps in order to close the purchase of the Property on or before the *Closing Date*, with barely any response from Defendant to move forward.

18.     Due to Defendant's unresponsiveness, on December 18, 2020, TPC sent Defendant a letter via certified mail and electronic mail, stressing to Defendant of the *Closing Date* and readiness of all the required documents as well as of the closing attorney having confirmed his availability since December 11, 2020, and thereby requested Defendant confirm that he will be ready to finalize the purchase of the Property on the *Closing Date* (the "December 18 Letter").

19.     TPC includes a true, accurate, correct, and legible copy of the *December 18 Letter* as **Exhibit 2** of this *Complaint* and incorporates it by reference herein, making it part of the *Complaint* for all legal, procedural, and/or evidentiary purposes.

20.     Despite all of TPC's efforts to purchase the Property in accordance with the *Option Agreement*, Defendant has refused to cooperate and to comply with his contractual obligations, essentially refusing to sell the Property to TPC, without any legal nor justifiable explanation.

21.     To this day, Defendant is still in possession of the *Extension Payment* made by TPC, and has undisputedly failed to make his "best and reasonable efforts to provide needed material and take reasonable action necessary to close in a timely manner", in complete violation of his obligations under the *Option Agreement.*

22.     Clause 15 of the *Option Agreement* states that in the event Defendant "fails to proceed with the closing of the sale of the Property pursuant to the terms and conditions contained herein" after TPC exercised the right of option granted, TPC "shall be entitled to receive back the Option Fee and pursue any equitable remedies under law." *See,* **Exhibit 1,** Option Agreement, ¶15.

### V.     FIRST CAUSE OF ACTION: BREACH OF CONTRACT

23.     TPC incorporates by reference and alleges herein each and every averment set forth in paragraphs 1 to 22.

24.     Defendant has failed to comply with his obligations under the *Option Agreement* by refusing to cooperate and make diligent and reasonable efforts to close on the purchase of the Property, causing both the *Exercise Period* and the *Extension Period* to lapse at the sole and exclusive fault of Defendant.

25.     TPC, in turn, has fully complied with its obligations under the *Option Agreement* and has made multiple good-faith, diligent efforts to try to close on the purchase of the Property by the *Closing Date*, and within the *Exercise Period* and the *Extension Period*.

26. As a result of Defendant's lack of diligence and seemingly deliberate conduct, TPC has not been able to purchase the Property for which it exercised its right to do so under the *Option Agreement*, and the sale of which Defendant was contractually obligated to do.

27. An option contract, as defined by the Supreme Court of Puerto Rico, is one whereby a party, known as the optionor or promisor, grants to the other, the optionee, "for a fixed term and under certain conditions, **the exclusive power of deciding whether to execute a principal contract."** Mega Media Holdings, Inc. v. Aerco Broad. Corp., 852 F. Supp. 2d 189, 200 (D.P.R. 2012) (emphasis added) (internal citations omitted). That is, an option contract is of unilateral nature, "inasmuch as the optionee is under no obligation to purchase, while the prom[isor] has the obligation to sell to the optionee if the latter so decides." S.L.G. Irizarry v. S.L.G. Garcia, 155 D.P.R. 713, 722, 2001 WL 1555664, __ P.R. Offic. Trans. ___ (2001).[1]

28. As such, TPC requests this Honorable Court to order the specific performance of the *Option Agreement* compelling the Defendant to execute the sale of the Property under the terms of the *Option Agreement*, and to enter judgment accordingly.

## VI.   SECOND CAUSE OF ACTION: REIMBURSEMENT OF EXTENSION PAYMENT, COSTS AND EXPENSES

29. TPC incorporates by reference and alleges herein each and every averment set forth in paragraphs 1 to 28.

30. Despite TPC's full compliance and best efforts to proceed with the closing of the Property, Defendant has breached his obligations under the O*ption Agreement* by failing to proceed with such after TPC exercised its right of option.

31. TPC has the right to demand Defendant the specific performance of the *Option Agreement*, inasmuch as Defendant has a contractual obligation to sell the Property to TPC once the option was exercised.

32. Alternatively, in the event that specific performance is impossible, Defendant is obligated to return to TPC the *Extension Payment*, in accordance with Clause 15 of the *Option Agreement*.

---

[1] For reasons unknown, the citation for the official translation is not available on Westlaw, though the English translation is. A true and exact copy of the Opinion is attached herein as **Exhibit 3**.

33. Further, TPC has incurred in significant costs and expenses in putting together all the necessary documentation in exercising its right of option for purchasing the Property, the sale of which has not been closed due to the exclusive fault of Defendant and his breach of his contractual obligations.

34. Therefore, in the event that specific performance is impossible, and in addition to the return of the *Extension Payment*, TPC hereby requests this Honorable Court to order Defendant to reimburse TPC for all the actual costs and expenses incurred in the preparation and coordination for the closing of the sale of the Property that was never consumed due to the exclusive fault of Defendant.

## VII. PRAYER

**WHEREFORE** TPC respectfully demands judgment as follows:

a. Determine that Defendant breached his obligations under the *Option Agreement*;

b. Order Defendant the specific performance of the *Option Agreement* therefore compelling the sale of the Property to TPC;

c. Enter an Order prohibiting the Defendant from alienating the Property to any third party, the formal request of which will be filed promptly;

d. Alternatively, that in the event that specific performance is impossible, Order Defendant to reimburse TPC: (i) the *Extension Payment* in accordance with Clause 15 of the *Option* Agreement; and (ii) the actual costs and expenses incurred in the preparation and coordination for the closing of the sale of the Property that was never consumed due to the exclusive fault of Defendant;

e. Award TPC all reasonable costs and attorneys' fees incurred in the filing of the instant *Complaint;*

f. Grant all of TPC's claims and any additional remedy at law or equity pursuant to the facts pled herein.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 24th day of December 2020.

[SIGNATURE PAGE FOLLOWS]

**Complaint**
Teal Peak Capital, LLC v. Alan Goldman
Civil No. 3:20-cv-_____
Page 7 of 7

**Ferraiuoli** LLC

Attorneys for Teal Peak Capital, LLC
PO Box 195168
San Juan, PR 00919-5168
Tel.: 787.766.7000
Fax: 787.766.7001

*/s Jean G. Vidal-Font*
Jean G. Vidal-Font
USDC-PR No. 227811
Email: jvidal@ferraiuoli.com