S.L.G. Irizarry v. S.L.G. García, 2001 JTS 164 (2001)
155 D.P.R. 713, 2001 TSPR 161, P.R. Offic. Trans.

Case 3:20-cv-01747-CVR   Document 1-3   Filed 12/24/20   Page 1 of 7

**EXHIBIT 3**

[Texto original en espanol](#)

2001 JTS 164, 155 D.P.R. 713, 2001 WL 1555664 (P.R.), 2001 TSPR 161, P.R. Offic. Trans.

Harold D. IRIZARRY López,
Nelly Ivette Talavera Rodríguez,
and the Conjugal Partnership
constituted by both, Respondents

v.

Carlos T. GARCÍA Cámara,
Frances Joan Tramal Gutiérrez,
and the Conjugal Partnership
constituted by both, Petitioners.

En El Tribunal Supremo De Puerto Rico.
No. CC-2000-564.
Nov. 27, 2001.

**Certiorari**

Justice RIVERA PÉREZ delivered the opinion of the Court.

Petitioners have resorted to this Court seeking certiorari of a judgment of the Circuit Court of Appeals that affirmed another judgment rendered by the Court of First Instance. Both courts had concluded that the parties, through an "option to purchase" contract, had agreed that the buyer would continue to pay the mortgage debt on the property in question, but that said obligation did not release the seller from the originally constituted obligation to pay.

**I**

Doctor Carlos T. García Cámara was the sole owner of a house located in Punta Arenas, within the Municipality of Cabo Rojo. At the time, the physician lived in a rented apartment at Villa Taína, in Boquerón, within that same municipality, and was in the process of building a new house.[1] Attorney Harold Irizairy López was interested in buying a summer house. As he was passing one day through the Punta Arenas sector, he saw that Dr. García Cámara's residence had a "FOR SALE" sign and contacted him.[2] The ??

They met at Dr. García Cámara's office, located in the Municipality of Cabo Rojo. There, they agreed that the sale price would be $150,(00 and that they would sign an "option to purchase" contract. They also stipulated that on he day on which the contract was to be signed, Atty. Irizarry López would pay $5,000.[4] Said attorney requested a copy of the deed and a certification of liens and encumbrances, since the property was encumbered by several mortgages.[5] According to the agreement, the buyer promised to cancel the mortgage liens and the seller promised to pay attorney and notarial fees, as well as the registration fees resulting from the transaction. It was further agreed that *the existing mortgage to H.F. Mortgage would be assumed or pa id by the buyer.*[6]

The parties signed the "option to purchase" contract on April 1, 1993. Present were the parties and a real estate broker surnamed Del Toro. Several changes to the contract were effected during the meeting, including a hike i n the sale price to $152,000, an acknowledgement that the $5,000 deposit would be credited against the sale price, and the establishment of a 30-day term for signing the public deed of purchase and sale.[7] Moreover, the seller promised to pay land taxes up to the day on which the public deed of purchase and sale was to be signed, and the buyer agreed to accept the terms of the existing lease contract on the property to be bought.[8]

The fifth contract clause stipulated the following:

———— FIFTH; The mortgage liens at the time of signing the Purchase and Sale Deed shall be assumed and/or paid by THE PARTY OF THE SECOND PART [the Buyer]. Said mortgage liens si all be deducted from the sale price.[9]

The buyer was seeking a loan to pay the totality of the mortgage debt on the property, and the balance of the price would be given to the seller. Although the contract signed by the parties was entitled "Option to Purchase," is terms, as we will explain further on, do not meet the requirements for that type of contract, but do establish that a purchase and sale contract was perfected and that the corresponding public deed would be executed at a later time.[10]

The buyer did not know whether the loan he was seeking would be approved before the date accorded for signing the public deed of purchase and sale.[11] The parties postponed the date of execution of the purchase and sale deed until May 15, 1993, for reasons of travel and because the documents required from the seller in order to request the loan had not been delivered.[12] Furthermore, the buyer sent by certified

Case 3:20-cv-01747-CVR   Document 1-3   Filed 12/24/20   Page 2 of 7

S.L.G. Irizarry v. S.L.G. García, 2001 JTS 164 (2001)
155 D.P.R. 713, 2001 TSPR 161, P.R. Offic. Trans.

mail an additional $5,500 as deposit; this sum, added to the previously delivered amount, totaled $10, 500.[13]

The buyer faxed to the seller a draft of the purchase and sale deed, which set the sale price at $125,000 because $27,000 would be delivered in cash. The document also provided that the buyer would retain $67,145 from the sale price *"for payment in due time of the mortgage encumbering the property,"*[14] The seller informed the buyer that he did not agree with the fact that the buyer was not formally; assuming the mortgage. This created an impasse between the parties, and the purchase and sale deed was not executed.[15]

On May 13, 1993, the buyer sued the seller for breach of contract and damages. This notwithstanding, the seller offered the buyer an extension of the previously executed contract. Said offer was contingent on the execution of the public deed of purchase and sale within 15 days following the date on which the extension was signed, and on his release by H.F. Mortgage from the existing mortgage. Since the offer was not accepted, the seller then made a new offer under which the buyer would pay all notarial expenses, and he would be released from the mortgage to H.F. Motgage.[16] Finally, Dr. García Cámara sold the property to other persons for $120,000, as shown in public deed of purchase and sale No. 809, executed in Mayaguez, Puerto Rico, before Notary Roberto M. García Rullán.[17]

On November 12, 1999,[18] the Court of First Instance rendered judgment for plaintiff in the action he had filed against Dr. García Cámara and, consequently, ordered the latter to pay $10,500 to Atty. Irizarry López. The Court of First Instance concluded that the true intent of the contracting parties was that Atty. Irizarry López would continue paying the mortgage, while Dr. García Cámara would continue to be bound by H.F. Mortgage.

Aggrieved by this decision, Dr. García Cámara appealed to the Circuit Court of Appeals on February 18, 2000. On April 28, 2000, the plaintiff of record filed an "opposition to the appeal." The intermediate appellate court rendered judgment on May 16, 2000, and a copy of the notice of said judgment was filed in the record of the case on May 23, 2000. The court affirmed the judgment rendered by the Court of First Instance after concluding that, according to the findings of fact drawn by the Court of First Instance, the judgment below was correct at law and should not be disturbed because appellant had not placed the court in a position to disturb the weighing of evidence.

Aggrieved by said decision, the defendant of record has come to this Court on certiorari, assigning the following errors to the Circuit Court of Appeals:

### FIRST ERROR

The [h]onorable Circuit Court of Appeals, Regional Circuit IV of Aguadilla and Mayagüez, Panel I, erred in the following:
> The [h]onorable Circuit Court of Appeals resolved our appeal on the grounds that we contested the weighing of the evidence and failed to address the issues of strict law raised therein.

### SECOND ERROR

The [h]onorable Circuit Court of Appeals erred in f riling to abide by the doctrine in awarding damages for mental anguish and suffering in a breach of contract case.[19]

The petition was perfected, and we are ready to decide.

### II

Before discussing the errors assigned by petitioner, we must determine the nature of the contract executed by the parties. This is absolutely necessary in view of the fact that the parties entitled the contract an "option to purchase," but its content and the transactions between the parties reveal that the legal transaction perfected here was a purchase and sale. It is important to bear in mind the true nature of the contract between the parties, since this will dictate the legal consequences and, therefore, the result of our analysis.

Petitioner argues that the contract they signed was an option to purchase contract. This position was upheld by the Court of First Instance and he Circuit Court of Appeals. Now then, did the parties actually sign an option to purchase contract? We do not believe so.

[1-2] The option to purchase contract is not regulated by the Civil Code, but this jurisdiction has recognized its existence.[20] It is a consensual contract through which one party (promisor) grants the other party (optionee) the exclusive right to unilaterally decide whether to purchase specific real property belonging to the promisor.[21] This power

Case 3:20-cv-01747-CVR Document 1-3 Filed 12/24/20 Page 3 of 7

S.L.G. Irizarry v. S.L.G. García, 2001 JTS 164 (2001)
155 D.P.R. 713, 2001 TSPR 161, P.R. Offic. Trans.

must ?? toward the eventual execution of a purchase and sale contract.[23] Its essential elements are: (1) the optionee is granted the power to unilaterally decide whether to execute the principal (purchase and sale) contract without any obligation on his or her part; (2) this grant of power is exclusive in nature; (3) a term is set for exercising the option; and (4) there is no other condition than the will of the optionee.[24] We can infer from these factors that although the option to purchase is a consensual contract, it as unilateral, inasmuch as the optionee is under no obligation to purchase, while the prom ?? has the obligation to sell to the optionee if the latter so decides.

Let us examine the contract executed by the parties of record. The first test that refutes the allegation that the contract signed by the parties was an option to purchase is that it did not grant respondent the exclusive power to decide whether he wanted to purchase the real property in question. Neither was a term set for said party to exercise that power. The term set was for executing and signing the corresponding public deed of purchase and sale. Through the agreement signed by the parties of record, petitioner and respondent were bound to each other. The former was obliged to sell, and the latter to buy the real property involved in the contract. We must perforce conclude that they did not execute an option to purchase contract, inasmuch as the contract executed by them does not meet this Court's requirements for that type of legal transaction.

What then was the legal transaction executed by the parties? We believe that it was a purchase and sale contract.

[3] Civil Code sec. 1334[25] provides: "By a contract of purchase and sale one of the contracting parties binds himself to deliver a specified thing and the other to pay a certain price therefor in money or in something representing the same." Likewise, Civil Code sec. 1213[26] provides that for a contract to be valid, three elements must concur: consent, object, and cause [consideration]. The contract executed by the parties of record contains the elements needed to constitute a purchase and sale contract. Clearly both parties voluntarily consented to bind themselves. The property in question was the object of the contract, and the sale price of $152,000 was the consideration.

[4] The contract executed by the parties is a purchase and sale contract because through it, Dr. García Cámara bound himself to sell a specific thing (the real property), and Atty. Irizarry López bound himself to pay $152,000 as consideration. The parties executed a purchase and sale contract in keeping with the definition of our Civil Code. We cannot lose sight of the fact that "[c]ontract[s] exist[] from the moment one or more persons consent to bind himself or themselves, with regard to another or others, to give something or to render some service."[27]

The parties here executed a purchase and sale contract and set a term to complete the formality of executing the corresponding public deed. This, however, did not affect the validity of said contract. In *Soto v. Rivera,* 144 D.P.R. 500 [44 P.R. Offic. Trans. _____ ] (1997), we addressed a similar situation and held that the parties had executed a purchase and sale contract and had left pending the formalities of executing the corresponding public documents because these could not then be signed at the time. The wording of the contract at issue here clearly shows, as in the aforecited case, that the parties decided to reciprocally sell and buy; consequently, the purchase and sale contract was perfected.

III

[5] The freedom of contract principle governs in Puerto Rico. It is thus provided in sec. 1207 of our Civil Code,[28] which states the following:

> The contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order.

[6] We have repeatedly held that the contractual intent is limited only by the standards set down in the cited statutory provision.[29]

Civil Code sec. 1210[30] provides:

> Contracts are perfected by mere consent, and from that time they are binding, not only with regard to the fulfilment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law.

[7-8] We have held that contracts have force of law between the parties, who must fulfill what was accorded as long as it does not contravene the law, morals or public order as provided in the cited statute.[31] However, some contracts require interpretation in order to determine the nature of the obligation incurred by the parties. For this reason, the

S.L.G. Irizarry v. S.L.G. García, 2001 JTS 164 (2001)
155 D.P.R. 713, 2001 TSPR 161, P.R. Offic. Trans.

Case 3:20-cv-01747-CVR    Document 1-3    Filed 12/24/20    Page 4 of 7

Puerto Rico Civil Code establishes some provisions for the interpretation of contracts.[32] The first rule provides that the clear wording of the clauses of a contract must be observed when these clearly reflect the intent of the parties. In that respect, Civil Code sec. 1233[33] provides:

> *If the terms of the contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.*
>
> If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail. [Emphasis added.]

The cited statutory provision has been used by this Court in the interpretation of contracts whose clear wording leaves no doubt as to the intent of the parties.[34] In *Marcial v. Tomé,* 101 D.P.R. 522 [44 P.R. Offic. Trans. ____ ] (1997), we held that the clear wording of the contract should be heeded when it unequiovcally reflects the intent of the parties. Despite this statutory provision, however, there are times when it is not possible to determine the intent of the contracting parties through a literal reading of the contract clauses. For such reason, Civil Code sec. 1234[35] provides that the intent of the contracting parties may be judged through their acts, prior, contemporaneous, and subsequent to the perfection of the contract. We have repeatedly acknowledged the usefulness of these tests when construing contracts.[36] However, when construing a contract, one must presuppose fairness, correction and good faith in its wording and construe it in such a manner that leads to results consonant with the contractual relationship as required by ethical standards. In other words, one cannot seek to obfuscate or distort the interpretation of contracts to reach absurd or unfair results.[37]

[9] In *Flores v. Flores Toledo,* 101 D.P.R. 61 [1 P R. Offic. Trans. 91] (1973), we refused to affirm the interpretation given by the Court of First Instance to a lease contract clause because that would lead to an absurd result. Likewise, in *Quiñones López v. Manzano Pozas,* 141 D.P.R. 139 [41 P.R. Offic. Trans. ____ ] (1996), we refused to construe an insurance contract literally because this would result in an injustice and would lead to an incorrect result. Civil Code sec. 1235[38] itself provides the following:

> However general the terms of the contract ma y be, there should not be understood as included therein things and cases different from those with regard to which the persons interested intended o contract.

Moreover, Civil Code sec. 1236[39] provides: "If any stipulation of a contract should admit of different meanings, it should be understood in the sense most suitable to give it effect." Therefore, although one should take into account the intent of the parties when construing contracts, the interpretation must be consonant with the principle of good faith and cannot lead to incorrect, absurd, and unfair results.

IV

The controversy at hand precisely revolves around the interpretation of a clause in a purchase and sale contract. Petitioner alleges that the Circuit Court of Appeals erred in applying the prevailing doctrine on contract interpretation, failed to apply the doctrine on assumption of debt, and wrongly construed the cited contractual clause.

In its fifth clause, the purchase and sale contract states that *the buyer will assume and/or pay* the mortgage liens on the property to be sold at the moment the public deed of purchase and sale is signed. It also states that the buyer would retain and deduct from the sale price the sum necessary to pay said liens.

[10] Clearly what we have here is what is recognized in Puerto Rico as an assumption of debt.[40] This legal concept allows a third party to substitute for the original debtor with regard to an obligation, thus releasing the original debtor from his or her obligation to the creditor.[41] However, for the substitution to be effective, the creditor must consent to it, since his or her credit rights could be seriously affected.[42] Absent the creditor's consent, what we have is a different concept: the s abrogation of a third party in place of the debtor.[43] The subrogation does not extinguish the obligation between the original debtor and his or her creditor; rather, it gives rise to a new relationship between the debtor and the third-party subrogee.[44] The original debtor is liable to the creditor for any default by the third-party subrogee.[45]

Did the parties agree to a formal assumption of the mortgage-secured debt? We believe so. The clear wording of the fifth clause of the purchase and sale contract provides that the buyer will assume and/or pay the mortgage debt that encumbered the property at the time of signing the purchase and sale deed, and that the sum needed for that would be retained from the sale price. This matter cannot be construed in any other way but that the parties agreed to release the seller from any liability to the mortgage creditor.

In fact, the only way to assume a debt is with the consent of the creditor. The opposite would be the subrogation of a third party in place of the original debtor, but leaving intact the original relationship between the debtor and the creditor.

## V

Even though we can dispose of this case by strictly applying the rule discussed above, we shall examine the findings of fact drawn by the Court of First Instance.

[11] In Puerto Rico it is a long-held rule that appellate courts will not disturb the findings of fact drawn by the Court of First Instance unless said court is shown to be biased, prejudiced or partial.[46] We have held that, as a general rule, this Court will not disturb the findings drawn by that court, especially when no stipulated statement of evidence has been submitted.[47] Petitioner here did not file a stipulated statement of evidence in the Circuit Court of Appeals or in this Court Consequently, we will not disturb the findings of fact drawn by the Court of First Instance. We believe that these findings conclude that it was the intent of the parties that the buyer would formally assume the mortgage encumbering the property or, in the alternative, that he would pay it fully at the time of signing the public deed of purchase and sale.

From their first conversation, the parties agreed that the mortgage liens on the property--as shown by promissory notes--would be cancelled. It was also shown that the buyer was seeking a loan to pay off the total debt and to give the remaining sum to the seller. We also see that the seller, petitioner here, was in the process of building a house, for which he would probably need financing, and being bound by H.F. Mortgage would affect his chances of obtaining it. We cannot lose sight of the fact that when the time came to sign the purchase and sale contract, the parties made many changes to it in order to clarify its clauses. However, no change was made to the clause in question. A very relevant fact is that the buyer, respondent here, is a lawyer; therefore, he knew or should have known the implications of that clause. If he in act had wanted to subrogate himself in place of the original debtor he could have asked to have this clarified as they ??

## VI

[12] Having construed the fifth clause of the purchase and sale contract in the manner described above, we must conclude that respondent] has no cause of action against petitioner. What we have here is a purchase and sale cor tract that generates bilateral [mutual] obligations and under which both parties are bound to each other.[48] Civil Code sec. 1077[49] allows for the rescission of bilateral obligations in case of nonperformance by any of the parties. Nonetheless, the party that defaults on his or her own obligation cannot seek specific performance of a bilateral obligation.[50] This principle is implicitly contained also in Civil Code sec. 1053,[51] which provides that in mutual obligations none of the parties incurs default if the other fails to fulfill or does not acquiesce to fulfill his or her obligation.

Since the contract in this case is a purchase and sale contract that generates bilateral obligations, Atty. Irizarry López has no cause of action against Dr. García Cámara. The dispute arises from the former's failure to perform his obligation to formally assume the mortgage debt or to pay it off in full. We cannot lose sight of the fact that the principle of good faith pervades our entire juridical scheme. Therefore, in order to assert a claim against Dr. García Cámara, Atty. Irizarry López had to perform in good faith the obligation to which he expressly agreed in the contract, which he did not do.

## VII

On the grounds stated above, *the judgments of the Circuit Court of Appeals and the Court of First Instance are hereby reversed. Consequently, the complaint brought by respondent in the Court of First Instance is dismissed.*

*Judgment will be rendered accordingly.*

Justice Hernández Denton "dissents from the opinion of the Court in the understanding that the parties in the instant case agreed to the subrogation of the buyer in place of the seller with regard to the mortgage creditor. See *Calo Rivera v. Reyes,* 115 D.P.R. 123 [15 P.R. Offic. Trans. 168] (1984). Contrary to the conclusion of the opinion of the Court, the parties did not agree to an assumption of debt. Therefore, we would affirm the judgment of the Court of First Instance." Justice Fuster Berlingeri concurred without a written opinion.

Case 3:20-cv-01747-CVR Document 1-3 Filed 12/24/20 Page 6 of 7

S.L.G. Irizarry v. S.L.G. García, 2001 JTS 164 (2001)
155 D.P.R. 713, 2001 TSPR 161, P.R. Offic. Trans.

Footnotes

| | |
|---|---|
| 1 | * * * |
| 2 | * * * |
| 3 | * * * |
| 4 | *Id.* |
| 5 | *Id.* |
| 6 | *Id. at 99.* |
| 7 | * * * |
| 8 | * * * |
| 9 | * * * |
| 10 | * * * |
| 11 | Appendix to the petition for certiorari at 100. |
| 12 | *Id.* |
| 13 | * * * |
| 14 | * * * |
| 15 | * * * |
| 16 | * * * |
| 17 | * * * |
| 18 | * * * |
| 19 | * * * |
| 20 | * * * |
| 21 | * * * |
| 22 | * * * |
| 23 | * * * |
| 24 | * * * |
| 25 | * * * |
| 26 | * * * |
| 27 | 31 L.P.R.A. § 3371. |
| 28 | 31 L.P.R.A. § 3372. |
| 29 | *Arthur Young & Co. v. Vega III,* 136 D.P.R. 157 [36 P.R. Offic. Trans. ____ ] (1994); *Plaza del Rey, Inc. v. Registrator,* 133 D.P.R. 188 [33 P.R. Offic. Trans. ____ ] (1993); *Castano, Jr. v. Borintex Mfg. Corp.,* 133 D.P.R. 127 [33 P.R. Offic. Trans. ____ ] (1993); *G.E. C. & L. v. So. T. & O. Dist.,* 132 D.P.R. 808 [32 P.R. Offic. Trans. ____ ] (1993); *García v. World Wide Entmt. Co.,* 132 D.P.R. 378 [32 P.R. Offic. Trans. ____ ] (1992); *Colling. Agrim. P.R. v. A.A.A.,* 131?? |
| 30 | * * * |
| 31 | * * * |
| 32 | 31 L.P.R.A. § 3471 *et seq.* |
| 33 | 31 L.P.R.A. § 3471. |
| 34 | * * * |
| 35 | * * * |
| 36 | * * * |
| 37 | * * * |
| 38 | 31 L.P.R.A. § 3473. |
| 39 | 31 L.P.R.A. § 3474. |
| 40 | ?? |
| 41 | * * * |
| 42 | * * * |
| 43 | * * * |
| 44 | * * * |
| 45 | * * * |

**S.L.G. Irizarry v. S.L.G. García, 2001 JTS 164 (2001)** Case 3:20-cv-01747-CVR   Document 1-3   Filed 12/24/20   Page 7 of 7

155 D.P.R. 713, 2001 TSPR 161, P.R. Offic. Trans.

| | |
|---|---|
| 46 | * * * |
| 47 | * * * |
| 48 | * * * |
| 49 | * * * |
| 50 | * * * |
| 51 | * * * |

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.