**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| TEAL PEAK CAPITAL, LLC; <br><br> Plaintiff, <br><br> v. <br><br> ALAN BRAM GOLDMAN; <br><br> Defendant. | Case No. 3:20-CV-01747 (PAD) <br><br> BREACH OF CONTRACT; SPECIFIC PERFORMANCE OF CONTRACT; REIMBURSEMENT OF FUNDS, COSTS AND EXPENSES |

## DEFENDANT'S ANSWER TO COMPLAINT AND COUNTERCLAIM

**TO THE HONORABLE COURT:**

COMES NOW defendant Alan Bram Goldman (hereinafter, "Mr. Goldman") through the undersigned attorney, and hereby answers the complaint filed by Teal Peak Capital LLC (hereinafter, "Plaintiff") on December 24, 2020 (the "Complaint"). Except as expressly admitted, qualified or explained herein, Mr. Goldman denies each and every allegation, matter or thing set forth in the Complaint:

### I. NATURE OF ACTION

1. Paragraph 1 of the Complaint is denied. Mr. Goldman did not act negligently, willfully or in bad faith when failing to sell the property object of this litigation. Also, as it will be set forth below, Mr. Goldman respectfully requests from this Honorable Court to render the Option to Purchase Agreement null and void due to Plaintiff's deceitful and bad faith acts. Therefore, Mr. Goldman also denies Plaintiff having an exclusive right to purchase the Property.

2. Paragraph 2 of the Complaint does not require a responsive pleading. Otherwise, the averments in said paragraph are denied.

### II. THE PARTIES

3. Paragraph 3 of the Complaint contains no specific allegations against Mr. Goldman and, thus, no responsive pleading is required.

4. Paragraph 4 of the complaint is accepted.

### III. JURISDICTION AND VENUE

5. In response to Paragraph 5 of the Complaint, Mr. Goldman states that it asserts a jurisdictional statement and a conclusion of law as to which no responsive pleading is required. However, Mr. Goldman notes that the Option to Purchase Agreement was between him and John Michael Grzan and Namrata Khimani ("Grzan and Khimani"). Mr. Goldman was never notified or shown any documents of the assignment until the letter dated December 18, 2020.

6.     In response to Paragraph 6 of the Complaint, Mr. Goldman states that it asserts a jurisdictional statement and a conclusion of law as to which no responsive pleading is required.

## IV.  GENERAL ALLEGATIONS

7.     Paragraph 7 of the Complaint is accepted.

8.     Paragraph 8 of the Complaint contains no specific allegation against Mr. Goldman and, thus, no responsive pleading is required. Otherwise, it is denied for lack of knowledge or information sufficient to form a belief as to the truth of such averments. Furthermore, Mr. Goldman and this Court are without notice nor documentation of the assignment of the agreement by Grzan and Khimani to Teal Peak Capital, LLC.

9.     Paragraph 9 of the Complaint contains no specific allegation against Mr. Goldman and, thus, no responsive pleading is required.

10.     Paragraph 10 of the Complaint contains no specific allegation against Mr. Goldman and, thus, no responsive pleading is required.

11.     Paragraph 11 of the Complaint is accepted.

12.     Paragraph 12 of the Complaint is accepted in part. Mr. Goldman has at all times made best and reasonable efforts, throughout the National, Territorial and Vermont State declared medical emergencies related to the COVID-19 deadly global pandemic. This hardship is compounded by the fact that Mr. Goldman is a Senior Citizen, with underlying medical conditions. Mr. Goldman is a cancer survivor who lost one kidney, half his bladder, his belly button, umbilical cord and part of his prostate. Mr. Goldman has also developed various skin conditions and is in complete isolation in his home in Montpelier, Vermont with no human interaction other than via phone. John Michael Grzan is well aware of all of the above facts seeing that Mr. Goldman regularly confided in him his daily struggles.

13.     Paragraph 13 of the Complaint contains no specific allegation against Mr. Goldman and, thus, no responsive pleading is required. Otherwise, it is denied as drafted. Although Plaintiff did attempt to close within the *Exercise Period*. It is imperative that this Court is made aware of the fact that the failure to close was not due to any negligence or breach of contract by Mr. Goldman. Mr. Goldman asserts that he was complying with his obligation to sell the property until it he was blindsided by the Plaintiff's assignor, Grzan and Khimani.

14.     Paragraph 14 of the Complaint is denied. Mr. Goldman asserts unequivocally that he did comply with his contractual obligations under the Option to Purchase Agreement. Nonetheless, shortly before the sale of the Property was closed, Mr. Goldman became aware that he was cheated by Grzan and Khimani who concealed, in bad faith and to gain an unfair advantage in the negotiations, that their legal representation was no other than Ferraiuoli LLC.

Ferraiuoli LLC had previously represented Mr. Goldman in a litigation having to do with the Property and Grzan and Khimani were aware of this fact from the onset of the negotiations. To make matters worse, Ferraiuoli LLC also represented another potential buyer of the Property at the same time Mr. Goldman was negotiating with Grzan and Khimani. Ferraiuoli LLC's other client presented a substantially more lucrative offer, which was suddenly and mysteriously withdrawn by one of Ferraiuoli LLC's attorneys with no explanation. These actions in bad faith paved the way for Grzan and Khimani, conferred to them an unfair advantage in the negotiations, and, ultimately, made a mess of the closing of the Property.

15.     Paragraph 15 of the Complaint is denied. Mr. Goldman asserts unequivocally that he did comply with his contractual obligations under the Option Agreement. Nonetheless, shortly before the sale of the Property was closed, Mr. Goldman became aware that he was cheated by Grzan and Khimani who concealed, in bad faith and to gain an unfair advantage in the negotiations, that their legal representation was no other than Ferraiuoli LLC. Ferraiuoli LLC had previously represented Mr. Goldman in a litigation having to do with the Property and Grzan and Khimani were aware of this fact from the onset of the negotiations. To make matters worse, Ferraiuoli LLC also represented another potential buyer of the Property at the same time Mr. Goldman was negotiating with Grzan and Khimani. Ferraiuoli LLC's other client presented a substantially more lucrative offer, which was suddenly and mysteriously withdrawn by one of Ferraiuoli LLC's attorneys with no explanation. These actions in bad faith paved the way for Grzan and Khimani, conferred to them an unfair advantage in the negotiations, and, ultimately, made a mess of the closing of the Property.  As such, Mr. Goldman did not close because of blatant efforts to not close, but because Grzan and Khimani's malicious acts sabotaged the closing of the Property.

16.     Paragraph 16 of the Complaint is accepted. Mr. Goldman is in the process of consigning the funds at the Court. Notice that the payment was wired late. Payment had to be sent by November 23, 2020.

17.     Paragraph 17 of the Complaint contains no specific allegation against Mr. Goldman and, thus, no responsive pleading is required. Otherwise, it is denied as drafted. Although the Plaintiff might very well argue that it has taken all the necessary steps in order to close the purchase of the Property, this alone cannot distract from the fact that the Plaintiff's assignors sabotaged the closing of the Property through malicious acts. Mr. Goldman made it vehemently clear that the assignors made a mess and irrevocably sabotaged the closing of the purchase.

18.     Paragraph 18 of the Complaint is denied. Mr. Goldman was responsive and communicated with Grzan and Khimani throughout the term of the agreement, which was

consummated through purposeful deceit and dolo, during the COVID-19 medical emergency, and through winter storms in Vermont. On December 18, 2020, five days before the parties were to close, Mr. Goldman received the "December 18 letter" via email threatening legal action. Mr. Goldman noticed something very odd; Ferraiuoli LLC was representing Grzan and Khimani throughout the entirety of the negotiations. Moreover, Mr. Goldman received no documentation as to the assignment of the Option Agreement to Teal Peak Capital, LLC.

Mr. Goldman told Grzan and Khimani in or around September 2020 that Ferraiuoli LLC had represented him in 2018 regarding a litigation having to do with the Property, including without limitation, representation at association meetings and in the litigation of the destruction of sacred trees at the hands of the brother of the owner of the title escrow company chosen by Grzan and Khimani. At that moment, Grzan and Khimani concealed the critical information that Ferraiuoli LLC was representing them in the negotiations. Understandably, the withholding of this critical and material information caused confusion, anger and despair in Mr. Goldman. When he discovered this critical omission, he realized the Plaintiff had devised a scheme to cheat him in the deal.

To make matters more convoluted, four days later on December 22, 2020, Mr. Goldman received horrible news: Mrs. Carmen Cividanes ("Mrs. Cividanes"), who was a second mother to Mr. Goldman and his neighbor across the street from the Property, passed away due to complications from COVID-19. Mrs. Cividanes was also the mother of Carmen Josefina Cividanes who had the power of attorney in Puerto Rico to dispose of Mr. Goldman's Property. The Cividanes were very close to Mr. Goldman. In fact, Mr. Goldman's mother was the godmother of Carmen Josefina Cividanes' only child. Mrs. Cividanes' passing together with the sudden appearance of Ferraiuoli LLC and the assignment to Teal Peak Capital, LLC was devastating for Mr. Goldman. Mr. Goldman immediately called Grzan and Khimani to deliver the devastating news regarding the death of Mrs. Cividanes and the turmoil her death caused him and to confront them regarding Ferraiuoli LLC's conflict of interest. Mr. Goldman informed Grzan and Khimani that there could be no closing the next day and asked Grzan and Khimani to wait until after Three Kings Day so he can mourn and be in the right state of mind to sort everything out. The buyer's answer to this request was to sue Mr. Goldman on Christmas Eve because he allegedly refused to cooperate and comply with his contractual obligations without any legal nor justifiable explanation.

4

19.    Paragraph 19 of the Complaint contains no specific allegation against Mr. Goldman and, thus, no responsive pleading is required.

20.    Paragraph 20 of the Complaint is denied. Mr. Goldman vehemently defends his position that he acted professionally and was willing to close within the exercise period. However, Grzan and Khimani sabotaged negotiations by maliciously concealing a very crucial piece of information: Ferraiuoli LLC's legal representation. Mr. Goldman was willing to revisit this conflict with his own legal representation and after he had time to mourn the loss Mrs. Cividanes after Three Kings Day.

21.    Paragraph 21 of the Complaint is denied. Mr. Goldman is currently in the process of consigning of the Extension Payment made by Grzan and Khimani. Again, Mr. Goldman affirms that he did make his best and reasonable efforts to close in a timely manner. However, Grzan and Khimani sabotaged the closing due to their malicious concealment of critical information.

22.    Paragraph 22 of the Complaint is denied. Grzan and Khimani failed to perform pursuant to Clause 5 of the Option Agreement. Specifically, by Plaintiff's own admission in Paragraph 16 of his Complaint, they wired the funds on November 24, 2020. Plaintiff had until November 23, 2020 to wire the funds.

**V.   FIRST CAUSE OF ACTION: BREACH OF CONTRACT**

23.    Paragraph 19 of the Complaint contains no specific allegation against Mr. Goldman and, thus, no responsive pleading is required. Mr. Goldman references and alleges herein the responses set forth in paragraphs 1 to 22.

24.    Paragraph 24 of the Complaint is denied. Mr. Goldman's alleged breach of contract was due solely to the malicious actions, purposeful and willful omissions of Grzan and Khimani which irrefutably sabotaged the closing of the sale of the Property.

25.    Paragraph 25 of the Complaint is denied as drafted. Mr. Goldman's alleged breach of contract was due solely to the malicious actions, purposeful and willful omissions of Grzan and Khimani which irrefutably sabotaged the closing of the sale of the Property. Furthermore, Grzan and Khimani have purposefully not complied with the terms of the agreement, have sent deposits late in violation of the agreement, have used Mr. Goldman's status as a senior citizen, recovering cancer survivor with underlying medical conditions, the state of emergency in Puerto Rico and Vermont due to COVID-19, and the death of Mrs. Cividanes, to take advantage of Mr. Goldman and portray him as the party who breached the contract. Grzan and Khimani maliciously concealed Ferraiuoli LLC's involvement throughout the negotiations. Moreover, Grzan and Khimani maliciously misrepresented that they had resolved and had taken cared of a complaint filed by Gerald Kleis Pasarell, which had appeared in the title study of the Property. Indeed, when

Attorney Miguel Carbonell (the notary public in charge of the closing) was informed of the involvement of Ferraiuoli LLC he reacted by describing the myriad of conflicts, the death of Mrs. Cividanes, and the medical emergency that posed COVID-19 as a "[expletive]-storm".

26. Paragraph 26 of the Complaint is denied. Mr. Goldman's alleged lack of diligence and deliberate conduct was due solely to the malicious actions, purposeful and willful omissions of Grzan and Khimani which irrefutably sabotaged the closing of the sale of the Property.

27. Paragraph 27 of the Complaint contains no specific allegation against Mr. Goldman and, thus, no responsive pleading is required. Otherwise, it is denied.

28. Paragraph 28 of the Complaint is denied. As Mr. Goldman will show, there are grounds to rule in favor of his Counterclaim and rule the Option to Purchase Agreement as null and void.

## VI. SECOND CAUSE OF ACTION: REIMBURSEMENT OF EXTENSION PAYMENT, COSTS AND EXPENSES

29. Paragraph 29 of the Complaint contains no specific allegation against Mr. Goldman and, thus, no responsive pleading is required. Mr. Goldman references and alleges herein the responses set forth in paragraphs 1 to 28.

30. Paragraph 30 of the Complaint is denied. Grzan and Khimani have operated in bad faith since the onset of the agreement in question. Grzan and Khimani hid their representation by Ferraiuoli LLC and took advantage of Mr. Goldman while he was alone and in isolation in Vermont recovering from various medical conditions and living in fear regarding the COVID-19 pandemic. Moreover, Grzan and Khimani were unempathetic after they were made aware of the Mrs. Cividanes' death, mother of Carmen Cividanes who possessed the power of attorney over Mr. Goldman's Property in Puerto Rico.

31. Paragraph 31 of the Complaint is denied. Grzan and Khimani willfully and purposefully violated the agreement with their willful and purposeful sending the payment late, and ongoing purposeful willful deceit. Their actions and omissions in bad faith are enough to render the contract as null and void.

32. Paragraph 32 of the Complaint is denied. Grzan and Khimani willfully and purposefully violated Clause 5 of the agreement with their willful and purposeful sending the payment late, as their pleadings so admit.

33. Paragraph 33 of the Complaint is denied. Mr. Goldman's alleged breach of contractual obligations was due solely to the malicious actions, purposeful and willful omissions of Grzan and Khimani which irrefutably sabotaged the closing of the sale of the Property.

34.     Paragraph 34 of the Complaint is denied. Mr. Goldman's alleged breach of contractual obligations was due solely to the malicious actions, purposeful and willful omissions of Grzan and Khimani which irrefutably sabotaged the closing of the sale of the Property.

**VII.  PRAYER**

The allegations contained in this paragraph is a prayer for relief which does not require a response from Mr. Goldman; to the extent that it does, Mr. Goldman denies it.

**I.      <u>GENERAL DENIAL</u>**

All allegations not specifically admitted herein are hereby denied.

**II.     <u>AFFIRMATIVE DEFENSES</u>**

Mr. Goldman, while reserving the right to assert other defenses as discovery proceeds, and without assuming the burden of proof when the burden of proof rests on Plaintiff, asserts the following separate and independent affirmative defenses in further opposition to the Complaint:

1.     Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

2.     Plaintiff has acted in bad faith.

3.     Plaintiff acted in a deceitful, or dolo, manner. If Mr. Goldman had known of the crucial piece of information Plaintiff concealed, then he would not have entered into an Option to Purchase Agreement.

4.     Mr. Goldman's alleged breach of contractual obligations was due solely to the malicious actions, purposeful and willful omissions of the Plaintiff. As such, any damages claimed by the Plaintiff are unfounded, exaggerated, and self-inflicted.

5.     Mr. Goldman did not act with fault or negligence, be it willfully, intentionally, recklessly or otherwise, towards Plaintiff.

6.     Mr. Goldman has complied with all of his legal and contractual obligations under the terms of the Option Agreement.

7.     Pursuant to Clause 5 of the Option to Purchase Agreement, Plaintiff's right to purchase expired on December 23, 2020. Therefore, the Complaint fails to state a claim upon which relief can be granted.

8.     At all times, Mr. Goldman acted in good faith and in accordance with the law.

9.     Mr. Goldman hereby reserves the right to amend his answers and/or affirmative defenses as well as incorporate additional defenses, based on the facts it may obtain during the discovery proceedings to be conducted in this case.

**<u>COUNTERCLAIM</u>**

COMES NOW counter complainant Alan Bram Goldman (hereinafter, "Mr. Goldman") by and through the undersigned attorney, and respectfully alleges, states and prays as follows:

7

Mr. Goldman realleges, and incorporates herein by reference all answers shown in Paragraphs 1 to 34 of its Answer, and any other allegations or defenses stated, as if fully set forth herein to the Complaint filed by Teal Peak Capital, LLC on behalf of Grzan and Khimani; and so does file this Counterclaim against Grzan and Khimani, and Teal Peak Capital, LLC for their purposeful malicious actions and omissions in detriment of Alan Bram Goldman.

## I.     NATURE OF ACTION

1.     This Counterclaim arises out of Grzan and Khimani's and Teal Peak Capital, LLC's (both Grzan and Khimani and Teal Peak Capital LLC are hereinafter referred together as, "TPC") breach of contractual obligations towards Mr. Goldman and insidious machinations (or "dolo") due to the purposeful, shameless, and deceitful hiding of representation of the same law firm Mr. Goldman has used on the same subject-matter, the Property object of this litigation. In addition, TPC falsely claimed that it would settle real estate broker Gerald Kleis Pasarell's claim in the local courts. Even after the filing of the Complaint, TPC maintained the above. However, the litigation filed by the real estate broker is still encumbering the Property (*Lis Pendens*). Documentation that demonstrates TPC's willingness to settle the litigation in the local courts is attached hereto as Exhibit 1. As of the date of this counterclaim, that litigation remains active and is being vigorously contested by Mr. Goldman. Furthermore, it arises out of TPC's violations of basic human decency, bad faith, and unclean hands.

2.     For the reasons set out above and those hereinafter set forth, Mr. Goldman respectfully requests this Honorable Court to grant the remedy prayed for in this Counterclaim.

## II.     THE PARTIES

3.     The Counter Claimant, Alan Bram Goldman is of legal age, single, developer, and resident of Montpelier, Vermont. Mr. Goldman's physical address is: 1014 Terrace St., Montpelier, VT 05602. Mr. Goldman is the owner of the property object of this litigation located at: The Estates #13, Dorado, Puerto Rico 00646 (hereinafter, the "Property").

4.     Teal Peak Capital, LLC is a limited liability company with a formation and effective date of October 13, 2020 at 2:51pm. Teal Peak Capital, LLC's Certificate of Organization is attached hereto as Exhibit 2. Teal Peak Capital, LLC's registered office and mailing address is: 412 Dorado Beach East, Dorado, PR 00646, together with the email address of John Michael Grzan: jmgrzan@gmail.com and a telephone number believed also to be John Michael Grzan's: (914) 924-4988. The Puerto Rico Certificate of Formation also lists Carmen Marcano, paralegal at Ferraiuoli LLC as the authorized person; her email: cmarcano@ferraiuoli.com. Certificate of Formation is attached hereto as Exhibit 3.

5.      By information and belief, John Michael Grzan and Namrata Khimani, of legal age, married and residents of Dorado, PR. John Michael Grzan and Namrata Khimani's physical address is 412 Dorado Beach East, Dorado, PR 00646.

### III.      JURISDICTION AND VENUE

6.      This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1332 due to the complete diversity of citizenship between Mr. Goldman, a citizen and resident of Montpelier, Vermont, and Teal Peak Capital, LLC and Grzan and Khimani residents of Puerto Rico.

7.      The Commonwealth of Puerto Rico is the proper venue pursuant to 28 U.S.C. § 1391 because the Property is located at Dorado, Puerto Rico.

### IV.      GENERAL ALLEGATIONS

8.      In or around June 2017, Mr. Goldman's neighbor had trespassed into the Property and cut down certain sacred trees which were invaluable to Mr. Goldman. Mr. Goldman's neighbor also planted an aggressive and invasive plant with irrigation which caused additional damages to the Property.

9.      In or around January 2018, Mr. Goldman hired Ferraiuoli LLC to represent him in this matter. As a result, Ferraiuoli LLC acquired inside information of the Property, such as its value. This information proved to be useful for TPC and Hyung Soon Lee ("Mr. Lee"), another client of Ferraiuoli LLC and a potential buyer of the Property. Ferraiuoli LLC's representation of Mr. Goldman ended in or around the Fall of 2018. The Engagement Letter is attached hereto as Exhibit 4.

10.     TPC acquired the services of Ferraiuoli LLC before negotiations to buy Mr. Goldman's Property began.

11.     In September 2020, TPC approached Mr. Goldman interested in buying the Property. It is at this time that Mr. Goldman told John Michael Grzan of the incident that occurred around June 2017 and how his neighbor trespassed his Property and cut down sacred trees. Mr. Goldman informed John Michael Grzan of Ferraiuoli LLC's representation on the matter and how vulnerable he was due to him being isolated, heavily medicated, and recovering from various medical conditions such as cancer, losing one kidney, losing half a bladder, losing part of his prostate, losing his belly button, and various skin conditions. John Michael Grzan maliciously concealed that Ferraiuoli LLC was his legal representative during the negotiations and hid from Mr. Goldman the conflict-of-interest, thereby giving TPC an unfair advantage in the negotiations and violating the basic principles of honesty and good faith. See Ortiz Alvarado v. Great American Life Assurance Co., 182 D.P.R. 48, 63 (2011) (Defining dolo as a whole complex of bad deeds,

contrary to the laws of honesty and capable of surprising the good faith of others, generally for one's own benefit).

12.    On or around October 20, 2020, Mr. Goldman mysteriously received an unsolicited offer from Mr. Lee to buy the Property for $3,750,000.00. Mr. Lee was represented by Ferraiuoli LLC. Copy of the unexecuted Purchase and Sale Agreement is attached hereto as Exhibit 5. Mr. Goldman, in good faith, notified John Michael Grzan of this offer and how Ferraiuoli LLC was representing the buyer. He wanted to give John Michael Grzan an opportunity to match the offer. Grzan and Khimani sent the offer late which rendered it ineffective. Once again, John Michael Grzan purposefully concealed from Mr. Goldman that Ferraiuoli LLC represented him as well.

13.    Two days later, on October 22, 2020, without any justification whatsoever, Ferraiuoli LLC withdrew the lucrative offer. Just like that, TPC and Ferraiuoli LLC were back in the driver seat of the negotiations now that Mr. Lee's more lucrative offer was off the table. Withdrawal of Offer is attached hereto as Exhibit 6.

14.    With the foregoing in mind, <u>one day after Mr. Lee and Ferraiuoli LLC withdrew the offer</u>, on October 23, Grzan and Khimani and Mr. Goldman executed an *Option to Purchase Agreement*, through which Grzan and Khimani, or their assignee, were given an exclusive option to purchase the Property for $3,150,000.00: $600,000 less than Mr. Lee's offer which, again, was spear-headed by Ferraiuoli LLC. The Option to Purchase Agreement would not have been executed had Mr. Goldman known that TPC was represented by Ferraiuoli LLC in this matter. The Option to Purchase Agreement is attached hereto as Exhibit 7.

15.    To make things more convoluted, on November 5, 2020, Gerald Kleis Pasarell, a real estate broker, sued Mr. Goldman alleging that he was owed a commission for the sale of the Property even though the Property was yet to be sold. John Michael Grzan promised Mr. Goldman that he was going to sort everything with Gerald Kleis Pasarell. That too was a lie. At this time, this litigation is active in the local courts of Puerto Rico. Perhaps, this was all a scheme to force Mr. Goldman to sell the Property as soon as possible. The Complaint by Gerald Kleis Pasarell is attached hereto as Exhibit 8.

16.    Pursuant to Clause 5 of the *Option to Purchase Agreement*, TPC had until November 23, 2020 to exercise and close the sale of the Property. The agreement dictated that the term to close could be extended by thirty additional days if the buyer paid Mr. Goldman $600,000 <u>before</u> the first thirty days expired. By TPC's own admission in Paragraph 16 of the Complaint, the buyer wired the money on November 24, 2020. As such, the payment was tendered late. In any case, the extension period came to an end on December 23, 2020 thereby extinguishing TPC's property interest over the Property.

17.    With a letter dated December 18, 2020, attached in an email, Mr. Goldman became aware of two things for the first time: 1) that the Option to Purchase Agreement was assigned without any notification to Mr. Goldman; and 2) that Ferraiuoli LLC represented TPC throughout the entirety of the negotiations.  After the instant lawsuit was filed, Mr. Goldman became aware that John Michael Grzan had not resolved the issue with Gerald Kleis Pasarell's complaint as he had represented in writing. To this day, the Gerald Kleis Pasarell complaint is still pending in state court and Mr. Goldman is vigorously litigating the same. In addition to Mr. Goldman, the notary public in charge of the closing, Attorney Miguel Carbonell was also caught by surprise and shocked by John Michael Grzan's deception. When he realized that John Michael Grzan had kept from Mr. Goldman and himself the fact that Ferraiuoli LLC was his counsel, Attorney Miguel Carbonell told Mr. Goldman: "This is a [expletive]-storm." Understandably, Mr. Goldman felt cheated and that he was taken advantage by TPC during a time he was alone in isolation, heavily medicated, with general anxiety due to the COVID-19 pandemic, and recovering from various medical conditions.

18.    To make matters worse, Mr. Goldman was notified of a grave loss four days later. His neighbor in Puerto Rico, Mrs. Carmen Cividanes ("Mrs. Cividanes"), had died terribly of a heart attack. Mrs. Cividanes was like a mother to Mr. Goldman. Mrs. Cividanes was also the mother of Carmen Josefina Cividanes, who had the power of attorney over the Property in Puerto Rico. Mr. Goldman asked John Michael Grzan to please wait until after Three Kings Day so that he and Carmen Josefina Cividanes could peacefully mourn the death of Mrs. Cividanes. Then, they could sort out the mess created by him and Ferraiuoli LLC.

19.    In response to the above, TPC sued Mr. Goldman two days later, on Christmas Eve.

## V.      FIRST CAUSE OF ACTION: BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH

20.    Mr. Goldman  incorporates herein the allegations shown in Paragraphs 1 to 34 of his Answer to TPC's Complaint, any other allegations or defense stated, and Paragraphs 1 to 19 of his Counterclaim, as if fully set forth herein.

21.    Pursuant to Clause 5 of the Option to Purchase Agreement, Mr. Goldman and TPC had to close the sale of the Property before November 23, 2020. If, for whatever reason that became impossible, TPC could further extend the exercise period for an additional thirty days by paying $600,000.00.

22.   TPC had until November 23, 2020 to pay Mr. Goldman the Extension Payment of $600,000.00. TPC, by its own admission, tendered payment on November 24, 2020. Therefore, TPC's payment was late in contravention of the Option to Purchase Agreement.

23.   In any case, the extension period ended on December 23, 2020. Thus, TPC's exclusive right to purchase has been extinguished.

24.   More importantly, contractual good faith is an integral part of any contractual obligation between parties. See BPPR v. Sunc. Talavera, 174 D.P.R. 686 (2008); See also Adria Int'l Group, Inc. v. Ferré Dev., Inc., 241 F.3d 103, 108-09 (1st Cir. 2001) ("Puerto Rican law imposes the duty of good faith performance on contracting parties"). Contractual good faith is not only manifested during the duration of the contractual relationship. Parties to a contract must also behave loyally in every phase **prior** to the establishment of the contractual relations. See Id. at page 697.

25.   Grzan and Khimani had ample opportunities to disclose that Ferraiuoli LLC was their legal representative. Instead, they purposefully and in bad faith concealed that fact from Mr. Goldman. Grzan and Khimani knew that Ferraiuoli LLC had represented him in a related subject matter, and that Ferraiuoli LLC also represented Mr. Lee, another potential buyer who offered a way more lucrative offer. TPC had not produced evidence of source of funds for the cash payment required at the closing.

26.   Mr. Goldman vehemently affirms that TPC has breached the implied covenant of good faith. Under Puerto Rican law, this Honorable Court has the power to void the Option to Purchase Agreement if it finds that TPC violated the implied covenant of good faith. See Levy v. Aut. Edif. Publicos, 135 D.P.R. 382, 395 (1996) ("[I]f a party to a contract breaches contractual good faith, the court may indeed void the contract") (translations supplied). As such, pursuant to the principles of good faith and basic human decency, Mr. Goldman respectfully asks of this Court to decree the Option to Purchase Agreement as void.

VI.      **SECOND CAUSE OF ACTION: DECEIT BY INSIDIOUS MACHINATIONS (DOLO)**

27.   Mr. Goldman   incorporates herein the allegations shown in Paragraphs 1 to 34 of his Answer to TPC's Complaint, any other allegations or defense stated, and Paragraphs 1 to 26 of his Counterclaim, as if fully set forth herein.

28.   The Puerto Rican Civil Code establishes the following as it pertains to dolo: "[t]here is [dolo] when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made." 31 L.P.R.A.

§ 3408 (2006). Dolo, or the insidious machinations, may arise from acts or omissions from TPC. See Westernbank Puerto Rico v. Kachkar, 2009 WL 6337949 (D.P.R. 2009); P.C.M.E. Commercial, S.E. v. Pace Membership Warehouse, Inc., 952 F.Supp. 84, 92 (D.P.R. 1997).

29.   In turn, "[i]n order that [dolo] may give rise to the nullity of a contract, it must be serious, and must not have been employed by both of the contracting parties." 31 L.P.R.A. § 3409. Serious dolo is defined as that which "determines the consent of the parties . . ." P.C.M.E. Commercial, 952 F.Supp. at 92.

30.   As it was shown above, TPC hid from Mr. Goldman not one, but two crucial pieces of information that ultimately sabotaged the closing of the sale of the Property. Specifically, that Ferraiuoli LLC was their legal representation throughout the negotiations and that the litigation encumbering the Property had not been withdrawn. This deceit, or dolo, is compounded with the fact that Ferraiuoli LLC also represented Mr. Lee and offered $600,000.00 more than TPC to purchase the Property. Mysteriously, this offer was withdrawn by Mr. Lee and Ferraiuoli LLC, which put TPC in the driver seat of the negotiations. By manipulating the competing offers TPC pressured Mr. Goldman to sell below the market price in Dorado Beach. Had Mr. Goldman known of this manipulation, he would not have contracted with TPC due to the palpable conflict of interest.

31.   In light of the foregoing, Mr. Goldman respectfully asks of this Court to nullify the Option to Purchase Agreement between TPC and Mr. Goldman.

32.   Based on current real estate market in Dorado Beach and the specific location of Mr. Goldman's Property, which is above the eighty-five (85) foot contour of the exclusive and original Dorado Beach Estate, Mr. Goldman estimates that had he closed caving under the pressure of TPC he would have failed to realize an excess of $3,000,000.00 in the sale. In view of the deceitful conduct by TPC and the distress caused to Mr. Goldman in the disposition of the Property, which contains a unique property design by his parents, is the house he grew up as a child, and is of great sentimental value, Mr. Goldman conservatively estimates his damages at no less than $3,000,000.00.

## VII.      PRAYER

**WHEREFORE**, Alan Bram Goldman respectfully requests this Honorable Court to:

1.  Determine that TPC has violated the Option to Purchase Agreement and its contractual duty of good faith.

2.  Determine that TPC's purposeful actions and omissions determined Alan Bram Goldman's disposition to enter into a contract with the TPC.

3.  Render the Option to Purchase Agreement to be null and void due to TPC's bad faith and dolo in the negotiation phase and contractual phase of the relationship between TPC and Mr. Goldman.

4.  Award damages in no less than $3,000,000.00 for TPC's failure to abide by the terms of the agreement, violations of good faith, and deceitful actions and omissions.

5.  Award Alan Bram Goldman all reasonable attorney costs and expenses.

6.  Award Alan Bram Goldman any other remedy which it deems just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 7th day of April 2021.

**VERIFICATION UNDER PENALTY OF PERJURY**
**PURSUANT TO 28 U.S.C. § 1746**

I, Alan Bram Goldman of legal age, single, resident of Montpelier, Vermont, hereby state under penalty of perjury that:

1.  I have read the foregoing Verified Answer to Complaint and Counterclaim; and

2.  The Factual assertions in the Verified Answer to Complaint and Counterclaim are true and correct to the best of my knowledge, information and belief and/or pursuant to documents in my possession and my personal involvement in the facts of this case.

Executed in Montpelier, Vermont, this 7th day of April, 2021

Alan Bram Goldman

15

IT IS HEREBY CERTIFIED that on this date we filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice electronically to all counsel at their address of record.

Date: April 7, 2021

By: s/Antonio A. Arias
Attorney

*Attorney for Alan Bram Goldman*
**McConnell Valdés LLC**
PO Box 364225
San Juan, Puerto Rico 00936-4225
270 Ave. Muñoz Rivera
Hato Rey, PR 0918
T: 787-250-5604

By: s/ Antonio A. Arias
Antonio A. Arias, Esq.
USDC-PR 204906
aaa@mcvpr.com

16