UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| TEAL PEAK CAPITAL, LLC;<br><br>Plaintiff,<br><br>v.<br><br>ALAN BRAM GOLDMAN;<br><br>Defendant. | Case No. 3:20-CV-01747 (PAD)<br><br>BREACH OF CONTRACT; SPECIFIC PERFORMANCE OF CONTRACT; REIMBURSEMENT OF FUNDS, COSTS AND EXPENSES |

### MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFF AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**TO THE HONORABLE COURT:**

COMES NOW defendant Alan Bram Goldman (hereinafter, "Mr. Goldman"), through the undersigned attorney, which very respectfully states and prays:

This case is a breach of contract action brought by Plaintiff Teal Peak Capital, LLC ("TPC" or "Plaintiff") against defendant Alan Bram Goldman ("Mr. Goldman") to compel him to sell his Dorado Beach home. The law firm of Ferraiuoli LLC ("FLLC") has been counsel of Mr. Goldman since 2018. FLLC represented TPC during the negotiations that gave rise to this litigation. FLLC also simultaneously represented another buyer for the property. FLLC legal representation of the

Plaintiff in this action against another former client constitutes an indefensible conflict of interest pursuant to the Model Rules of Professional Conduct, which warrants its disqualification.

### I.      General Background

For the better half of his life, Mr. Goldman is and has been a Puerto Rico businessman with an emphasis in real estate developments. He first came to Puerto Rico in 1961. In 1974, Mr. Goldman's family moved to the Dorado Beach. After several decades of living in Puerto Rico, in 1985, Mr. Goldman's mother finally finished her dream ancestral home located at The Estates #13, Dorado, Puerto Rico 00646 (the "Property").

On June 2017, Mr. Goldman's neighbor trespassed onto the Property, cut down a very sacred tree belonging to the Goldman Family, and planted an aggressive invasive plant with irrigation, in the ten foot easement that is not allowed, that caused additional damages to the Property. Mr. Goldman further noticed that, at the time, the Dorado Beach Property Owners' Association, Inc. was not following procedures clearly outlined in the Bylaws.

For purposes of helping Mr. Goldman achieve some form of justice, FLLC was hired not only to aid him in his fight to recover damages to the Property, but also to compel the Dorado Beach Property Owners' Association, Inc. to follow its Bylaws. Hence, on January 2018, Mr. Goldman executed with FLLC an engagement letter to represent him in matters concerning the existing restrictive covenants of Dorado Beach Estates, and the trespass and illegal cutting of Mr. Goldman's sacred trees located within the Property. See Exhibit 1. FLLC also helped Mr. Goldman with an insurance claim after hurricane María caused damages to the Property and general counseling concerning the Property. See Exhibit 2. On or around the Fall of 2018, Mr. Goldman ended FLLC's legal representation due to certain mishaps in the handling of his case.

In light of the foregoing, FLLC acquired critical information that later proved to be useful in the *covert* representation of John Michael Grzan, Namrata Khimani, and TPC. FLLC's new clients were put in an advantageous position to acquire critical information such as: Mr. Goldman's state of mind and medical conditions which prevented him from going to Puerto Rico; that Mr. Goldman was planning on fixing the home before selling it to increase its market value; that the neighboring lot sold for $2,500,000; and the market and the sentimental value of Mr. Goldman's Property. Hence, FLLC's prior representation of Mr. Goldman gave an unfair advantage to John Michael Grzan, Namrata Khimani, and TPC during the negotiations to purchase the Property.

## II.     Standard for Motion to Disqualify Counsel

Model Rule 1.9(a) sets forth the limits on legal representation as it pertains to former clients.  It provides that

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent in writing.

Model Rule 1.9(a).  In turn, Model Rule 1.9(c) does not allow a lawyer whose present or former firm represented a client in a matter, to use information relating to said representation to the disadvantage of the former client. See Model Rule 1.9(c).

The following rule, that is, Model Rule 1.10, provides for the prohibition of representation to lawyers that work in a firm when "any of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9." Model Rule 1.10(a).  Thus, this rule "provides for the imputed disqualification of an attorney, such that if one member of the firm is disqualified from the case, his colleagues in the firm are likewise disqualified." Starlight Sugar Inc. v. Soto, 903 F. Supp. 261, 265 (D.P.R. 1995).

Relevant here, Model Rule 1.10(b) dictates that a firm is not prohibited from representing a person with interest materially adverse to that of a prior client when a lawyer has terminated his

3

or her association with a firm, <u>unless</u>: "(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and (2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter." Model Rule 1.10(b). The "substantial relationship" test entails that the Court will

> Assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into the nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communication be maintained.

<u>Polyagro Plastics, Inc. v. Cincinnati Milacron, Inc.</u>, 903 F. Supp. 253, 256 (D.P.R. 1995) (quoting <u>Kevlik v. Goldstein</u>, 724 F.2d 844, 850 (1st Cir. 1984). The conflict-of-interest rule's main purpose is to protect the client's confidential disclosures and to ensure the attorney's loyalty to the client's interest. <u>Combustion Engineering Caribe, Inc. v. Geo P. Reintjes Co., Inc.</u>, 298 F. Supp. 2d. 215, 220 (D.P.R. 2003).

Additionally, Model Rule 8.4 provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." This rule can be violated "by silence or a failure to speak, including conduct that involved no express misrepresentations but simply consisted of a failure to reveal underlying facts which might be necessary to avoid misleading someone." <u>Romero-Barcelo v. Acevedo-Vila</u>, 275 F.Supp.2d 177, 191 (D.P.R. 2003).

Finally, a motion to disqualify is the proper method to report potential conflicts of interest incurred by other members of the bar. <u>Kevlik v. Goldstein</u>, 724 F. 2d 844, 848 (1st Cir. 1984); <u>Reyes Canada v. Rey Hernández</u>, 193 F. Supp. 409, 411 (D.P.R. 2002).

> **III.     Since Mr. Goldman is a former client of FLLC, the firm's representation of John Michael Grzan, Namrata Khimani and Teal Peak Capital LLC during the negotiations that gave rise to the complaint and in the instant action, constitutes a conflict of interest banned by Model Rules 1.9(c), 1.10(b) and 8.4**

4

As stated before, Model Rule 1.9 prohibits a lawyer of a former client from representing another client in a substantially related matter in which the interests of the former and present clients are adverse. It also prohibits a lawyer whose <u>present</u> or former firm represented a client in a matter, to use information relating to said representation to the disadvantage of the former client, and to reveal information relating to such former representation.  This rule is intended to protect the former client's confidential information and to ensure the attorney's loyalty.  These duties are continuous and must be observed even after the termination of the client-attorney relationship. <u>See</u> <u>U.S. v. Edwards</u>, 39 F.Supp.2d 716, 724; <u>United States v. Culp</u>, 934 F.Supp. 394 (M.D.Fla.1996); <u>Beck v. Board of Regents of State of Kan.</u>, 568 F.Supp. 1107 (D.Kan.1983); <u>Davis v. Stamler</u>, 494 F.Supp. 339 (D.N.J.1980).

The prohibition's operative term is "substantially related." The Comment on Model Rule 1.9 explains that matters are "substantially related" if they involve

> the same transaction or if there is a substantial risk that the confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.  For example, a lawyer who has represented a business person and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce.

The Comment to Model Rule 1.9 further states that "knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such representation."  And while, in order to establish a substantial risk that the lawyer possesses such confidential information, the former client is not required to reveal the confidential information, "[a] conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." <u>Id</u>.

In this case, the scope of FLLC's representation of Mr. Goldman included a litigation concerning damages suffered to the Property at the hands of Mr. Goldman's neighbor and matters

5

concerning the existing restrictive covenants of Dorado Beach Estates, as expressly contemplated in the engagement letter. Furthermore, FLLC counseled Mr. Goldman in other matters concerning the Property such as his insurance policy claim, general compliance with the Bylaws of the Dorado Beach Property Owners' Association, Inc., and repairs and construction after the advent of hurricane María. In essence, FLLC operated as a general counsel for matters concerning the Property and had inside knowledge about the Property and its owner.

Based on the nature of FLLC's legal representation of Mr. Goldman, FLLC became deeply acquainted with the market value and sentimental value of Mr. Goldman's Property. This crucial information was then used, naturally, to gain an unfair advantage during the negotiations of not one, but several of FLLC's future clients: (i) John Michael Grzan and Namrata Khimani; (ii) Teal Peak Capital LLC; and (iii) Hyung Soon Lee.

Specifically, in September 2020, John Michael Grzan and Namrata Khimani (already represented by FLLC) approached Mr. Goldman interested in buying the Property.[1] At this point, John Michael Grzan and Namrata Khimani were told by Mr. Goldman that FLLC had represented him in matters concerning the Property. Instead of disclosing that FLLC represented them, John Michael Grzan and Namrata Khimani concealed FLLC's involvement. Around October 20, 2020, Mr. Goldman was mysteriously approached by another FLLC client, Hyung Soon Lee, with a more lucrative offer. Mr. Goldman told John Michael Grzan and Namrata Khimani about Hyung Soon Lee's offer and FLLC's involvement in the matter. Mr. Goldman extended to John Michael Grzan and Namrata Khimani the opportunity to match Hyung Soon Lee's offer. Mr. Goldman, John Michael Grzan and Namrata Khimani worked diligently to sort the offer. Finally, John Michael Grzan and Namrata Khimani agreed to match Hyung Soon Lee's offer. However, they sent their matched offer late, which rendered it ineffective. See Exhibit 4. Once again, John Michael Grzan

---

[1] John Michael Grzan's admission that FLLC have been representing him even before the negotiations with Mr. Goldman is attached here to as Exhibit 3.

and Namrata Khimani concealed FLLC's involvement in their side of the negotiations. Then, on October 22, 2020 FLLC withdrew Hyung Soon Lee's offer without any justification whatsoever. See Exhibit 5. The very next day, John Michael Grzan and Namrata Khimani executed with Mr. Goldman an *Option to Purchase Agreement* and were given an exclusive option to purchase the Property for $3,150,000.00, or $600,000.00 less than what Hyun Soon Lee and FLLC offered just a couple of days before. Certainly, the interplay and timing between the offers of two of FLLC's clients and the execution of the *Option to Purchase Agreement* shortly thereafter shake the very core of FLLC's duty to not betray the interests of a former client, Mr. Goldman. At the very least, the appearance of improper conduct by FLLC is present; at worst, FLLC manipulated competing offers to secure a more advantageous offer for John Michael Grzan, Namrata Khimani, and Teal Peak Capital LLC.

Due to the scope of its representation with Mr. Goldman and its actions during the negotiations, FLLC's transgressed Model Rules 1.9(c) and 1.10(b). Furthermore, FLLC violated Rule 8.4 due to it being utterly irresponsible in managing the competing offers of his clients. Omitting an extremely crucial piece of information such as the fact that they represented two potential buyers of the Property, at the same time, should not be taken lightly by this Court. It truly is perplexing how FLLC disclosed its representation of Hyung Soon Lee but hid its representation of John Michael Grzan and Namrata Khimani until December 19, 2020, five days before the closing. Simply put, not disclosing FLLC's involvement in the negotiations was irresponsible and a gross misrepresentation of what should have been an arm's length negotiation. Ultimately, the very same silence that gave FLLC's clients an advantage during the negotiations irrevocably sabotaged the closing of the sale of the Property.

## IV. Mr. Goldman never gave consent to waive the conflict because he was never notified of FLLC's involvement in the negotiations

Under certain circumstances, current and former clients may consent to conflicting legal representation. In both instances, the client must give informed consent, confirmed in writing.

7

See <u>Perez Colon v. Millenium Institute for Advanced Nursing Care, Inc.</u>, 2011 WL 3793451 at FN 1 (D.P.R. 2011). Mr. Goldman, as a former client, never gave consent, in writing or otherwise, to FLLC's involvement in the negotiations to purchase his Property.  Indeed, Mr. Goldman was not even given the opportunity to consent due to the concealment of FLLC's involvement in the negotiations. Thus, Mr. Goldman never waived the conflicts which are the subject of this motion.

**WHEREFORE**, for the reasons herein presented, as supported by the documents attached hereto, it is respectfully requested that the law firm of Ferraiuoli LLC be disqualified to represent Teal Peak Capital, LLC, John Michael Grzan and Namrata Khimani in this action because of the conflict of interest barred by Model Rules 1.9(c), 1.10(b), and 8.4.  Given the nature of this request, and the impact FLLC's continued representation in this case, it is respectfully requested that the case be stayed pending resolution of this matter.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 13th day of April 2021.

*Attorney for Alan Bram Goldman*
**McConnell Valdés LLC**
PO Box 364225
San Juan, Puerto Rico 00936-4225
270 Ave. Muñoz Rivera
Hato Rey, PR 0918
T: 787-250-5604

By: <u>s/ Antonio A. Arias Larcada</u>
Antonio A. Arias Larcada, Esq.
USDC-PR 204906
aaa@mcvpr.com

8

     IT IS HEREBY CERTIFIED that on this date we filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice electronically to all counsel at their address of record.

Date: April 13, 2021                                        By: <u>s/Antonio A. Arias</u>

                                                                         Attorney