Alan Goldman to JM
EXHIBIT 4

## Fw: another offer came in for 3.75, as is, 30 day closing. Do you want to match?

Alan Goldman <goldiefun@msn.com>
Tue 10/20/2020 6:32 PM
To:  John-Michael Grzan <jmgrzan@gmail.com>
Hi JM,

Sorry for the late response today. Another offer has come in with no advertising at all for much more money. Obviously I am giving my home away... Their terms are absolute and $500,000 more than yours as you can see below. I do not know them. I enjoyed our chat and my time with Adam,  so I am giving you the chance to act first.  Would you like to match their offer?  If so, I will sign our agreement tonight, return it to you immediately and my home will be yours. Or respectfully, I must entertain their offer and get back to you tomorrow. I am sure you understand my position with the difference of their offer being so large.
I am home and available if you would like to chat. Please feel free to call up to 10pm

Kind regards,
Alan


*So, I invited them both and had a wonderful meeting today for lunch.*

*They both are excited to work together and  asked me to submit a formal offer for the property.*

*The offer is the following:*

*Sales Price: 3,750,000 cash (Three Million seven hundred Fifty Thousand dollars)*

*Deposit: 3% to be held in escrow.*

*Closing: as soon as is practical, once all due diligence has been done.*

*Contingencies: not contingent to financing, not contingent to appraisal.*

*Commission: the buyer will assume compensation for my role in this transaction.*

*Please let me know if you have any questions!*

*Best regards,*

## Re: I will send the P&S first thing in the morning. another offer came in for 3.75, as is, 30 day closing. Do you want to match?

Alan Goldman <goldiefun@msn.com>
Wed 10/21/2020 2:11 AM
**To:** John-Michael Grzan <jmgrzan@gmail.com>
JM,

Sorry I could not get it out earlier. I only have one kidney left and when I "food fall asleep" I just don't wake up up for 3-4 hours. I will have it to you in the morning for you and your wife's review. You are still in first position out of fairness and your kindness JM. You are a good person and I am sure your wife is wonderful too.
I would like you to have my home if you choose.

Alan

---

**From:** John-Michael Grzan <jmgrzan@gmail.com>
**Sent:** Tuesday, October 20, 2020 7:10 PM
**To:** Alan Goldman <goldiefun@msn.com>
**Subject:** Re: another offer came in for 3.75, as is, 30 day closing. Do you want to match?

Hey Alan, well disappointing for me given I thought we had come to agreement but iit's good for you. Let me discuss with my wife and come back to you tonight.  Will you be around?  I was trying to get a hold of you through the day but without any luck.  Best, JM

Sent from my iPhone

> On Oct 20, 2020, at 6:32 PM, Alan Goldman <goldiefun@msn.com> wrote:
>
>
> Hi JM,
>
> Sorry for the late response today. Another offer has come in with no advertising at all for much more money. Obviously I am giving my home away... Their terms are absolute and $500,000 more than yours as you can see below. I do not know them. I enjoyed our chat and my time with Adam,  so I am giving you the chance to act first.  Would you like to match their offer?  If so, I will sign our agreement  tonight, return it to you immediately and my home will be yours. Or respectfully, I must entertain their offer and get back to you tomorrow. I am sure you understand my position with the difference of their offer being so large.
> I am home and available if you would like to chat. Please feel free to call up to 10pm
>
> Kind regards,
> Alan

*So, I invited them both and had a wonderful meeting today for lunch.*

*They both are excited to work together and  asked me to submit a formal offer for the property.*

*The offer is the following:*

*Sales Price: 3,750,000 cash (Three Million seven hundred Fifty Thousand dollars)*

*Deposit: 3% to be held in escrow.*

*Closing: as soon as is practical, once all due diligence has been done.*

*Contingencies: not contingent to financing, not contingent to appraisal.*

*Commission: the buyer will assume compensation for my role in this transaction.*

*Please let me know if you have any questions!*

*Best regards,*

**draft P&S for review. My apologies for my need to rest. One kidney to much protein...**

Alan Goldman <GoldieFun@msn.com>
Wed 10/21/2020 3:07 AM
**To:** John-Michael Grzan <jmgrzan@gmail.com>

📎 1 attachments (327 KB)
Draft Option Agreement2 Dorado Estates modified _13_SIGNED[1].pdf;

God morning JM,

 I am sorry I am a slave to my one  kidney/food and my need to rest/sleep after I eat and could not respond earlier. Food coma! But it could be worse.
Attached is a draft for you folks to review.  I have modified the draft to reflect what we spoke of JM, but I had formatting trouble that needs to please be fixed.
Still you should be able to see the essential changes for your approval.  I set up a 45 day extension (to relieve the pressure) if we need it with the terms we discussed to allow my real estate closing in Vermont to happen before Nov. 29. 2020. Please feel free to call first thing in the morning, I am an early riser heading back to sleep now with the aid  of an Ambien. One of the problems of one kidney; but again,  not so bad.

Kind regards,
Alan

**OPTION TO PURCHASE AGREEMENT**

**-AS PARTY OF THE FIRST PART**: Alan Goldman, of legal age, single and resident of Dorado, PR (hereinafter referred to as "Seller").

**-AS PARTY OF THE SECOND PART**:John-Michael Grzan and Namrata Khimani, of legal age, married and residents of Dorado, PR, or their designated assignee (hereinafter referred to as "Purchaser").

Seller and Purchaser each represents and warrants that they have the necessary legal capacity and authority to enter into this Option to Purchase Agreement (hereinafter referred to as this "Agreement") and to fulfill all the terms and conditions hereunder, according to the following:

**COVENANTS AND CONDITIONS**

1. **Property.** Seller is the sole owner of record in fee simple title of the Property located at: The Estates #13, Dorado, Puerto Rico 00646 (hereinafter referred to as the "Property").

2. **Grant of Option**. Seller hereby grants to Purchaser an exclusive option to purchase the Property pursuant to the terms and conditions contained herein.

3. **Purchase Price:** The purchase price agreed upon by both parties for the Property shall be the sum of THREE MILLION SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS ($3,750,000), payable in the following manner: a good faith deposit of ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($200,000) (the "Deposit") payable by check, money order or wire transfer, deposited in an escrow account held by The Title Security Group, LLC (the "Escrow Agent"), and the balance of THREE MILLION FIVE HUNDRED AND FIFTY THOUSAND DOLLARS ($3,550,000), payable to the Sellers on the closing date.

4. **"As Is" condition**: The purchase price includes all improvements and fixtures presently on the Property in "As Is" condition, including but not limited to electrical, plumbing and air conditioning equipment, kitchen and laundry appliances, ceiling and wall lamps, water heater, doors and furniture. does not include the following personal items: (list to be completed by this Wednesday the 21st)

5. **Exercise of Option, Term–Effective-Date**. The term for exercising the option shall be on or before thirty (30) calendar days from the date of signing this Agreement, which shall expire on _November, _21st, 2020. Purchaser understand that time is "TIME IS OF THE ESSENCE" for Sellers proceeds will be used to fund another time sensitive project.  It being understood, however, that Purchaser may extend this term, at its sole discretion, for 45 (45) additional calendar days if unexpected delays occur, by paying to seller directly $600,000 additional deposit money and the first $200,00 deposit money before the first 30 days expires, which Seller is going to use to make a land Purchase in Vermont. Both deposit monies totaling $800,000 will be applied to the purchase price. **TItle, Property – Free of Liens**. At the closing, Seller shall convey fee simple, recordable, marketable and insurable title to the Property free and clear of all liens, encumbrances and defects. The Property shall be conveyed free of all claims and debts including but not limited to the property taxes such as CRIM (Centro de Recaudaciones de Ingresos Municipales), Law 7 ("Ley de Contribución Especial"), HOA (Home Owners Association) regular or special assessments and any other debts that may exist. During the term of this Agreement the Property will not be sold or encumbered.**Deed of Sale**. In the event this option to purchase is exercised by Purchaser under the terms agreed upon both parties hereby agree to execute the Deed of Sale of the Property

public chosen by Purchaser. Purchaser will select a notary public who charges a maximum of 0.5% of the purchase price in notary fees, the minimum required by law.

8. **Legal Fees, Stamps and Vouchers – Original of Deed of Sale; Certified Copies – Cancellation of Mortgages or other liens- Recordation expenses**. Seller will pay the above described 0.5% notary fees as well as the internal revenue stamps, notary stamps and all other associated expenses for the execution and issuance of the Original of the Deed of Sale. Purchaser will pay the internal revenue stamps, vouchers, notary stamps and all other associated expenses for the issuance of a Certified Copy of the Deed of Sale and for its filing at the Registry of the Property. In the event that any mortgages, liens and/or encumbrances appear upon the Property, Seller shall be solely responsible for their cancellation and will pay the customary 0.5% notary fees to the public notary chosen by Purchaser, as well as the internal revenue stamps, vouchers, notary stamps and all other associated expenses for the filing and recordation of such cancelations at the Registry of the Property.

9. **Property – Inspection.** This Agreement is subject to an inspection that there is no evidence of hazardous contaminant on the property conducted by a licensed professional duly certified by the Commonwealth of Puerto Rico if the buyer chooses to conduct such tests. The inspection shall be conducted and the contingency concluded within 15  days of the execution of this Agreement. In the event that the inspection report reflects any out of the ordinary contaminant and the parties cannot reach an agreement with regards to the repair of such damages or defects, this Agreement may be terminated by Purchaser in which case the Deposit shall be promptly returned to Purchaser and, upon such return, neither party shall have any further obligation hereunder

10. **Possessions – Property**. Purchaser shall have the right to inspect the Property immediately prior to the execution of the Deed of Sale and Seller will deliver possession of the Property at closing.

11. **Lead Notification**. The parties acknowledge that if the Property has been built prior to 1978, the provisions of the Residential Lead Based Paint Hazard Reduction Act, 42 USC § 4852, shall apply to the purchase transaction. This law requires Seller and his agent or broker to disclose to Purchaser any knowledge they might have about the presence of lead-based paint on the Property and the dangers it presents. The law also gives Purchaser a period of ten (10) days in which to inspect the Property for such purposes, and terminate this Agreement if there is proof of such contaminant. The law further requires that Seller provide Purchaser with a brochure prepared by the Federal Agency for Environmental Protection for that purpose. In accordance with the foregoing, Seller certifies that it is not aware of the existence of lead-based paint or hazard of lead-based paint in the Property covered by this Agreement. Purchaser agrees and acknowledges that if the Deed of Sale is executed within ten (10) days from the date of this Agreement, he shall freely and voluntarily give up his right to inspect the Property for the purpose aforesaid. Purchaser further acknowledges that he has been given a pamphlet or brochure related to lead-based paint at the time of the execution of this Agreement.

12. **Property Taxes and Maintenance Fees**. Property taxes and HOA regular and special assessments corresponding to or due or imposed upon the Property up to the date of execution of the Deed of Sale shall be the responsibility of Seller, and from that date forward shall be the responsibility of Purchaser.

{AMG: 432212.DOCX v.2} Seller _____ Seller _____ Purchaser _*JG*_ Purchaser _*NK*_

7

13. **Valid Signatures-Counterparts.** This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same agreement. Any party to this Agreement may deliver an executed copy by facsimile transmission or electronic mail to another party and such delivery shall have the same force and effect as any delivery of a manually signed copy of this Agreement.

14. **Default by Purchaser. Remedies of Seller.** In the event Purchaser, after exercise of the Option granted herein, fails to proceed with the closing of the purchase of the Property pursuant to the terms and provisions contained herein, Seller shall be entitled to retain the Option Fee as liquidated damages and pursue any equitable remedies under law.

15. **Default by Seller. Remedies Purchaser.** In the event Seller, after exercise of the Option granted herein, fails to proceed with the closing of the sale of the Property pursuant to the terms and provisions contained herein, Purchase shall be entitled to receive back the Option Fee and pursue any equitable remedies under law.

16. **Entire Agreement.** This Agreement contains all of the terms, promises, covenants, conditions and representations made or entered into by or between Seller and Purchaser and supersedes all prior discussions and agreements whether written or oral between Seller and Purchaser with respect to the Option, and all other matters contained herein, and constitutes the sole and entire agreement  between Seller and Purchaser with respect thereto. This Agreement may not be modified or amended unless such amendment is set forth in writing and executed by both Seller and Purchaser with the formalities hereof.

17. **Severability**. If a court of competent jurisdiction holds any provision of this Agreement to be invalid or unenforceable in whole or in part for any reason, the validity and enforceability of the remaining clauses shall not be affected.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and they initial all pages and sign in the places and on the dates below stated.


     **Seller:**


By: _____    By: _____

Place: _____          Place: _____

Date: _____          Date: _____

**Purchaser:**

By: _____          By: _____

Place: Puerto Rico                        Place: Puerto Rico

Date: October 13th 2020                   Date: October 13th 2020

Exhibit A

9

## OFFER FOR #13

Alan Goldman <GoldieFun@msn.com>
Wed 10/21/2020 5:43 PM
**To:** John-Michael Grzan <jmgrzan@gmail.com>

📎 1 attachments (2 MB)
P.S.A13dorado.pdf;

Dear JM,

My home of many years is now yours. Please feel free to call any time tonight.

Kind regards,

Alan

## OPTION TO PURCHASE AGREEMENT

-**AS PARTY OF THE FIRST PART**: Alan Goldman, of legal age, single and resident of Dorado, PR (hereinafter referred to as "Seller").

-**AS PARTY OF THE SECOND PART**:John-Michael Grzan and Namrata Khimani, of legal age, married and residents of Dorado, PR, or their designated assignee (hereinafter referred to as "Purchaser").

Seller and Purchaser each represents and warrants that they have the necessary legal capacity and authority to enter into this Option to Purchase Agreement (hereinafter referred to as this "Agreement") and to fulfill all the terms and conditions hereunder, according to the following:

### COVENANTS AND CONDITIONS

1. **Property.** Seller is the sole owner of record in fee simple title of the Property located at: The Estates #13, Dorado, Puerto Rico 00646 (hereinafter referred to as the "Property").

2. **Grant of Option.** Seller hereby grants to Purchaser an exclusive option to purchase the Property pursuant to the terms and conditions contained herein.

3. **Purchase Price:** The purchase price agreed upon by both parties for the Property shall be the sum of THREE MILLION SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS ($3,750,000), payable in the following manner: a good faith deposit of TWO HUNDRED THOUSAND DOLLARS ($200,000) (the "Deposit") payable by check, money order or wire transfer, deposited in an escrow account held by The Title Security Group, LLC (the "Escrow Agent"), and the balance of THREE MILLION FIVE HUNDRED AND FIFTY THOUSAND DOLLARS ($3,550,000), payable to the Sellers on the closing date.

4. **"As Is" condition:** The purchase price includes all improvements and fixtures presently on the Property in "As Is" condition, including but not limited to electrical, plumbing and air conditioning equipment, kitchen and laundry appliances, ceiling and wall lamps, water heater, doors and furniture. Sale does not include any art or the following personal items: (list to be completed by Friday Oct. 30th)

5. **Exercise of Option, Term–Effective-Date.** The term for exercising the option shall be on or before thirty (30) calendar days from the date of signing this Agreement, which shall expire on _November._ _21st, 2020. Purchaser understand that time is "TIME IS OF THE ESSENCE" for Sellers proceeds will be used to fund another time sensitive project. It being understood, however, that Purchaser may extend this term. at its sole discretion, for 45 (45) additional calendar days if unexpected delays occur, by paying to seller directly $600,000 additional deposit money and the first $200,00 deposit money before the first 30 days expires. which Seller is going to use to make a land Purchase in Vermont. Both deposit monies totaling $800,000 will be applied to the purchase price. **Title, Property – Free of Liens.** At the closing. Seller shall convey fee simple. recordable, marketable and insurable title to the Property free and clear of all liens, encumbrances and defects. The Property shall be conveyed free of all claims and debts including but not limited to the property taxes such as CRIM (Centro de Recaudaciones de Ingresos Municipales), Law 7 ("Ley de Contribución Especial"), HOA (Home Owners Association) regular or special assessments and any other debts that may exist. During the term of this Agreement the Property will not be sold or encumbered.**Deed of Sale.** In the event this option to purchase is exercised by Purchaser under the terms herein agreed upon, both parties hereby agree to execute the Deed of Sale of the Property before a notary

Seller _~signature~_                    Purchaser          Purchaser

public chosen by Purchaser. Purchaser will select a notary public who charges a maximum of 0.5% of the purchase price in notary fees, the minimum required by law.

8. **Legal Fees, Stamps and Vouchers – Original of Deed of Sale; Certified Copies – Cancellation of Mortgages or other liens- Recordation expenses**. Seller will pay the above described 0.5% notary fees as well as the internal revenue stamps, notary stamps and all other associated expenses for the execution and issuance of the Original of the Deed of Sale. Purchaser will pay the internal revenue stamps, vouchers, notary stamps and all other associated expenses for the issuance of a Certified Copy of the Deed of Sale and for its filing at the Registry of the Property. In the event that any mortgages, liens and/or encumbrances appear upon the Property, Seller shall be solely responsible for their cancellation and will pay the customary 0.5% notary fees to the public notary chosen by Purchaser, as well as the internal revenue stamps, vouchers, notary stamps and all other associated expenses for the filing and recordation of such cancelations at the Registry of the Property.

9. **Property – Inspection.** This Agreement is subject to an inspection that there is no evidence of hazardous contaminant on the property conducted by a licensed professional duly certified by the Commonwealth of Puerto Rico if the buyer chooses to conduct such tests. The inspection shall be conducted and the contingency concluded within 15  days of the execution of this Agreement. In the event that the inspection report reflects any out of the ordinary contaminant and the parties cannot reach an agreement with regards to the repair of such damages or defects, this Agreement may be terminated by Purchaser in which case the Deposit shall be promptly returned to Purchaser and, upon such return, neither party shall have any further obligation hereunder

10. **Possessions – Property.** Purchaser shall have the right to inspect the Property immediately prior to the execution of the Deed of Sale and Seller will deliver possession of the Property at closing.

11. **Lead Notification.** The parties acknowledge that if the Property has been built prior to 1978, the provisions of the Residential Lead Based Paint Hazard Reduction Act, 42 USC § 4852, shall apply to the purchase transaction. This law requires Seller and his agent or broker to disclose to Purchaser any knowledge they might have about the presence of lead-based paint on the Property and the dangers it presents. The law also gives Purchaser a period of ten (10) days in which to inspect the Property for such purposes, and terminate this Agreement if there is proof of such contaminant. The law further requires that Seller provide Purchaser with a brochure prepared by the Federal Agency for Environmental Protection for that purpose. In accordance with the foregoing, Seller certifies that it is not aware of the existence of lead-based paint or hazard of lead-based paint in the Property covered by this Agreement. Purchaser agrees and acknowledges that if the Deed of Sale is executed within ten (10) days from the date of this Agreement, he shall freely and voluntarily give up his right to inspect the Property for the purpose aforesaid. Purchaser further acknowledges that he has been given a pamphlet or brochure related to lead-based paint at the time of the execution of this Agreement.

12. **Property Taxes and Maintenance Fees.** Property taxes and HOA regular and special assessments corresponding to or due or imposed upon the Property up to the date of execution of the Deed of Sale shall be the responsibility of Seller, and from that date forward shall be the responsibility of Purchaser.

{AMG: 432212.DOCX v.2} Seller _____ Seller _____ Purchaser _____ Purchaser _____

12

13. **Valid Signatures-Counterparts.** This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same agreement. Any party to this Agreement may deliver an executed copy by facsimile transmission or electronic mail to another party and such delivery shall have the same force and effect as any delivery of a manually signed copy of this Agreement.

14. **Default by Purchaser. Remedies of Seller.** In the event Purchaser, after exercise of the Option granted herein, fails to proceed with the closing of the purchase of the Property pursuant to the terms and provisions contained herein, Seller shall be entitled to retain the Option Fee as liquidated damages and pursue any equitable remedies under law.

15. **Default by Seller. Remedies Purchaser.** In the event Seller, after exercise of the Option granted herein, fails to proceed with the closing of the sale of the Property pursuant to the terms and provisions contained herein, Purchase shall be entitled to receive back the Option Fee and pursue any equitable remedies under law.

16. **Entire Agreement.** This Agreement contains all of the terms, promises, covenants, conditions and representations made or entered into by or between Seller and Purchaser and supersedes all prior discussions and agreements whether written or oral between Seller and Purchaser with respect to the Option, and all other matters contained herein, and constitutes the sole and entire agreement between Seller and Purchaser with respect thereto. This Agreement may not be modified or amended unless such amendment is set forth in writing and executed by both Seller and Purchaser with the formalities hereof.

17. **Severability.** If a court of competent jurisdiction holds any provision of this Agreement to be invalid or unenforceable in whole or in part for any reason, the validity and enforceability of the remaining clauses shall not be affected.

18. **Option.** This agreement will expire if not signed by all parties and returned to Seller by 11:59 pm Oct. 21, 2020

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and they initial all pages and sign in the places and on the dates below stated.

Seller:

By: _____     By: _____

{AMG: 432212.DOCX v.2} Seller _____ Seller _____ Purchaser _____ Purchaser _____

*13*

Place: <u>Montpelier, Vermont</u>                    Place: _____

Date: _October 21st, 2020_____      Date: _____

**Purchaser:**

By: _____              By: _____

Place: Puerto Rico _____          Place: Puerto Rico _____

Date: October 21st, 2020               _____Date: October 21st, 2020_____

_____

Exhibit A

14

## Re: One more time! OFFER FOR #13

**Alan Goldman** <goldiefun@msn.com>
Thu 10/22/2020 9:59 AM
**To:** John-Michael Grzan <jmgrzan@gmail.com>

📎 1 attachments (1 MB)
P.S.A#213dorado.pdf;

Hi JM , Lets make this happen before heart changes my mind!

---

**From:** John-Michael Grzan <jmgrzan@gmail.com>
**Sent:** Thursday, October 22, 2020 8:19 AM
**To:** Alan Goldman <goldiefun@msn.com>
**Subject:** Re: Are we still on? OFFER FOR #13

Hey , Yep still on . here's the signed contract. Can you please let me know the cadastre number and send over any other official deed documentation so that I can begin processing title etc on my side. Thanks, JM

On Thu, Oct 22, 2020 at 8:10 AM Alan Goldman <goldiefun@msn.com> wrote:

Hi Jm,

I called your voice mail is full. I need to please know if you are moving forward. Thanks

Alan

---

**From:** John-Michael Grzan <jmgrzan@gmail.com>
**Sent:** Thursday, October 22, 2020 12:17 AM
**To:** Alan Goldman <goldiefun@msn.com>
**Subject:** Re: OFFER FOR #13

Hey Alan
Sorry for the delay. We don't use our printer usually so couldn't get it connected but hopefully should resolve quickly in the morning and send over. Best JM

Sent from my iPhone

On Oct 21, 2020, at 5:43 PM, Alan Goldman <goldiefun@msn.com> wrote:

Dear JM,

My home of many years is now yours. Please feel free to call any time tonight.

Kind regards,

Alan
<P.S.A13dorado.pdf>

### OPTION TO PURCHASE AGREEMENT

-**AS PARTY OF THE FIRST PART**: Alan Goldman, of legal age, single and resident of Dorado, PR (hereinafter referred to as "Seller").

-**AS PARTY OF THE SECOND PART**:John-Michael Grzan and Namrata Khimani, of legal age, married and residents of Dorado, PR, or their designated assignee (hereinafter referred to as "Purchaser").

Seller and Purchaser each represents and warrants that they have the necessary legal capacity and authority to enter into this Option to Purchase Agreement (hereinafter referred to as this "Agreement") and to fulfill all the terms and conditions hereunder, according to the following:

### COVENANTS AND CONDITIONS

1. **Property.** Seller is the sole owner of record in fee simple title of the Property located at: The Estates #13, Dorado, Puerto Rico 00646 (hereinafter referred to as the "Property").

2. **Grant of Option.** Seller hereby grants to Purchaser an exclusive option to purchase the Property pursuant to the terms and conditions contained herein.

3. **Purchase Price:** The purchase price agreed upon by both parties for the Property shall be the sum of THREE MILLION SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS ($3,750,000), payable in the following manner: a good faith deposit of TWO HUNDRED THOUSAND DOLLARS ($200,000) (the "Deposit") payable by check, money order or wire transfer, deposited in an escrow account held by The Title Security Group, LLC (the "Escrow Agent"), and the balance of THREE MILLION FIVE HUNDRED AND FIFTY THOUSAND DOLLARS ($3,550,000), payable to the Sellers on the closing date.

4. **"As is" condition**: The purchase price includes all improvements and fixtures presently on the Property in "As Is" condition, including but not limited to electrical, plumbing and air conditioning equipment, kitchen and laundry appliances, ceiling and wall lamps, water heater, doors and furniture. Sale does not include any art or the following personal items: (list to be completed by Friday Oct. 30th)

5. **Exercise of Option, Term–Effective-Date.** The term for exercising the option shall be on or before thirty (30) calendar days from the date of signing this Agreement, which shall expire on _November, _21st, 2020. Purchaser understand that time is "TIME IS OF THE ESSENCE" for Sellers proceeds will be used to fund another time sensitive project. It being understood, however, that Purchaser may extend this term, at its sole discretion, for 45 (45) additional calendar days if unexpected delays occur, by paying to seller directly $600,000 additional deposit money and the first $200,00 deposit money before the first 30 days expires, which Seller is going to use to make a land Purchase in Vermont. Both deposit monies totaling $800,000 will be applied to the purchase price. **Title, Property – Free of Liens.** At the closing, Seller shall convey fee simple. recordable, marketable and insurable title to the Property free and clear of all liens, encumbrances and defects. The Property shall be conveyed free of all claims and debts including but not limited to the property taxes such as CRIM (Centro de Recaudaciones de Ingresos Municipales), Law 7 ("Ley de Contribución Especial"), HOA (Home Owners Association) regular or special assessments and any other debts that may exist. During the term of this Agreement the Property will not be sold or encumbered.**Deed of Sale.** In the event this option to purchase is exercised by Purchaser under the terms herein agreed upon, both parties hereby agree to execute the Deed of Sale of the Property before a notary

Seller _____    Purchaser _____    Purchaser _____

public chosen by Purchaser. Purchaser will select a notary public who charges a maximum of 0.5% of the purchase price in notary fees, the minimum required by law.

8. **Legal Fees, Stamps and Vouchers – Original of Deed of Sale; Certified Copies – Cancellation of Mortgages or other liens- Recordation expenses**. Seller will pay the above described 0.5% notary fees as well as the internal revenue stamps, notary stamps and all other associated expenses for the execution and issuance of the Original of the Deed of Sale. Purchaser will pay the internal revenue stamps, vouchers, notary stamps and all other associated expenses for the issuance of a Certified Copy of the Deed of Sale and for its filing at the Registry of the Property. In the event that any mortgages, liens and/or encumbrances appear upon the Property, Seller shall be solely responsible for their cancellation and will pay the customary 0.5% notary fees to the public notary chosen by Purchaser, as well as the internal revenue stamps, vouchers, notary stamps and all other associated expenses for the filing and recordation of such cancelations at the Registry of the Property.

9. **Property – Inspection.** This Agreement is subject to an inspection that there is no evidence of hazardous contaminant on the property conducted by a licensed professional duly certified by the Commonwealth of Puerto Rico if the buyer chooses to conduct such tests. The inspection shall be conducted and the contingency concluded within 15  days of the execution of this Agreement. In the event that the inspection report reflects any out of the ordinary contaminant and the parties cannot reach an agreement with regards to the repair of such damages or defects, this Agreement may be terminated by Purchaser in which case the Deposit shall be promptly returned to Purchaser and, upon such return, neither party shall have any further obligation hereunder

10. **Possessions – Property**. Purchaser shall have the right to inspect the Property immediately prior to the execution of the Deed of Sale and Seller will deliver possession of the Property at closing.

11. **Lead Notification**. The parties acknowledge that if the Property has been built prior to 1978, the provisions of the Residential Lead Based Paint Hazard Reduction Act, 42 USC § 4852, shall apply to the purchase transaction. This law requires Seller and his agent or broker to disclose to Purchaser any knowledge they might have about the presence of lead-based paint on the Property and the dangers it presents. The law also gives Purchaser a period of ten (10) days in which to inspect the Property for such purposes, and terminate this Agreement if there is proof of such contaminant. The law further requires that Seller provide Purchaser with a brochure prepared by the Federal Agency for Environmental Protection for that purpose. In accordance with the foregoing, Seller certifies that it is not aware of the existence of lead-based paint or hazard of lead-based paint in the Property covered by this Agreement. Purchaser agrees and acknowledges that if the Deed of Sale is executed within ten (10) days from the date of this Agreement, he shall freely and voluntarily give up his right to inspect the Property for the purpose aforesaid. Purchaser further acknowledges that he has been given a pamphlet or brochure related to lead-based paint at the time of the execution of this Agreement.

12. **Property Taxes and Maintenance Fees**. Property taxes and HOA regular and special assessments corresponding to or due or imposed upon the Property up to the date of execution of the Deed of Sale shall be the responsibility of Seller, and from that date forward shall be the responsibility of Purchaser.

{AMG: 432212.DOCX v.2} Seller _____ Seller _____ Purchaser _____ Purchaser _____

13. **Valid Signatures-Counterparts.** This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same agreement. Any party to this Agreement may deliver an executed copy by facsimile transmission or electronic mail to another party and such delivery shall have the same force and effect as any delivery of a manually signed copy of this Agreement.

14. **Default by Purchaser. Remedies of Seller.** In the event Purchaser, after exercise of the Option granted herein, fails to proceed with the closing of the purchase of the Property pursuant to the terms and provisions contained herein, Seller shall be entitled to retain the Option Fee as liquidated damages and pursue any equitable remedies under law.

15. **Default by Seller. Remedies Purchaser.** In the event Seller, after exercise of the Option granted herein, fails to proceed with the closing of the sale of the Property pursuant to the terms and provisions contained herein, Purchase shall be entitled to receive back the Option Fee and pursue any equitable remedies under law.

16. **Entire Agreement.** This Agreement contains all of the terms, promises, covenants, conditions and representations made or entered into by or between Seller and Purchaser and supersedes all prior discussions and agreements whether written or oral between Seller and Purchaser with respect to the Option, and all other matters contained herein, and constitutes the sole and entire agreement between Seller and Purchaser with respect thereto. This Agreement may not be modified or amended unless such amendment is set forth in writing and executed by both Seller and Purchaser with the formalities hereof.

17. **Severability**. If a court of competent jurisdiction holds any provision of this Agreement to be invalid or unenforceable in whole or in part for any reason, the validity and enforceability of the remaining clauses shall not be affected.

18 **Option.** This  contract offer will expire if not executed by Buyers before 11:59 am Oct. 2 2, 2020 and returned to Seller signed.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed and they initial all pages and sign in the places and on the dates below stated.

Seller:

By: _____          By: _____

{AMG: 432212.DOCX v.2} Seller _____ Seller _____ Purchaser _____ Purchaser _____

Place: Montpelier, Vermont                    Place: _____

Date: _October 21st, 2020_____      Date: _____


      Purchaser:

By: _____              By: _____

Place: Puerto Rico_____                Place: Puerto Rico_____

    Date: October 22nd, 2020              _____Date: October 22nd, 2020_____

    _____


Exhibit A

20

**Re: One more time! OFFER FOR #13**

**Alan Goldman <goldiefun@msn.com>**
Thu 10/22/2020 9:59 AM
To: John-Michael Grzan <jmgrzan@gmail.com>

📎 1 attachments (1 MB)
P.S.A#213dorado.pdf;

Hi JM , Lets make this happen before heart changes my mind!

---

**From:** John-Michael Grzan <jmgrzan@gmail.com>
**Sent:** Thursday, October 22, 2020 8:19 AM
**To:** Alan Goldman <goldiefun@msn.com>
**Subject:** Re: Are we still on? OFFER FOR #13

Hey , Yep still on . here's the signed contract. Can you please let me know the cadastre number and send over any other official deed documentation so that I can begin processing title etc on my side. Thanks, JM

On Thu, Oct 22, 2020 at 8:10 AM Alan Goldman <goldiefun@msn.com> wrote:

Hi Jm,

I called your voice mail is full. I need to please know if you are moving forward. Thanks

Alan

**From:** John-Michael Grzan <jmgrzan@gmail.com>
**Sent:** Thursday, October 22, 2020 12:17 AM
**To:** Alan Goldman <goldiefun@msn.com>
**Subject:** Re: OFFER FOR #13

Hey Alan
Sorry for the delay. We don't use our printer usually so couldn't get it connected but hopefully should resolve quickly in the morning and send over. Best JM

Sent from my iPhone

On Oct 21, 2020, at 5:43 PM, Alan Goldman <goldiefun@msn.com> wrote:

Dear JM,

My home of many years is now yours. Please feel free to call any time tonight.

Kind regards,

Alan
<P.S.A13dorado.pdf>

22

## Re: One more time! OFFER FOR #13

**Alan Goldman** <goldiefun@msn.com>
Thu 10/22/2020 10:07 AM
**To:** John-Michael Grzan <jmgrzan@gmail.com>

📎 1 attachments (1 MB)
P.S.A#213dorado.pdf;

I just looked and their is one attached to the email "one more time" . Did you receive it?

---

**From:** John-Michael Grzan <jmgrzan@gmail.com>
**Sent:** Thursday, October 22, 2020 10:03 AM
**To:** Alan Goldman <goldiefun@msn.com>
**Subject:** Re: One more time! OFFER FOR #13

Hey Alan,
Can you send me a valid contract please.  We don't have one now cause of the expiration date.  So I need that back in hand  please. Sorry just putting out some fires over here

On Thu, Oct 22, 2020 at 9:59 AM Alan Goldman <goldiefun@msn.com> wrote:
Hi JM , Lets make this happen before heart changes my mind!

---

**From:** John-Michael Grzan <jmgrzan@gmail.com>
**Sent:** Thursday, October 22, 2020 8:19 AM
**To:** Alan Goldman <goldiefun@msn.com>
**Subject:** Re: Are we still on? OFFER FOR #13

Hey , Yep still on . here's the signed contract. Can you please let me know the cadastre number and send over any other official deed documentation so that I can begin processing title etc on my side. Thanks, JM

On Thu, Oct 22, 2020 at 8:10 AM Alan Goldman <goldiefun@msn.com> wrote:
Hi Jm,

I called your voice mail is full. I need to please know if you are moving forward. Thanks

Alan

23

**From:** John-Michael Grzan <jmgrzan@gmail.com>
**Sent:** Thursday, October 22, 2020 12:17 AM
**To:** Alan Goldman <goldiefun@msn.com>
**Subject:** Re: OFFER FOR #13

Hey Alan
Sorry for the delay. We don't use our printer usually so couldn't get it connected but hopefully should resolve quickly in the morning and send over. Best JM

Sent from my iPhone

> On Oct 21, 2020, at 5:43 PM, Alan Goldman <goldiefun@msn.com> wrote:
>
>
> Dear JM,
>
> My home of many years is now yours. Please feel free to call any time tonight.
>
> Kind regards,
>
> Alan
> <P.S.A13dorado.pdf>