**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

TEAL PEAK CAPITAL, LLC;

Plaintiff,

v.

ALAN BRAM GOLDMAN;

Defendant.

Civil No. 3:20-cv-1747

Breach Of Contract; Specific
Performance Of Contract;
Reimbursement Of Funds, Costs
And Expenses

## Teal Peak Capital's Answer to
## Amended Counterclaim

**To the Honorable District Court:**

**Comes Now**, Teal Peak Capital, LLC ("TPC"), and through the undersigned attorney, respectfully states, alleges and prays:

Mr. Goldman's responsive allegations incorporated in this section of the Amended Counterclaim are of the type that do not require a responsive pleading. The rest of what is averred in this section is denied. TPC did not in any shape or form breach any obligation it had with Alan Bram Goldman's ("Mr. Goldman"), neither did it incurred in any malicious act, be it by direct action or omission.

### I. Nature of Action

1.      The averment contained in paragraph 1 of the Amended Counterclaim is denied. First, Teal Peak Capital, LLC is a separate entity from John Michael Grzan ("Mr. Grzan") and his wife, Namrata Khimani ("Dr. Khimani") (jointly referred to as "Grzan-Khimani"). Second, TPC was never represented nor counseled in any shape or form by the Firm Ferraiuoli, LLC ("Ferraiuoli"), nor any of its attorneys, in the process of negotiating the purchase of Mr. Goldman's property at Dorado Beach Estate

("Property").  Wherefore, TPC did not incur in any insidious machinations (or "*dolo*"), neither before nor after the signing of the *Option to Purchase Agreement* executed on October 23, 2020.  Third, --although not contractually obligated to do so under the terms of the *Option to Purchase Agreement*-- TPC reached an agreement with Mr. Goldman's broker, Gerald Kleis-Pasarell, so Mr. Goldman could comply with his obligation to deliver clean title of the Property.  The agreement, as clearly stated in all the emails and settlement documents, would come into effect at closing; meaning, immediately after closing, the Broker's attorney would file a Voluntary Dismissal and Cancelation of Notice of Lis Pendens, drafts that had already been prepared by December 10, 2020.  But because Mr. Goldman refused to close, the settlement could not be consummated.  In other words, it was Mr. Goldman who, through his own acts and omissions, prevented TPC from helping him resolve the lawsuit filed by Mr. Kleis.  In sum, the Counterclaim filed by Mr. Goldman is predicated on falsehoods, made up to hide his failure to abide by the covenant of good faith and close the transaction as stipulated in the *Option to Purchase Agreement* validly and informedly executed on October 23, 2020.  Worst, Mr. Goldman's accusation of fraud and conspiracy involving attorneys of the law Firm of Ferraiuoli is extremely reckless, to say the least, because Mr. Goldman possess no evidence to demonstrate that Ferraiuoli was involved in any shape or form in the process of negotiating the *Option to Purchase Agreement.*  We demand that such allegations be withdrawn and, if Mr. Goldman refuses, that this Court impose the highest sanctions possible.

2.      The averment contained in paragraph 2 is a petition for relief, not an allegation of fact that requires a responsive pleading, wherefore, it is neither denied nor

2

accepted.   In the alternative, TPC denies that Mr. Goldman has any right to the remedies sought in the Amended Counterclaim.

## II. The Parties

3.      TPC accepts the allegation contained in paragraph 3 of the Amended Counterclaim.

4.      TPC accepts the allegation contained in paragraph 4 of the Amended Counterclaim.

5.      The averment contained in paragraph 5 is a petition for relief, not an allegation of fact that requires a responsive pleading. Further, the relief sought is not directed against TPC.  Wherefore, the averment it is neither denied nor accepted.

6.      The allegation contained in paragraph 6 of the Amended Counterclaim is not directed at TPC.  Therefore, no responsive pleading on its part is required.  In the alternative, it is denied.

7.      The allegation contained in paragraph 7 of the Amended Counterclaim is not directed at TPC.  Therefore, no responsive pleading on its part is required.

## III.  Jurisdiction and Venue

8.      TPC accepts the allegation contained in paragraph 8 of the Amended Counterclaim.

9.      TPC accepts the allegation contained in paragraph 9 of the Amended Counterclaim.

## IV.  General Allegations

10.      TPC denies the allegation contained in paragraph 10 of the Amended Counterclaim on the basis that it lacks knowledge or information sufficient to form a

belief about the truth of the averment.  TPC also alleges that Mr. Goldman's incident with his neighbor four years ago has nothing to do and is completely unrelated and irrelevant to Mr. Goldman's present agreement to sell his Property.

11.     TPC denies the allegations contained in the first and second sentences of paragraph 11 of the Amended Counterclaim on the basis that it lacks knowledge or information sufficient to form a belief about the truth of the averment.  In any event, TPC alleges that the "value" of a property is public information, easily obtainable through multiple means, not "inside information".  Further, Mr. Goldman and his representatives possess no evidence whatsoever to prove or even allow for the inference that anyone at Ferraiuoli shared any "inside information" regarding the Property with TPC prior to the signing of the *Option to Purchase Agreement* on October 23, 2020.  The indirect accusation is reckless, to say the least.  In response to the third sentence, TPC denies the averment.  TPC was never advised, counseled nor assisted in any way by anyone at Ferraiuoli in the process of negotiating with Mr. Goldman the *Option to Purchase Agreement* executed on October 23, 2020.  Similarly, TPC never acquired nor received any information whatsoever from Ferraiuoli regarding the Property, its value or of Mr. Goldman prior to the signing of the *Option to Purchase Agreement*.  Further, the price of the Property stipulated in the *Option to Purchase Agreement* was established by Mr. Goldman.  Finally, in response to the fourth and fifth sentences contained in paragraph 11 of the Amended Counterclaim, TPC denies them on the basis that it lacks knowledge or information sufficient to form a belief about the truth of the averment.

12.     TPC denies the allegation contained in paragraph 12 of the Amended Counterclaim.  Without forfeiting any attorney client privilege, TPC alleges that it first

sought the services of Ferraiuoli on November 21, 2020, more than a month after the *Option to Purchase Agreement* had been signed, and because Mr. Goldman had defaulted on his obligation to sell the Property as agreed.

13.     TPC denies the allegation contained in paragraph 13 of the Amended Counterclaim.  TPC alleges, first, that it never approached Mr. Goldman to purchase the Property.  Mr. Goldman was approached by his neighbor, Mr. Adam Long, on behalf of Mr. John Michael Grzan.  Second, Mr. Goldman never told TPC about the incident with his neighbor and of Ferraiuoli's involvement prior to the signing on October 23, 2020 of the *Option to Purchase Agreement*.  All communications between Mr. Goldman and Mr. Grzan were by email, except for one call on the 20th of October, during which no mention of the incident of cutting trees or Ferraiuoli ever took place.  Third, although Mr. Goldman mentioned of his previous health issues with cancer, at no point did he expressed anything about mental or physical incapacity to engage in this process. Instead, just the opposite. He talked much about his great experience in real estate, how he had major ongoing projects right now (like the one he needed the $800,000 deposit for), that he was actively managing residential properties he owned and personally leading renovation projects like moving to green energy in the units, that he had additional major projects planned for Vermont such as creating park areas and how he was socially active and was working on holding a major concert event in Vermont headlined by the famous band Phish who he mentioned was friends with.  Fourth, TPC was never advised, counseled nor assisted by anyone at Ferraiuoli in the process of negotiating with Mr. Goldman the *Option to Purchase Agreement*.  Similarly, TPC never acquired nor received any information whatsoever from Ferraiuoli regarding the

Property, its value or of Mr. Goldman prior to the signing on October 23, 2020 of the *Option to Purchase Agreement*.   Moreover, the allegation in the sense that TPC maliciously concealed that Ferraiuoli was his legal representative during the negotiations and that it hid from Mr. Goldman the conflict-of-interest, thereby giving TPC an unfair advantage in the negotiations and violating the basic principles of honesty and good faith is conclusory in nature, plainly illogical and incapable of supporting a reasonable inference that the conduct occurred; thus, frivolous.   To start, TPC could not have concealed that Ferraiuoli was its legal representative during the negotiations because if that were the case, Mr. Goldman would have at least received one communication from someone at Ferraiuoli purporting to represent TPC prior to the signing of the *Option to Purchase Agreement*, which Mr. Goldman never received nor will he be able to produce.   Similarly, Mr. Goldman does not state what information, if any, did TPC received that could have given it an advantage in the process of negotiating the *Option to Purchase Agreement*.   Regardless, that information does not exist.

14.     In response to the first and second sentences contained in paragraph 14 of the Amended Counterclaim, TPC denies both on the basis that it lacks knowledge or information sufficient to form a belief about the truth of the averment.   The third sentence does not require a responsive pleading.   Regarding the remaining averments/sentences contained in paragraph 14, TPC denies all.   TPC alleges that Mr. Goldman never told TPC that the other prospective buyer who made the $3,750,000 offer was represented by Ferraiuoli.   That is simply false.   Second, Mr. Goldman did not notify of the offer in good faith.   When Mr. Goldman notified of the new offer, he already

had agreed to sell the Property to Mr. Grzan and his wife, Dr. Khimani, for $3,250,000. To use Mr. Goldman's own words expressed days before the announcement of the second offer: "my home is under contract to a nice family! I keep my word." So, Mr. Goldman broke the $3,250,000 agreement when he offered Grzan-Khimani to match the $3,750,000 offer, and he did so because he was greedy, as he admitted later in an email sent on October 23, 2020: "I was greedy and should have been more appreciative." Furthermore, Grzan-Khimani did not agree to match the offer on time, for the draft that Mr. Goldman sent contained many errors, as he admitted in his email, and there were several matters that needed to be ironed out. So, by the time they were resolved, the offer had expired. Also, Mr. Goldman leaves out the fact that he extended the deadline, but Grzan-Khimani decided to pull out and not buy the Property, decision Mr. Grzan informed Mr. Goldman twice by email. Last, TPC did not conceal that Ferraiuoli represented it because Ferraiuoli never represented it prior to the signing of the Option to Purchase Agreement. That averment is once more denied as conclusory, illogical and frivolous.

15.    In response to the allegation contained in paragraph 15 of the Amended Counterclaim, TPC accepts that on October 22, 2020, Ferraiuoli, on behalf of Hyung Soon Lee ("Mr. Lee"), withdrew the $3,750,000 offer, and denies the rest, particularly the averment that the withdrawal was "without any justification whatsoever", for the communication sent to Mr. Goldman clearly states that Mr. Lee, "after consideration of the conditions proposed by seller" decided to withdraw his offer. It is also denied that after Mr. Lee's withdrawal TPC and Ferraiuoli were back in the "driver seat of the negotiations". First, after Mr. Goldman was "greedy" –to use his own words—and went

back on his word by asking Grzan-Khimani to match the $3,750,000 offer, Grzan-Khimani pulled out and notified Mr. Goldman that they were not going to buy the Property, twice.  So, there was nothing to negotiate; Grzan-Khimani had ended the negotiations by pulling out and letting Mr. Goldman know he was free to sell the Property to whomever he wished.  Further, TPC was never advised, counseled nor assisted by anyone at Ferraiuoli, LLC in the process of negotiating with Mr. Goldman the *Option to Purchase Agreement*.  Similarly, TPC never acquired nor received any information whatsoever from Ferraiuoli, LLC regarding the Property, its value or of Mr. Goldman prior to signing the *Option to Purchase Agreement.*

16.     In response to the allegation contained in paragraph 16 of the Amended Counterclaim, TPC admits that on October 23, Mr. Grzan, Dr. Khimani and Mr. Goldman executed an *Option to Purchase Agreement*, through which Grzan and Khimani, or their assignee, were given an exclusive option to purchase the Property for $3,150,000.00, which was $600,000 less than Mr. Lee's offer, who was represented by Ferraiuoli, LLC; and denies the rest of the allegation.  TPC alleges that the *Option* was signed because Mr. Goldman sought Mr. Grzan and offered him a reduced price on the Property.

17.     In response to the allegation contained in paragraph 17 of the Amended Counterclaim, TPC admits that on November 5, 2020, Mr. Gerald Kleis Pasarell, Mr. Goldman's real estate broker, filed an action against him alleging that he was owed a commission for the sale of the Property, and denies the rest of the averment.  TPC alleges that the lawsuit was filed because Mr. Goldman –once again—went back on his word, this time with his broker.  TPC had nothing to do with the filing of that complaint.

In addition, TPC alleges that "sorting everything" with Mr. Kleis was not amongst the obligations of TPC in the *Option to Purchase Agreement.*  Mr. Goldman violates the parol evidence rule by trying to use extrinsic purported obligations to justify his failure to comply with the terms of the validly executed *Option to Purchase Agreement*, none of which was "sorting everything" with Mr. Kleis.  In the alternative, "sorting everything" with Mr. Kleis was contingent upon closing, condition that was clearly communicated to Mr. Goldman through email and established in all the settlement documents approved and reviewed by Mr. Goldman.  The condition however was not met because Mr. Goldman –once again—went back on his word.  Last, the Complaint filed by Mr. Kleis is no longer active in the local courts.  It was dismissed.

18.   In response to the allegation contained in paragraph 18 of the Amended Counterclaim, TPC admits that pursuant to Clause 5 of the *Option to Purchase Agreement*, TPC had until November 23, 2020 to exercise and close the sale of the Property, and that to extend the closing period by 30 additional days, TPC had to pay Mr. Goldman an additional $600,000 before the first 30 days expired; and denies the rest of the averment.  TPC alleges that it exercised the *Option to Purchase the Property* before the November 23, 2020 deadline, but was unable to purchase the Property because Mr. Goldman defaulted by failing to provide "fee simple, recordable, marketable and insurable title of the Property free and clear of all liens, encumbrances and defects," as stipulated in the Agreement.  TPC also alleges that the additional $600,000 were paid in accordance with the terms of the Agreement, for it was Mr. Goldman who provided incorrect bank information and later, upon recognizing the error, accepted receiving a total of $800,000 by November 24, 2020, amount he still retains

despite alleging that the *Option to Purchase Agreement* is null and void.   In the alternative, if Mr. Goldman contends that TPC defaulted because it did not pay the $600,000 directly to him on November 23, 2020, then Mr. Goldman incurred in fraud and illegal appropriation because he accepted the money, kept it for himself and represented to all involved that the *Option to Purchase Agreement* was still on while knowing the Agreement had expired and while having no intentions of complying with its terms.

19.    TPC denies the allegation contained in paragraph 19 of the Amended Counterclaim because it is false.   TPC alleges, first, that Mr. Goldman knew that the *Option to Purchase Agreement* had been assigned to TPC weeks prior to December 18, through several emails sent by both Mr. Grzan and the notary chosen to close the transaction.   Second, the *Option to Purchase Agreement* did not require Mr. Grzan to notify Mr. Goldman of any assignment.   Third, nowhere in the December 18 letter does Ferraiuoli state or informed that it represented TPC during the negotiations to purchase the Property.   Nowhere.   Fourth, solving the issue with Mr. Kleis was not amongst the obligations of TPC in the *Option to Purchase Agreement*.   Mr. Goldman violates the parol evidence rule by trying to introduce extrinsic purported obligations to justify his failure to comply with the validly executed *Option to Purchase Agreement*.   In the alternative, settling the lawsuit filed with Mr. Kleis was contingent upon closing, condition that was clearly communicated to Mr. Goldman through email and established in the settlement documents approved and reviewed by Mr. Goldman.

20.    In response to the allegation contained in paragraph 20 of the Amended Counterclaim, TPC admits that Mr. Goldman informed of the passing of Mrs. Carmen

Cividanes and denies the rest.  TPC alleges that Mrs. Carmen Cividanes passing was irrelevant to the closing, and that bringing that issue was just an excuse used by Mr. Goldman to justify his failure to comply with the terms of the *Option to Purchase Agreement*.  TPC and every party involved were ready to close on December 15, 2020, and Mrs. Cividanes purported death happened on December 22, 2020.  Further, Mrs. Cividanes had nothing to do with the closing, for it was Mr. Rey Rios who was granted the power of attorney to close on behalf of Mr. Goldman.  It was Mr. Rios who was going to sign the Purchase and Sale Deed, not Mrs. Cividanes, so her passing was no impediment for the closing to take place.

21.    In response to the allegation contained in paragraph 21 of the Amended Counterclaim, TPC admits that on December 24, 2020, it filed a Complaint against Mr. Goldman for breach of contract and damages.

### First Cause of Action: Breach of Contract and the Implied Covenant of good Faith

22.     TPC incorporates by reference as if fully alleged herein every response set forth in the preceding paragraphs.  Mr. Goldman's responsive allegations incorporated in paragraph 22 of the Amended Counterclaim are of the type that do not require a responsive pleading.

23.    TPC admits the allegation contained in paragraph 23 of the Amended Counterclaim.

24.    In response to the allegation contained in paragraph 24 of the Amended Counterclaim, TPC admits that pursuant to the *Option to Purchase Agreement* it had until November 23, 2020 to pay Mr. Goldman the Extension Payment of $600,000.00, and denies the rest.  TPC alleges that on November 23, 2020, with the information

11

provided by Mr. Goldman, Mr. Grzan went to the bank to wire the $600,000.  The bank, however, told Mr. Grzan that the transaction could not go through because the bank information provided by Mr. Goldman was incorrect.  Thus, it was Mr. Goldman who prevented Mr. Grzan from paying the $600,000 directly to him on the 23rd of November. Regardless, Mr. Goldman accepted that Mr. Grzan deposited the money in the escrow account on November 23rd.  He also agreed to have the money transferred on the following day, by signing a release and after being told, twice, the money would be wired on the 24th of November.  Last, at no point in time did Mr. Goldman state that the Agreement had been violated.  To the contrary, he accepted the money and continued to act as if he would close on the transaction.  In the alternative, if Mr. Goldman contends that TPC defaulted because it did not pay the $600,000 directly to him on November 23, 2020, then Mr. Goldman incurred in fraud and illegal appropriation because he accepted the money, kept it for himself and represented to all involved that the *Option to Purchase Agreement* was still on while knowing the Agreement had expired and while having no intentions of complying with its terms.

25.    TPC denies the allegation contained in paragraph 25 of the Amended Counterclaim.  TPC exercised its option on time and the transaction did not close because Mr. Goldman refused to do so.  Thus, TPC is entitled to specific performance.

26.    The averment contained in paragraph 26 of the Amended Counterclaim is an argument of law that does not require a responsive pleading.  In the alternative, it is denied as an inaccurate representation of the law.

27.    TPC denies the allegation contained in paragraph 27 of the Amended Counterclaim.  Ferraiuoli never advised nor counseled TPC, much less represented it in

the process of negotiating the *Option to Purchase Agreement* with Mr. Goldman. Furthermore, Ferraiuoli did not represent Mr. Goldman in a related matter, for the controversy for which Mr. Goldman hired Ferraiuoli did not involve matters relating to the sale of the home, but the cutting of trees by Mr. Goldman's neighbor.  In any event, the relationship of Mr. Goldman with Ferraiuoli ended in a bad note in 2018, two years before TPC negotiated the *Option to Purchase Agreement.*  Last, TPC did produce evidence of source of funds for the cash payment required at the closing.

28.    The allegation contained in paragraph 28 is conclusory and an argument of law, for which no responsive pleading is required.  In the alternative, TPC denies having breached the implied covenant of good faith because it was never represented by Ferraiuoli, and therefore it had nothing to reveal or disclose to Mr. Goldman prior to the signing of the *Option to Purchase Agreement*.

**Second Cause of Action: Deceit by Insidious Machinations**
**(Dolo)**

29.    TPC incorporates by reference as if fully alleged herein every response set forth in the preceding paragraphs.  Mr. Goldman's responsive allegations incorporated in paragraph 29 of the Amended Counterclaim are of the type that do not require a responsive pleading.

30.    The allegation contained in paragraph 30 of the Amended Counterclaim is an argument of law, for which a responsive pleading is not required.  In the alternative, it is denied as an inaccurate description of the law.

31.    The allegation contained in paragraph 31 of the Amended Counterclaim is an argument of law, for which a responsive pleading is not required.  In the alternative, it is denied as an inaccurate description of the law.

32.     TPC denies the allegation contained in paragraph 32 of the Amended Counterclaim.  The averments are simply false and illogical at best.  TPC incorporates by reference all denials and allegations pertaining to Ferraiuoli's lack of involvement in the negotiations to purchase the Property.

33.     The averment contained in paragraph 33 of the Amended Counterclaim is a petition for relief, for which no responsive pleading is required.  In the alternative, TPC denies that Mr. Goldman has the right to nullify the *Option to Purchase Agreement*.

34.     The allegation contained in paragraph 43 of the Amended Counterclain is denied.  Mr. Goldman has suffered no damages for he signed the *Option to Purchase Agreement* willingly.  It was Mr. Goldman who set the price and who pushed Mr. Grzan back into the transaction after he had pulled out.

### Third Cause of Action Piercing the Corporate Veil Against Teal Peak Capital, LLC

35.     TPC incorporates by reference as if fully alleged herein every response set forth in the preceding paragraphs.   Mr. Goldman's responsive allegations incorporated in paragraph 35 of the Amended Counterclaim are of the type that do not require a responsive pleading.

36.     The averment contained in paragraph 36 of the Amended Counterclaim is not a statement of fact that requires a responsive pleading.  In the alternative, the averment is denied and TPC alleges that the facts of this case do not support the piercing of TPC's corporate veil.

37.     The averment contained in paragraph 37 of the Amended Counterclaim is an argument of law that does not require a responsive pleading.  In the alternative, it is denied as an inaccurate description of the law.

38.     The averment contained in paragraph 38 of the Amended Counterclaim is an argument of law that does not require a responsive pleading.  In the alternative, it is denied as an inaccurate description of the law.

39.     The averment contained in paragraph 39 of the Amended Counterclaim is an argument of law or description of a doctrine that does not require a responsive pleading.  In the alternative, it is denied as an inaccurate description of the law or doctrine.

40.     TPC denies the allegation contained in paragraph 40 of the Amended Counterclaim.  There has never been unity of interest and ownership between John Michael Grzan, Namrata Khimani, and TPC.

41.     TPC denies the allegation contained in paragraph 41 of the Amended Counterclaim.  There has never been unity of ownership between John Michael Grzan, Namrata Khimani, and TPC.

42.     TPC denies the allegation contained in paragraph 42 of the Amended Counterclaim.  There has never been unity of interest and ownership between John Michael Grzan, Namrata Khimani, and TPC.  Further, TPC is not the "alter ego of John Michael Grzan, Namrata Khimani; and neither was it created or been used to commit fraud or for illicit purposes.  Mr. Goldman's allegations in that regard are conclusory and he lacks any evidence to even make a plausible claim, thus, the averments are frivolous.

43.     TPC denies the allegation contained in paragraph 43 of the Amended Counterclaim.  TPC is not the "alter ego of John Michael Grzan, Namrata Khimani; and neither was it created or been used to commit fraud or for illicit purposes.  Mr.

Goldman's allegations in that regard are conclusory and he lacks any evidence to even make a plausible claim.

44.    TPC denies the allegation contained in paragraph 44 of the Amended Counterclaim.  Mr. Goldman's allegation is conclusory and he lacks any evidence to even make a plausible claim.

45.    TPC denies the allegation contained in paragraph 45 of the Amended Counterclaim.  TPC incorporates by reference all denials contained in the preceding paragraphs relating to having breached any obligation with Mr. Goldman.

### Affirmative Defenses

1.    The Amended Counter claim is time barred by the applicable statute of limitations.

2.    Mr. Goldman is estopped from his own actions to claim the *Option to Purchase Agreement* is null and void.

3.    Mr. Goldman incurred in fraud and illegal appropriation because he accepted the $800,000 earnest money deposit, kept it for himself and represented to all involved that the *Option to Purchase Agreement* was still on while knowing the Agreement had expired and while having no intentions of complying with its terms.

4.    Mr. Goldman's claim is barred by the doctrine of res judicata.

5.     TPC reserves the right to raise any other defense once known during the discovery process.

**Wherefore**, TPC respectfully requests from this Honorable Court to dismiss with prejudice the Amended Counterclaim filed by Mr. Goldman and impose upon him payment of costs and attorney's fees for filing a blatant frivolous claim.

**Respectfully Submitted.**

In San Juan, Puerto Rico, this 8th day of June 2021.

**I hereby certify** that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notice of its filing electronically to the attorneys of record.

**Sánchez-Betances, Sifre & Muñoz-Noya, LLC**
33 Calle Bolivia, Suite 500
San Juan, PR 00917
t. 787-756-7880
f. 787-753-6580

s/*Adrián Sánchez-Pagán*
**Adrián Sánchez-Pagán**
USDPR NO. 223311
asanchez@sbsmnlaw.com

17