**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| TEAL PEAK CAPITAL, LLC; | Case No. 3:20-CV-01747 (PAD) |
| *Plaintiff and Counter Defendant*, | |
| And | BREACH OF CONTRACT; SPECIFIC PERFORMANCE OF CONTRACT; REIMBURSEMENT OF FUNDS, COSTS AND EXPENSES |
| JOHN MICHAEL GRZAN AND NAMRATA KHIMANI | |
| *Counter Defendant*, | |
| v. | |
| ALAN BRAM GOLDMAN; | |
| *Defendant and Counter Claimant*. | |

<u>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**</u>

**TO THE HONORABLE COURT:**

COMES NOW defendant Alan Bram Goldman (hereinafter, "Mr. Goldman") through the undersigned attorney, and hereby respectfully submits this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. In support of this motion, Mr. Goldman argues as follows:

## I. PRELIMINARY STATEMENT

Teal Peak Capital, LLC (hereinafter "TPC" or the "Plaintiff") brings this purported breach of contract action against Mr. Goldman on three causes of action: (i) Specific Performance; (ii) Damages – Lost Rent; and (iii) Damages. <u>See</u> Docket No. 50, pgs. 14-18. In a nutshell, TPC claims that Mr. Goldman purposefully defaulted on his obligation

to sell his ancestral home located in The Estates #13, Dorado, Puerto Rico (hereinafter the "Property"). As such, the Plaintiff requests that Mr. Goldman transfer his title of the Property over to TPC. Furthermore, Plaintiff also claims that Mr. Goldman should reimburse TPC for lost rent in an amount not less than $35,000.00 a month computed from December 15, 2020 up until April 2021 <u>and</u> that this Honorable Court should order a payment of three additional months in "prospective rent for the time it will take TPC to rent the property once judgment is entered." Docket No. 50, ¶¶ 86-93. In the alternative, if this Honorable Court is unable to force Mr. Goldman to sell his Property, then TPC requests a whopping, but "conservative", amount of $8,160,000.00 for damages.

Nothing in the present motion should be interpreted as an admission to TPC's factual allegations. Indeed, Mr. Goldman emphatically disagrees with characterization of the facts that claim that he unilaterally defaulted in his obligation under the Option to Purchase Agreement or that TPC, John Michael Grzan and Namrata Khimani are faultless in their endeavor to cheat Mr. Goldman from his ancestral home. We also hold that the sale of the Property in question was not ready to close due to a baseless claim brough forth by Mr. Gerald Kleis Pasarell (hereinafter "Mr. Kleis") which resulted in a Notice of Lis Pendens in the Registry of Property and prevented the title insurance company from issuing a policy. Although these issues are indeed highly relevant to the present controversy, they are not topics of discussion in Mr. Goldman's Motion to Dismiss the Amended Complaint. Mr. Goldman affirmatively sustains that he is in the process of consigning the Option Fee ($800,000) and will promptly do so in good faith. Lastly, the present motion should not be construed as a waiver of Mr. Goldman's affirmative defenses.

For the reasons set forth below, Mr. Goldman respectfully petitions this Honorable Court to dismiss TPC's causes of actions because they fail for one distinct reason: the Option to Purchase Agreement does not consider Specific Performance, Damages for Loss of Rent, and Damages representing monies that TPC would have earned if it sold the property, as valid remedies in the event the Mr. Goldman default.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," nor must it "consider naked assertions devoid of further factual enhancement."  San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 687 F.3d 465, 471 (1st Cir. 2012) (internal citations and alterations omitted).  Once the Court removes "legal conclusions masquerading as factual allegations," the Court conducts a context-specific plausibility analysis on a plaintiff's claims.  Rivera-Muñiz v. Horizon Lines Inc., 737 F. Supp. 2d 57, 59 (D.P.R. 2010).  In ruling on a motion to dismiss for failure to state a claim, the court "may also consider 'facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss.'" Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019) (quoting Arturet-Vélez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).

### III.  SUMMARY OF FACTUAL ALLEGATIONS

The following factual allegations from the Amended Complaint are taken as true for purposes of this motion:

1.     "During the latter weeks of September or first week of October 2020, John Michael Grzan ("Mr. Grzan") was approached by his friend and neighbor Adan Long ("Mr. Long") about a property that was for sale at Dorado Beach Estates." Docket No. 50 at p. 2, ¶ 7 (hereinafter the "Complaint").

2.     "The property belonged to the Defendant Mr. Goldman and the address was: The Estates #13, Dorado, Puerto Rico ("Property")." Complaint at p. 2, ¶ 8.

3.     "After examining the Property and discussing the possible purchase with his wife, Namrata Khimani ("Dr. Khimani") (together with Mr. Grzan, "Grzan-Khimani"), Mr. Grzan expressed interest to Mr. Long; and Mr. Long, as a favor and on behalf of Mr. Grzan and his wife, negotiated with Mr. Goldman the purchase of the Property." Complaint at p. 3, ¶ 12.

4.     "After a few conversations and email exchanges, Mr. Goldman agreed to sell the Property for $3,250,000." Complaint at p. 3, ¶ 13.

5.     "Having agreed upon a price, on October 14, Mr. Grzan sent to Mr. Goldman –through Mr. Long—a signed copy of an Option to Purchase Agreement." Complaint at p. 3, ¶ 14.

6.     "Mr. Goldman did not sign the document, however, and when pressed by Mr. Long, expressed having difficulty with letting go of some of the personal items in the Property and the logistics of moving others out. Nevertheless, he sent to Mr. Grzan a modified draft of the Option to Purchase Agreement while assuring him that despite

receiving other offers 'my home is under contract to a nice family! I keep my word.'" Complaint at p. 4, ¶ 16.

7.     "Surprisingly, on October 20, 2020, Mr. Goldman wrote to Mr. Grzan and, despite having said his "home was under contract", told him he had received another offer for $3,750,000 he could not refuse, and asked Grzan-Khimani if they wanted to match it." Complaint at p. 4, ¶ 17.

8.     Before making a final decision, they asked Mr. Goldman to send a new and signed copy of the Option to Purchase Agreement with the modified terms. However, the draft had errors and before the parties could settle the details, the Option to Purchase Agreement had expired.  See Complaint at p. 4 ¶¶ 18-19.

9.     As such, Mr. Goldman sent a modified draft to extend the deadline to 11:59 pm of October 22, 2020 and sent it to Mr. Grzan. Grzan-Khimani did not accept the new terms and notified Mr. Goldman that they would not buy the Property and that he was free to sell the Property to other potential buyers. See Complaint at p. 4 ¶¶ 20-22.

10.     Nonetheless, on October 23, 2020, Mr. Goldman unilaterally decided to offer the Property for $3,150,000 to convince Grzan-Khimani to buy the Property. Grzan-Khimani accepted the offer and executed the Option to Purchase Agreement (hereinafter the "Option to Purchase") on October 23, 2020. See Complaint at p. 5 ¶¶ 24-26 and Exhibit 1 of the Complaint.

11.     "[T]he parties agreed that Grzan-Khimani had 30 calendar days from the date of signing the Option Agreement –until November 23, 2020– to exercise the option (the "Exercise Period"). See, Exhibit 1, Option Agreement, ¶ 5. However, if closing was not possible within the Exercise Period due to unexpected delays, Grzan-Khimani could

extend the Exercise Period for an additional 30 days (the "Extension Period") by paying directly to Mr. Goldman, before the expiration of the Exercise Period, another $600,000.00, for an aggregate amount of $800,000.00 (the "Extension Payment"). The remaining balance $2,350,000.00 would be paid at closing. See, id. The Extension Payment would be applied to the Purchase Price and would be used by Defendant to purchase a land located in Vermont, U.S.A. See, id." Complaint at p. 6 ¶ 28.

12.    "Further, pursuant to Clause 5 of the Option Agreement, and because the Purchase Price was to be used by Defendant for funding a time-sensitive project, the parties agreed that the Option Agreement was "subject to the good faith belief of the title company and attorney that closing within the given time frame is reasonable[,]" and therefore both Grzan-Khimani and Mr. Goldman agreed to "make best and reasonable efforts to provide needed material and take reasonable action necessary to close in a timely manner." See, Exhibit 1, Option Agreement, ¶5." Complaint at p. 6 ¶ 29.

13.    Mr. Grzan deposited $200,000 to the escrow account corresponding to the initial deposit and hired the services of notary Miguel Carbonell-Astor. Miguel Carbonell-Astor sent a checklist of the necessary items that parties would need to fulfill to close. See Complaint at p. 7 ¶¶ 33-34.

14.    Grzan-Khimani allegedly assigned the Option to Purchase to Plaintiff Teal Peak Capital, LLC (hereinafter, "TPC"). See Complaint at p. 7 ¶ 35.

15.    "On November 5, 2020, Mr. Grzan was notified of a lawsuit filed by Mr. Kleis, Mr. Goldman's real estate broker, in which the former alleged that Mr. Goldman had refused to honor their agreement and pay the brokerage fee applicable to the sale of the Property. The Complaint was captioned: Gerald Kleis Pasarell, v. Alan Bram Goldman;

Civil Case Number BY2020CV03482." Id. at p. 8 ¶ 36 Mr. Kleis also filed a Notice of Lis Pendens in the Registry of Property. See Complaint at p. 8 ¶ 37

16.    "Mr. Grzan –on behalf of TPC-- continued to do all that was necessary to close the transaction in time." Complaint at p. 8 ¶ 38.

17.    TPC then alleges that Mr. Goldman failed to comply with his obligations under the Option to Purchase because he did not provide "fee simple, recordable, marketable and insurable title of the Property free and clear of all liens, encumbrances and defects," did not execute a Power of Attorney to authorize the signature of the Deed of Sale; and that Mr. Goldman did not resolve the lawsuit filed by Mr. Kleis which resulted in the failure of the title insurance company to issue the corresponding policy. See Complaint at pp. 8-9 ¶ 40.

18.    TPC extended the closing date by paying an additional $600,000 on November 24, 2020. See Complaint at p. 9 ¶¶ 41-47.

19.    "TPC, through Mr. Grzan, agreed on the side to settle with Mr. Kleis the lawsuit he had filed for collection of money to clean the title of the Property. However, in email sent to Mr. Goldman on November 23, 2020, Mr. Grzan made the following clear: 'Please also note that this settlement is contingent on us actually closing, which I expect we will be able to do.'" Complaint at p. 10 ¶ 49.

20.    However, Mr. Goldman allegedly refused to respond to Mr. Grzan's and Miguel Carbonell-Astor's communications, thereby preventing the closing of the Property on or before December 15, 2020, which was the date set for closing. See Complaint at pp. 10-11 ¶¶ 52-58.

21.   "Because Mr. Goldman defaulted on its obligations despite TPC having exercised its option to purchase the Property, TPC was left with no other alternative but to file a Complaint on December 24, 2020 and seek specific performance." Complaint at p. 12 ¶ 63.

## IV.  ARGUMENT

### A.  The allegations of the Amended Complaint fail to state a claim for relief

TPC did not state a plausible claim for relief for the following reason: the Option to Purchase Agreement does not consider Specific Performance, Damages for Loss of Rent, and Damages corresponding monies that TPC would have earned if it sold the property, as valid remedies in the event the Mr. Goldman default.

> *I.  The Option to Purchase Agreement does not Consider Specific Performance, Damages for Loss of Rent, and Damages corresponding to monies that TPC would have earned if it sold the Property as plausible remedies in the case of Mr. Goldman's default.*

The First Cause of Action in the Complaint alleges that TPC has a right to the specific performance of the Option to Purchase because Mr. Goldman allegedly defaulted on his contractual obligations. See the Complaint p. 14-16, ¶¶ 72-85. The Second Cause of Action in the Complaint alleges that TPC has a right to be compensated for the loss of rent it would have begun to receive beginning in April of 2021 due to Mr. Goldman's alleged default. See the Complaint p. 16-17, ¶¶ 86-93. Lastly, the Third Cause of Action of the Complaint alleges that TPC has a right to be compensated for the costs incurred in the process of closing the sale, the $800,000 corresponding to the deposit, and monies that TPC would have earned if it had sold the property. Altogether, TPC requests a "conservative" sum of $8,160,000. See the Complaint p. 17-18, ¶¶ 94-99.

Nonetheless, Mr. Goldman poses that TPC's appreciation of the facts, the Option to Purchase (Exhibit 1 of the Complaint), and the applicable law to the "unilateral nature" that defines an Option Contract is incorrect.

When a Court intervenes in contractual relations, it should balance the legal interests affected by its intervention. See Coop. Sabanena v. Casiano Rivera, 184 D.P.R. 169, 181-82 (2011). Furthermore, as a part of its analysis, the Court must consider the doctrine of the autonomy of the will, which governs contractual relations. See Coop. Sabanena v. Casiano Rivera, 184 D.P.R. at 182. The Court, in exercising its power to intervene and moderate the contractual autonomy of the parties, must exercise extreme care and its intervention must be clearly justified "because of its harmful effects on the stability of contracts and on legal certainty." López de Victoria v. Rodriguez, 113 D.P.R. 265, 271, 13 P.R. Offic. Trans. 341, 349 (1982). This is so because, intervening with the autonomy of the parties has the effect of modifying, or even annulling a law. See Coop. Sabanena v. Casiano Rivera, 184 D.P.R. at 182. Indeed, "contracts have force of law between the parties, who must fulfill what was accorded as long as it does not contravene the law, morals or public order . . ." S.L.G. Irizarry v. S.L.G. Gracia, 155 D.P.R. 713, 725, 2001 WL 1555664, _ P.R. Offic. Trans. _ (2001); See also 31 L.P.R.A. § 2994; Article 1233 of the Civil Code of Puerto Rico, Act 55 of June 1, 2020 (hereinafter the "Code"). Moreover, our rules of contractual hermeneutics require that "[i]f the terms of the contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." S.L.G. Irizarry v. S.L.G. Gracia, 155 D.P.R. at 725 (*quoting* 31 L.P.R.A. § 3471). Likewise, as it pertains to unilateral contracts, Article

354 of the Code states that the literal meaning of its words shall be taken into account, unless it clearly appears that the author's will was otherwise.

Here, TPC argues that the Option to Purchase is a unilateral contract in which "the optionee is under no obligation to purchase, while the prom[isor] has the obligation to sell to the optionee if the latter so decides." See the Complaint, p. 15, ¶ 78 (quoting S.L.G. Irizarry v. S.L.G. Gracia, 155 D.P.R. at 722). Even if we were to accept the unilateral nature of the contract at hand, we cannot ignore the clear terms of the contract which represent the law between the parties. Specifically, Clause 15 (Remedies of Purchaser) of the Option to Purchase states that: "In the event [Mr. Goldman], after exercise of the Option granted herein, fails to proceed with the closing of the sale of the Property pursuant to the terms and provisions contained herein, Purchase[r] shall be entitled to receive back the Option Fee and pursue any equitable remedies under law." Exhibit 1 of the Complaint. Clause 15's terms are clear insofar as it limits the remedy available in case of seller default. Specifically, the purchaser has a right to recover the Option Fee and pursue any equitable remedies under the law.

Because there is no confusion as to the clear terms of the Option to Purchase, the literal sense of its stipulations shall be observed. Note, that nowhere did the parties consider (i) forcing the sale of Mr. Goldman's ancestral home; (ii) damages for loss of rent; or (iii) damages corresponding monies that TPC would have earned if it sold the Property, as plausible remedies in case of Mr. Goldman's default. As such, pursuant to Clause 15 of the Option to Purchase, TPC's only plausible remedy would be to recover the amount deposited to secure the extension of the closing date and any equitable remedy under the law.

## V.  CONCLUSION

For the foregoing reasons, Alan Bram Goldman requests that the three causes of action alleged by TPC in the Amended Complaint be dismissed for failure to state a plausible claim for relief in light of the parties contractual will.

WHEREFORE, Alan Bram Goldman respectfully requests that the Honorable Court enter judgment dismissing all claims against him with prejudice.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 18th day of June 2021.

*Attorney for Alan Bram Goldman*
**McConnell Valdés LLC**
PO Box 364225
San Juan, Puerto Rico 00936-4225
270 Ave. Muñoz Rivera
Hato Rey, PR 0918
T: 787-250-5604

By: s/ Antonio A. Arias-Larcada
Antonio A. Arias-Larcada, Esq.
USDC-PR 204906
aaa@mcvpr.com

IT IS HEREBY CERTIFIED that on this date we filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice electronically to all counsel at their address of record.

Date: June 18, 2021                                    By: s/Antonio A. Arias-Larcada
                                                                          Attorney