# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **TEAL PEAK CAPITAL, LLC;** Plaintiff, v. **ALAN BRAM GOLDMAN**; Defendants. | Civil No. 3:20-cv-1747<br><br>Breach Of Contract; Specific Performance Of Contract; Reimbursement Of Funds, Costs And Expenses |

## Response in Opposition to
### *"Defendant's Motion to Dismiss Plaintiff's Amended Complaint"*

**To the Honorable Court:**

**Comes Now**, Teal Peak Capital, LLC ("TPC"), and through the undersigned attorney, respectfully states and prays:

### I. Background

On May 28, 2021, TPC amended its Complaint [ECF No. 50]. To avoid having to admit or falsely deny the undisputable well pleaded facts alleged therein, and show that he raised unsustainable defenses and accusations, Mr. Goldman sorted to filing a meritless –to say the least—Motion to Dismiss under Rule 12(b)(6) of Civil Procedure [ECF No. 63]. The motion is nothing more than a tactical move to avoid the inevitable: the sale of the property for the agreed upon price. And now he has changed his theory to say that TPC is trying to cheat him out of his ancestral home. As such, this Honorable Court should take note of the expenses TPC continues to incur to fend off meritless obstacles to his right –such as the denied Motion for Judgment on the Pleadings [ECF No. 47], so that at the end, attorneys' fees be imposed upon Mr. Goldman. With that, we respond to the Motion to Dismiss.

II. Discussion

**Rule 12(b)(6) Standard**

To meet the 15-page limit requirement of Local Rule 7(e), we adopt by reference Mr. Goldman's description of Rule 12(b)(6) legal standard. We add, however, that in evaluating the sufficiency of the allegations, the Court must "draw all reasonable inferences in favor of the plaintiff." *Hill v. Gozani*, 638 F.3d 40, 55 (1st Cir.2011). For the same expressed reason, we also adopt as if stated herein all the Allegations contained in the Amended Complaint, which, taken as true, clearly demonstrates that the *Option to Purchase Agreement* is a valid agreement that Mr. Goldman in bad faith decided to default on.

**The Merits –or lack thereof— of the Motion to Dismiss**

Without any real analysis, Mr. Goldman contends that Clause 15 of the *Option to Purchase Agreement* is "clear insofar as it limits the remedy available in case of seller [sic] default." To him, the only remedy available to TPC is receiving "back the Option Fee and pursue any equitable remedies under law." [ECF No. 63 p. 10] Hence, because TPC requests specific performance and damages under Puerto Rico's Civil Code, and neither of those are mentioned in the Option to Purchase Agreement, Mr. Goldman concludes that the Amended Complaint fails to state a claim upon which relief can be granted. Defendant is mistaken.

First, the language used in Clause 15 of the *Option to Purchase Agreement* does not reach the clear, conclusive, and unequivocal threshold necessary to amount to a renunciation of TPC's rights under the law. Neither as an exoneration clause. Second, Clause 15 is ambiguous as to the parties' intent; therefore, this Court must explore and determine what the parties' intentions were, which is a question of fact for the jury rather than a question of law for the judge. Last, and in the alternative, if this Court were to determine that Clause 15 excludes all remedies at law, it clearly allows TPC to

pursue equitable remedies, and specific performance is an equitable remedy, amongst others like monetary compensation in the event specific performance is unavailable.

A. **The language used in Clause 15 of the *Option to Purchase Agreement* does not reach the clear, conclusive, and unequivocal threshold necessary to amount to a renunciation of TPC's rights under the law.**

Before we dive into the heart of the matter, it is imperative to highlight certain unquestionable premises. First, because this Court sits in diversity jurisdiction and the parties did not provide otherwise in the *Option to Purchase Agreement*, the substantive law applicable to the controversy at hand is that of the Commonwealth of Puerto Rico. *Cochran v. Quest Software, Inc.*, 328 F.3d 1 (1st Cir. 2003) ("It is elementary that a federal court sitting in diversity jurisdiction must borrow the substantive law of the forum state.") citing, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Second, the *Option to Purchase Agreement* entered between the parties is governed by the provisions of the Civil Code of Puerto Rico that regulate obligations and contracts in general. *See*, *Rosa Valentín v. Vázquez Lozada*, 3 P.R. Offic. Trans. 1115, 1125; 103 DPR 796, 804 (1975) ("An option contract is involved here which is governed not by the sale provisions, but by those that govern obligations and contracts in general.") *See*, *also*, *Pritchard v. Norton*, 106 U.S. 124, 129–130, (1882) ("[W]hatever goes to the substance of the obligation and affects the rights of the parties, <u>as growing out of the contract itself or inhering in it or attaching to it</u>, is governed by the law of the contract.") (Our emphasis.) Third, the provisions that govern the *Agreement* entered between the parties are those of the Civil Code of 1930, for the document was signed on October 23, 2020, a month before the Civil Code of 2020 came into effect[1].

Based on these undisputed premises, the *Option to Purchase Agreement* entered between the parties must be interpreted in accordance with Puerto Rico Law, and, consequently, "growing out of

the [*Agreement*] itself or inhering in it or attaching to it" are all the provisions and remedies that govern obligations and contracts in general. *Pritchard*, 106 U.S. at 129-130. *Rosa Valentín*, 3 P.R. Offic. Trans. at 1125 ("An option contract is involved here which is governed not by the sale provisions, but by those that govern obligations and contracts in general.") This is axiomatic, and unless stated otherwise, all remedies provided by the provisions that govern obligations and contracts in general –the Civil Code-- are inherent in the contract, without any need of formal expression. Hence, implicit in any bilateral obligation is the right to demand specific performance and/or damages as established in Article 1077 of the Civil Code. Article 1077, in pertinent part, states:

> The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.
>
> The person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfilment, should the latter appear impossible.

31 LPRA § 3052.

The right to pursue specific performance or damages as provided by Article 1077 grows out or is inherent in any option to purchase agreement, because although such contracts are unilateral in nature, once the optionee exercises the option granted, the obligation becomes bilateral and the right to pursue specific performance is borne. That is exactly what the Supreme Court of Puerto Rico clarified in *Rosa Valentín*:

> In this manner, the declaration which implies the exercise of the option transforms the unilaterally connecting promise into synallagmatic. As of this moment any of the parties may require performance of the reciprocal obligations, obligations to make, which consist in executing the final contract.

3 P.R. Offic. Trans. at 1131.

---

[1] As is well known, the Civil Code of Puerto Rico was amended and the new Code came into effect on November 28, 2020.

*See*, *also*, *P.D.C.M. Assoc. v. Najul Bez*, 174 DPR 716 (2008) (Granting plaintiff's demand for specific performance of an option to purchase agreement after the option was timely exercised and the defendants refused to close on the sale of the property)[2].

Because the right of any party to file these actions in the event of a default is inherent in any contract governed by the provisions of the Civil Code, for a court to bar a contracting party from exercising such rights, said party must have necessarily exonerated the other from future defaults or waived those rights. Article 4 of the Civil Code states that "[r]ights granted by the laws may be renounced, provided such renunciation be not contrary to law, to public interest or public order, or prejudicial to the interest of a third person." Interpreting this Article, the Supreme Court of Puerto Rico has stated that in our system of laws, clear, conclusive, and unequivocal language in the contract is necessary for the renunciation of rights authorized by Article 4 of the Civil Code to be effective, especially when it comes to agreements in which one party is exonerated from responsibility for future acts. *Chico v. Editorial Ponce, Inc.*, 1 P.R. Offic. Trans. 1036; 101 D.P.R. 759 (1973). *See*, *also*, *Alvarado Aviles v. Burgos*, 601 F.Supp. 29 (D.P.R. 1984) ("The Supreme Court of Puerto Rico has held that "clear and explicit language is required in the contract to absolve a person from the consequences of his own conduct.") Furthermore, agreements exempting a party from liability are not favored by the law and, consequently, should be interpreted strictly and against the party that rests on such renunciations to free itself from responsibility. *Chico*, 1 P.R. Offic. Trans. at 1058 ("It is a universally accepted rule that agreements exempting from liability for negligence are not favored by the law; [citations omitted] and should therefore be strictly construed against the party relying on them to avoid liability, and, if possible, their interpretation should be against exemption.") citing *Cabrera v.*

---

[2] In this case, the Supreme Court also ruled that when an optionee pays an additional premium to extend the option past the agreed upon date and the optionor accepts the payment, the option is novated and the contract remains in full force.

5

*Doval*, 76 D.P.R. 777, 781 (1954). Based on these tenets, to determine whether a specific clause exempts a party from the consequences of his own conduct, the Court must determine whether the waiver is clear, conclusive, and unequivocal. It must also ascertain "(1) whether the parties' intent was clear; and (2) whether the waiver is contrary to the law, the public interest, or the public order, or prejudicial to the interests of a third person." See, *Sylva v. Culebra Dive Shop*, 389 F.Supp.2d 189, n. 3 (D.P.R. 2005) citing to *Chico*, *supra* and *Cabrera*, *supra*.

A quick read of Clause 15 should suffice to conclude that it does not contain clear, conclusive, and unequivocal language stating that TPC waived his right to pursue any remedy at law inherent in the Agreement –such as specific performance and damages, as provided by Article 1077 of the Civil Code. Neither that it exonerated Mr. Goldman from the consequences of a future default.

Clause 15 of the *Option to Purchase Agreement* reads as follows:

**Default by Seller. Remedies Purchaser**. In the event Seller, after exercise of the Option granted herein, fails to proceed with the closing of the sale of the Property pursuant to the terms and provisions contained herein, Purchase[r] shall be entitled to receive back the Option Fee and pursue any equitable remedies under law.

Nowhere in said clause did the parties said that the *only* remedies available to purchaser would be the ones outlined there, word that without a doubt would have met the clear, conclusive, and unequivocal threshold. Neither did the parties state that purchaser "was *waiving* all other rights under the law". And much less did they state that purchaser was "*exonerating* seller" from any future default. In sum, the language is not exclusive or restrictive in nature. Similarly, by interpreting the clause strictly and against exoneration –as Puerto Rico law requires—all one can conclude is that what the parties intended was to outline remedies purchaser could pursue in the event of sellers' default. But under no circumstance can a strict interpretation lead to the conclusion that the parties excluded other remedies, or that those outlined would be the *only* remedies at purchaser's disposal, for such

6

interpretation would mean that TPC either waived his rights under the law or exonerated Mr. Goldman from a future default without using clear, conclusive, and unequivocal language.

Considering the other requirements: "(1) whether the parties' intent was clear; and (2) whether the waiver is contrary to the law, the public interest, or the public order, or prejudicial to the interests of a third person," TPC did not waive any rights under the law, nor did it exonerate Mr. Goldman from liability under the law in the event he refused to sign the Sale Deed. No exclusive or restrictive language was employed in the Clause. Regarding whether the clause is contrary to the law or the public interest, we contend that to adopt Mr. Goldman's interpretation would go against the law and public interest. As stated before, clauses whereby a party is exonerated from responsibility –which is what Mr. Goldman contends Clause 15 does—are not favored and should "be strictly construed against the party relying on them to avoid liability, and, if possible, their interpretation should be against exemption." *Chico*, 1 P.R. Offic. Trans. at 1058. So, interpreting Clause 15 as exonerating Mr. Goldman from liability under the law when nowhere is there clear, conclusive, and unequivocal language to that effect would be against the public interest.

So, taking as true all the well pleaded facts in the Amended Complaint [ECF No. 50], as required by Rule 12(b)(6), TPC timely exercised its option to purchase Mr. Goldman's property and Mr. Goldman refused to sign the Deed of Sale. From the moment TPC exercised the option the agreement became bilateral and once Mr. Goldman's refused to close on the sale of the property, TPC had the right to file an action for specific performance and/or damages, as provided by Article 1077 of the Civil Code. Wherefore, the actions filed in the Amended Complaint state a claim upon which relief can be granted.

**B. Clause 15 is ambiguous as to the parties' intent; therefore, this Court must explore and determine what the parties intended in Clause 15, which is a question of fact for the jury rather than a question of law for the judge.**

It is well established –under Puerto Rican law— that if "the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." Article 1233 of the Civil Code; 31 LPRA sec. 3471. However, when the words used "appear contrary to the evident intention of the contracting parties, the intention shall prevail." *Id.* To judge the intention of the parties, Article 1234 mandates that "attention must principally be paid to their acts, contemporaneous and subsequent to the contract." 31 LPRA sec. 3472. In these circumstances, the matter becomes one for the trier of facts. *Sylva*, 389 F.Supp.2d at 193. *See*, *also*, *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 178 (1st Cir. 1995) ("the interpretation of [ambiguous] contract language, itself acknowledged, becomes a question of fact for the jury rather than a question of law for the judge") citing *In re Newport Plaza Assocs.*, 985 F.2d 640, 645 (1st Cir.1993).

"Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation....'" *Borschow Hosp. and Medical Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 15 (1st Cir. 1996). Clause 15 can be understood in more than one sense, leaving room for doubt, controversies and/or differences of interpretation.

Said clause states that in the event purchaser exercises his option and seller fails to proceed with the closing of the sale of the Property, "Purchase[r] shall be entitled to receive back the Option Fee and pursue any equitable remedies under law." This last part can be understood in more than one sense because the word *shall* is ambiguous. Citing renown professor, author and Editor in Chief of Black's Law Dictionary, Bryan A. Garner:

> As commonly used, then, *shall* violates the presumption of consistent usage in a great variety of ways. That's the main reason the word invites so much litigation, and why the judicial holdings are so wildly inconsistent in stating what it means. [footnote omitted] The encyclopedia of litigated terms entitled *Words and Phrases* devotes 75 pages to various judicial pronouncements on the variable meanings of *shall*. Black's Law Dictionary records five common senses. [footnote omitted].

Bryan A. Garner, *Garner's Guideline for Drafting & Editing Contracts* 157 (West Academic Publishing 2019).

> Black's Law Dictionary defines *shall* in five different ways:
>
> **shall**, vb. **1**. Has a duty to; more broadly, is required to <the requester shall send notice> <notice shall be sent>. **2**. Should (as often interpreted by courts) <all claimants shall request mediation>. **3**. May <no person shall enter the building without first signing the roster>. **4**. Will (as a future-tense verb) <the debtor shall then be released from all debts>. **5**. Is entitled to <the secretary shall be reimbursed for all expenses>. · Only sense 1 is acceptable under strict standards of drafting.

Black's Law Dictionary 1379 (7th ed. 1999).

Because of its multiple senses, it is unclear what the parties intended when they used *shall* in Clause 15. In accordance with its definition, *shall* could be substituted for *should*, *may*, *will*, or *is* and Clause 15 would still make sense. For example, the parties could have intended for Clause 15 to read: "Purchaser *may* be entitled to" or "Purchaser *should* be entitled to." If that were the case, the description of the remedies following the term would be precatory in nature, but not restrictive or exclusive. Also, if the parties intended to say that "Purchaser *will* be entitled to", then the remedies described afterwards were mandatory; but again, not necessarily exclusive. On the other hand, sense 1, which the Dictionary states is the only accepted use of the word "under strict standards of drafting", would not make sense: "purchaser *has a duty* or *is required to* be entitled to receive back the Option Fee and pursue any equitable remedies under law." Given the multiplicity of senses and no guidance in the Agreement as to which of those the parties intended to use, this Court cannot conclude that Clause 15 is clear. What seems to be clear, though, is that none of the senses of the word convey

exclusiveness, meaning that it excludes or prohibits the availability of other remedies such as specific performance and damages. Even when using mandatory *will*. For example, one interpretation of Clause 15 if *will* was the desired *shall*, could be that TPC was entitled to receiving the Deposit fee back and pursue any other equitable remedy under the law, regardless of the availability of other remedies. Under this construction, Clause 15 would operate as a penal clause whereby Mr. Goldman was obligated to return the option fee with any other equitable remedy under the law, even if specific performance was requested.

These demonstrations are not superfluous or insignificant. The Supreme Court of the United States has recognized that the use of *shall* presents interpretation challenges and that in certain contexts can be construed as *may*. *See*, *Gutierrez de Martínez v. Lamagno*, 515 U.S. 417, n. 9 (1995) (adding that "certain of the Federal Rules use the word 'shall' <u>to authorize</u>, <u>but not require</u>, judicial action," citing Fed. R. Civ. P. 16(e) and Fed. R. Crim. P. 11(b)). Also, because of its ambiguity, the word *shall* was taken out of the Rules of Evidence in 2000. According to the advisory committee note on Rule 101:

> The restyled rules minimize the use of inherently ambiguous words. For example, the word "shall" can mean "must," "may," or something else, depending on context. The potential for confusion is exacerbated by the fact the word "shall" is no longer generally used in spoken or clearly written English. The restyled rules replace "shall" with "must," "may," or "should," depending on which one the context and established interpretation make correct in each rule.

So, because it is unclear what the parties intended in Clause 15 with the use of the word *shall* preceding the remedies, e.g., whether purchaser "may be entitled;" "should be entitled;" "must be entitled;" or "will be entitled;" the Court must delve into the intention of the parties, which, being a matter for the trier of fact, cannot be ascertained in a motion to dismiss. *Punta Lima LLC v. Punta Lima Dev. Co. LLC*, 425 F. Supp. 3d 87, 99 (D.P.R. 2019) ("An interpretation of ambiguous contract

language is not an adequate basis for dismissal.") citing *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 235-36 (1st Cir. 2013) ("When the contract's terms are "ambiguous, uncertain, or equivocal in meaning, [however,] the intent of the parties is a question of fact to be determined at trial.")

**C.      In the alternative, if this Court were to determine that Clause 15 forbids TPC from pursuing remedies at law, it clearly allows the consideration of equitable remedies, and specific performance is an equitable remedy by excellence, amongst others.**

According to Mr. Goldman, through Clause 15, TPC agreed in the event of seller's default to only have at its disposal two remedies; to wit, receive the option fee back and pursue any equitable remedy under law. If this Court agrees with that interpretation, which we contend is incorrect, then it must still deny Mr. Goldman's request for dismissal.

Mr. Goldman accepts that TPC may pursue any equitable remedies under law. But what did the parties mean by *any equitable remedies under law*? Did they mean the Civil Code equity referenced in Article 7; 31 LPRA § 7? Or were they referring to the Anglo-Saxon equity? We know the contract must be interpreted under Puerto Rican law. But *equitable remedy under law* is not a Puerto Rican law concept. The Civil Code equity and the Anglo-Saxon equity are two different things. *See*, *Dalmau v. Hernandez Saldana*, 3 P.R. Offic. Trans. 678, 681 (P.R.,1975); 103 DPR 487, 489 (1975) (clarifying that the Civil Code equity is different than the "Anglo-Saxon 'Equity'.") Mr. Goldman, conveniently, avoids addressing this obvious ambiguity and treats phrase as if it means nothing. He is mistaken, again. Regardless, because the parties' intent with regards to this concept is not clear, this Court must explore the parties' intentions, which requires the denial of the Motion to Dismiss. See discussion above.

We contend, however, and only if Clause 15 is interpreted as Mr. Goldman proposes, that what the parties intended when allowing for the pursue of *any equitable remedy under law*, was the Anglo-Saxon equity, which, amongst its remedies of excellence, is specific performance, and many others

11

whose purpose is to provide relief where injustice has been done. *See*, *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power . . . to do equity and to mould [sic] each decree to the necessities of the particular case.") The first point that supports this conclusion is that *equitable remedy under law* is not a Puerto Rican law concept. The equity mentioned in Article 7 of the civil Code is something different and it is not understood as a jurisdictional concept which provides a breath of remedies, but a mandate for courts to adjudicate controversies based on "natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs" when there is an absence of applicable law. 31 LPRA § 7. It would thus make no sense for the parties to have agreed that TPC could pursue *equitable remedies* under the Civil Code equity when that Article really does not provide remedies. Second, both signatories of the *Option to Purchase Agreement* are from the United States mainland, where our civil law system is practically unknown, and their first language is English. So, the most reasonable interpretation, that one that would give effect to the clause, is that when the parties expressed *equitable remedies*, they meant the Anglo-Saxon concept of equity. *S.L.G. Irizarry v. S.L.G. Garcia*, 2001 WL 1555664 (Off. Trans.) (reminding that "[i]f any stipulation of a contract should admit of different meanings, it should be understood in the sense most suitable to give it effect.") Stemming from this conclusion, and, again, based on Mr. Goldman's interpretation of Clause 15, which we contend is incorrect, is that TPC waived its right to pursue *actions at law*. But not in equity! Hence, having filed a Complaint under the purview of Clause 15, this Honorable Court sits in equity jurisdiction.

Sitting in equity jurisdiction, this Court has at its disposal a full range of remedies to correct Mr. Goldman's injustice and afford TPC complete relief. *Holland v. Florida*, 560 U.S. 631, 650 (2010) ("The "flexibility" inherent in "equitable procedure" enables courts "to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct ... particular

injustices.") *See*, *also*, *Rosario-Torres v. Hernandez-Colon*, 889 F.2d 314, 321 (1989) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies"); *Angoff v. Goldfine*, 270 F.2d 185, 190 (1st Cir. 1959) ("a cardinal principle of equity is that once there is equitable jurisdiction, as there certainly is to award fees in these cases, equity has jurisdiction to afford complete relief.") In sum, this Court enjoys broad flexibility to afford complete relief to correct particular injustices.

In shaping an equitable remedy, courts have a range of appropriate options. What's important, though, is that the court weighs "all the relevant facts and circumstances and to craft appropriate relief on a case-by-case basis." *Rosario-Torres*, 889 F.2d at 321. So long as the court's ultimate choice falls within this range, it will withstand review, for a district court's choice of equitable remedies is "quintessentially a judgment call" and courts of appeals will sustain the choice even if it might have made some other choice. *Id.* 324.

Regardless of the broad flexibility afforded to courts under equity, one remedy that is indisputably equitable in nature is specific performance of a contract to sell real property. *See*, *Ocean Spray Cranberries, Inc. v. PepsiCo, Inc.*, 160 F.3d 58, 61 (1st Cir. 1998) ("Still, injunctive relief requiring performance of a contract may ordinarily be granted (if other prerequisites are met) where monetary damages will not afford complete relief. A common example is agreements involving the sale of real property; specific performance is often granted because property is considered unique.") *See*, *also*, Black's Law Dictionary; remedy, equitable remedy: "A nonmonetary remedy, such as an injunction or specific performance, obtained when monetary damages cannot adequately redress the injury." Black's Law Dictionary 1297 (7th ed. 1999).

Taking as true the well pleaded facts in the Amended Complaint, the *Option Agreement* is valid and its terms clear. Second, TPC timely exercised his option to buy, incurred in expenses to complete the purchase, and requested on multiple occasions that the closing take place. Mr. Goldman refused, however, thereby defaulting on his obligation, which by that time had become bilateral. Now, because TPC waived his rights to obtain remedies at law but not at equity –according to Mr. Goldman, he is entitled to specific performance to enforce the sale of the property. So, the demand for specific performance pled in the First Cause of Action in the Amended Complaint states a claim upon which relief can be granted, even under Mr. Goldman's interpretation of Clause 15.

Alternatively, TPC can claim damages. Although historically, damages are remedies at law, in the event this Court is unable to order specific performance, compensation can be awarded as an equitable remedy:

> Although damages are traditionally considered a remedy at law, a court acting in equity may nonetheless "award damages in lieu of the desired equitable remedy" when "the granting of equitable relief appears to be impossible or impracticable . . . ." [Footnote omitted] As New York's high court has explained:
>
>> It is a familiar principle that a court of equity, having obtained jurisdiction [over] the parties and the subject-matter of the action, will adapt its relief to the exigencies of the case. It may order a sum of money to be paid to the plaintiff, and give him a personal judgment therefor, when that form of relief becomes necessary in order to prevent a failure of justice, and when it is for any reason impracticable to grant the specific relief demanded. [Footnote omitted]
>
> To award equitable damages, courts first typically determine that a traditional equitable remedy, like specific performance, is appropriate because damages are presumed insufficient as a matter of law—such as for breach-of-contract actions regarding the purchase of real property or for rare goods. But once specific performance proves to be impossible because, for instance, the defendant is unwilling or unable to comply, courts have then resorted to awarding damages. [Footnote omitted]

*Desert Place, Inc. v. Michael*, 370 F. Supp. 3d 1177, 1184-1185 (N.D.C. 2019).

Also, receiving back the $800,000 paid as option fee is not an adequate remedy. For one, Mr. Goldman has been retaining that money for more than seven months without paying any interests. Also, he received that money and used it to close on another real estate project he so desperately needed to complete. To allow him to just return that money, without more, would amount to unjust enrichment, to say the least. Where TPC was left without $800,000 to pursue other investments, Mr. Goldman used it for seven months for his own benefit. Also, the return of the fee would not compensate all the time and effort it took TPC to try to close on the property, like the expenses related to the notary, closing agent and title insurance people. In sum, receiving the option fee back would be a grossly inadequate remedy. So, under these circumstances, and while sitting in equity jurisdiction, this Honorable Court enjoys broad discretion and flexibility to shape a remedy to compensate TPC's actual damages. That is precisely what TPC seeks with the Second and Third Cause of Action. Wherefore, because those two actions can be sustained under the above-described circumstances, their dismissal is unwarranted.

In conclusion, Mr. Goldman's request for dismissal is meritless. TPC did not waive any rights under the law in Clause 15. Second, Clause 15 is nevertheless ambiguous and consequently the Court must delve into the parties' intentions, which is a matter for the jury. And third, under Mr. Goldman's theory, specific performance, and compensation in lieu of the first, are equitable remedies directed at affording complete relief.

**Wherefore**, TPC respectfully requests from this Honorable Court to deny Mr. Goldman's request for dismissal of the Amended Complaint.

**Respectfully Submitted.**

In San Juan, Puerto Rico, this 14th day of July 2021.

**I hereby certify** that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notice of its filing electronically to the attorneys of record.

**Sánchez-Betances, Sifre & Muñoz-Noya, LLC**
33 Calle Bolivia, Suite 500
San Juan, PR 00917
t. 787-756-7880
f. 787-753-6580

s/*Adrián Sánchez-Pagán*
**Adrián Sánchez-Pagán**
USDPR NO. 223311
asanchez@sbsmnlaw.com