# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| TEAL PEAK CAPITAL, LLC; *Plaintiff and Counter Defendant*, And JOHN MICHAEL GRZAN AND NAMRATA KHIMANI *Counter Defendant*, v. ALAN BRAM GOLDMAN; *Defendant and Counter Claimant*. | Case No. 3:20-CV-01747 (PAD) BREACH OF CONTRACT; SPECIFIC PERFORMANCE OF CONTRACT; REIMBURSEMENT OF FUNDS, COSTS AND EXPENSES |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS THE AMENDED COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW defendant Alan Bram Goldman (hereinafter, "Mr. Goldman") through the undersigned attorney, and hereby very respectfully states and prays:

## I. INTRODUCTION

The present motion will show that Teal Peak Capital, LLC (hereinafter, "TPC") has grossly mischaracterized Mr. Goldman's battle to secure his right to not be cheated out of his ancestral home as a meager "tactical move to avoid the inevitable: the sale of the property for the agreed upon price." Docket No. 80, p. 1. Similarly, it will demonstrate that Mr. Goldman's

interpretation of Clause 15 of the Option to Purchase Agreement is the only logical interpretation that resonates clearly with the unambiguous terms of Clause 15.

This Court should further note that Mr. Goldman **never** changed his theory. From the onset of the present litigation Mr. Goldman has emphatically sustained that he was cheated by John Michael Grzan and Namrata Khimani into selling his ancestral home. Mr. Goldman's allegations have never been "meritless obstacles" for TPC to fend off. Indeed, TPC's Opposition to Mr. Goldman's Motion to Dismiss has made it evident that they are desperate to cast doubt over the clear limitations both parties agreed to in Clause 15 of the Option to Purchase Agreement. Namely, that in the case of Mr. Goldman's default, the purchaser has a right to recover the Option Fee and pursue any equitable remedies under the law, which, as we will show, necessarily excludes specific performance.

Lastly, as stated in Mr. Goldman's Motion to Dismiss, nothing in the present motion should be interpreted as an admission to TPC's factual allegations or legal theory. Indeed, Mr. Goldman emphatically disagrees with TPC's characterization of the facts that claim that he unilaterally defaulted in his obligation under the Option to Purchase Agreement or that TPC, John Michael Grzan and Namrata Khimani are faultless in their endeavor to cheat Mr. Goldman from his ancestral home. Likewise, as Mr. Goldman stated in his answer to the original complaint, TPC's right as an assignee is still in contention because he was never notified or shown any documents of the assignment. *See* Docket No. 26.

## II. DISCUSSION

**A. There was no renunciation of TPC's rights, rather the remedies that <u>could</u> be afforded pursuant to the applicable law are limited by Clause 15 of the Option to Purchase Agreement.**

As its first argument, TPC claims that pursuant to Article 1077 of the 1930 Civil Code, it has a right to demand specific performance and/or damages. *See* 31 L.P.R.A. § 3052. In essence, TPC poses that it has a right to specific performance because an option to purchase agreement is governed by the general norms of obligations and contracts. *See* TPC's Opposition to Mr. Goldman's Motion to Dismiss, Docket No. 80, p. 4. Further, this right cannot be renounced without "clear, conclusive, and unequivocal language in the contract." *Id.* at p. 5. However, TPC's argument fails for two distinct reasons: (i) the general norms that govern obligations and contracts, including option to purchase agreements, are *suppletory* to the terms of the contract; and (ii) the case law cited by TPC deals with the exemption of liability, not the limitation of remedies autonomously agreed upon by the parties.

*(i)  The general norms that govern obligations and contracts, including option to purchase agreements, are <u>suppletory</u> to a particular contract.*

As Mr. Goldman argued in his Motion to Dismiss (Docket No. 63), a Court which intervenes in contractual relations, should balance the legal interests affected by its intervention. *See* <u>Coop. Sabanena v. Casiano Rivera</u>, 184 D.P.R. 169, 181-82 (2011). Moreover, when exercising its power to intervene and moderate contractual relations, and the autonomy of the parties to create such relationships, the Court must exercise extreme care. The Court's intervention must be clearly justified "because of its harmful effects on the stability of contracts and on legal certainty." <u>López de Victoria v. Rodriguez</u>, 113 D.P.R. 265, 271, 13 P.R. Offic. Trans. 341, 349 (1982). The foregoing is a corollary of the undeniable fact that "contracts have force of law between the parties, who must fulfill what was accorded as long as it does not contravene the law, morals or public order. . ." <u>S.L.G. Irizarry v. S.L.G. Gracia</u>, 155 D.P.R. 713, 725, 2001 WL 1555664, ___ P.R. Offic. Trans. ___ (2001); *See also* Article 1044 of the 1930 Civil Code, 31 L.P.R.A. § 2994.

The Supreme Court of Puerto Rico has also decreed that "[t]he general rules of the Civil Code, on the interpretation of contracts, shall apply only in a **supplementary manner**." (translation and emphasis ours) Echandi Otero v. Stewart Title, 174 D.P.R. 355, 369 (2008). As such, if the parties regulated the legal relationship they have contractually created, there will be fewer gaps that will have to be addressed by the Civil Code. *See* Ojeda v. Morales Torres, KLAN200800229, 2008 WL 5429870 at page *7 (TA PR, November 26, 2008) (*citing* José Ramón Vélez Torres, *Curso de Derecho Civil: Derecho de Contratos*, pág. 89).

Here, because the parties regulated and agreed to receive a certain remedy in the case of default, they cannot now expect to ignore such regulation. Thus, parties to the Option to Purchase agreement are not able to request remedies outside the scope of Clause 15. This is precisely what TPC intended when it requested specific performance pursuant to Article 1077 of the 1930 Civil Code. If allowed, such course of action would contravene the express contractual will of the parties who agreed to demarcate the remedies afforded to them under the Option to Purchase Agreement. Therefore, even if the general provisions of obligations and contracts are applicable to the Option to Purchase Agreement, this alone does not afford TPC the right to ignore what was autonomously agreed upon by the parties: that "[i]n the event Seller, after exercise of the Option granted herein, fails to proceed with the closing of the sale of the Property pursuant to the terms and provisions contained herein, Purchase[r] shall be entitled to receive back the Option Fee and pursue any equitable remedies under law." Clause 15 of the Option to Purchase Agreement, Docket No. 50, Exhibit 1.

- (ii) *The case law cited by TPC deals with the exemption of liability, but not the limitation of remedies afforded by law to the contract. In any case, TPC did not renounce its rights to remedy in case of default, it merely limited said right.*

TPC also contends that Clause 15 cannot be construed as a renunciation of the remedies afforded by the Civil Code. Docket No. 80, p. 5-7. TPC poses that "for a court to bar a contracting party from exercising such rights, said party must have necessarily exonerated the other from future defaults or waived those rights." Docket No. 80 p. 5. Yet, to prove this argument, TPC uses case law that is not centered on the limitations of remedies afforded by law, but rather on the exemption of liability, or exculpatory clauses. Note, that Mr. Goldman never argued that TPC has *exonerated* Mr. Goldman from any liability, but rather that Clause 15 of the Option to Purchase Agreement **limits** the remedies available to it, in case of seller default. As such, said argument is irrelevant and should be discarded by the Court.

In any case, the parties to the Option to Purchase Agreement used the word *and* when constructing Clause 15: "Purchase[r] shall be entitled to receive back the Option Fee *and* pursue any equitable remedies under law." The importance of the conjunction *and* cannot be understated. TPC requested the specific performance of the Option to Purchase Agreement in its Amended Complaint (Docket No. 50). Specific performance would force Mr. Goldman to comply with his obligation under the Option to Purchase Agreement and transfer his ancestral home. Yet, this act would be in clear contravention of Clause 15 precisely because of the word *and*. In particular, it would be contradictory for TPC to require the specific performance of the Option to Purchase Agreement, or the sale of Mr. Goldman's property, when Clause 15 necessitates the return of the Option Fee. In other words, specific performance of the Option to Purchase Agreement is mutually exclusive of Clause 15 as you cannot have specific performance of the agreement without Mr. Goldman receiving the sale price, <u>which includes the Option Fee</u>. This discussion is not superfluous. If this Honorable Court finds that Mr. Goldman defaulted on his obligations, the express terms of Clause 15 of the Option to Purchase Agreement would require Mr. Goldman to

return the Option Fee, which would otherwise be applied to the purchase price of $3,150,000. *See* Docket No. 50, Exhibit 1, Clause 3 and 5 of the Option to Purchase Agreement. But again, this is inconsistent with the specific performance cause of action, which would require TPC to pay $2,350,000.00, or the difference between the retained Option Fee and the purchase price. TPC cannot receive the Option Fee, as required by Clause 15, and demand the specific performance of the Option to Purchase.

It follows then, that the demand for specific performance is not a relief that can be granted "even under Mr. Goldman's interpretation of Clause 15" because it is inconsistent with the express terms of the Option to Purchase Agreement.

**B. Clause 15 is clear and leaves no doubt as to the intention of the contracting parties.**

TPC contends that the Option to Purchase Agreement "is valid and its terms [are] clear." Docket No. 80, p. 14. However, in a self-serving attempt to cast doubt and confusion over Clause 15, TPC argues that it is unclear as to "what the parties intended when they used *shall*" in said clause. *See* Docket No. 80, p. 9. Seemingly, TPC unilaterally determined that the entire agreement is valid and clear, except for the word *shall* in Clause 15. We cannot follow TPC's reasoning.

According to TPC, the word *shall* "can be understood in more than one sense." *See* Docket No. 80, p. 8. To prove this, TPC cites Black's Law Dictionary, which defines *shall* in five different ways, and the removal of the word *shall* in the Rules of Evidence in 2000. Nevertheless, Black's Law Dictionary makes it evident that *shall* defined as "[h]as a duty to; more broadly, is required to" is the only acceptable definition under strict standards of drafting. *See* Docket No. 80, p. 9 (*citing* Black's Law Dictionary 1379 (7th ed. 1999).

Indeed, the other definitions of *shall* have no bearing on Clause 15. It would be nonsensical for Clause 15 to read, "Purchase[r] *should* be entitled to receive back the Option Fee…" or "Purchase[r] *may* be entitled to receive back the Option Fee…" Clause 15 can only be read to indicate that if Mr. Goldman defaults, then he is obligated to return the Option Fee. Which necessarily entails that the word *shall* in Clause 15 is clear as it is "lucid enough to be understood in a single sense, without giving rise to doubts, controversies or diversity of interpretations, and without requiring for their understanding reasoning or demonstrations susceptible of being challenged." (translation ours) *See* Sucn. Ramírez v. Tribunal Superior y del Moral, 81 D.P.R. 357, 361 (1959).

**C. Regardless of whether specific performance is an Anglo-Saxon equitable remedy by "excellence", it is incompatible with Clause 15.**

TPC argues that this Honorable Court sits in equity jurisdiction and, as such, "this Court has at its disposal a full range of remedies to correct Mr. Goldman's injustice and afford TPC complete relief." Docket No. 80, p. 12 (*citing* Holland v. Florida 560 U.S. 631, 650 (2010). This is incorrect.

Although district courts generally have a broad scope of equitable powers to remedy any wrong, the Court must still interpret the issues at hand according to the principles of contract law. In fact, the Supreme Court of the United States has stated that it "will not order relief inconsistent with [the] express terms of a compact, no matter what the equities of the circumstances might otherwise invite." (internal quotations omitted) Alabama v. North Carolina, 560 U.S. 330, 352 (2010).[1] As it was discussed above, specific performance is inconsistent with Clause 15 of the

---

[1] Although Alabama v. North Carolina, 560 U.S. 330 (2010) dealt with interstate compacts, the Supreme Court has made it evidently clear that "interstate compacts are construed as contracts under the principles of contract law." *See* Tarrant Reg'l Water Dist. v. Herrmann, 569 U.S. 614, 628 (2013); *See also* Manufacturers' Fin. Co. v. McKey, 294

7

Option to Purchase Agreement. Clause 15 requires Mr. Goldman to return the Option Fee if the Court finds that he in fact defaulted in his obligations under the Option to Purchase Agreement. However, if this Court were to agree with TPC and employ the Anglo-Saxon equitable remedy of specific performance, TPC would still have to pay $2,350,000.00, or the difference between the <u>retained</u> Option Fee and the purchase price. TPC's interpretation of Clause 15 is therefore irreconcilable insofar as it entails that TPC has a right to acquire Mr. Goldman's property (specific performance) at a whopping $800,000 discount (Clause 15 requires Mr. Goldman to return the Option Fee) on top of the already massively discounted purchase price he offered to John Michael Grzan and Namrata Khimani before he became aware of their deceit.

Consequently, assuming, arguendo, that Clause 15 refers to the Anglo-Saxon equity, specific performance cannot and should not be considered the remedy of *excellence* in the present dispute as it is in direct contravention to the express terms of Clause 15. Quite frankly it is irrelevant whether TPC believes that "receiving back the $800,000 paid as option fee is not an adequate remedy" because that is precisely the remedy both parties agreed to when they entered the Option to Purchase Agreement. *See* Docket No. 80, p. 15.

For the foregoing reasons, even if this Court were to find that the Amended Complaint should not be dismissed in its entirety, at the very least it should dismiss TPC's specific performance cause of action as it is inconsistent with Clause 15 of the Option to Purchase Agreement.

---

U.S. 442, 449 (1935) ("that a court of equity, in the absence of fraud, accident, or mistake, cannot change the terms of a contract").

**WHEREFORE,** Alan Bram Goldman respectfully requests from this Honorable Court to GRANT his request for dismissal of the Amended Complaint or, in the alternative, DISMISS Teal Peak Capital LLC's Specific Performance Cause of Action found therein.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 30th day of July 2021.

*Attorney for Alan Bram Goldman*
**McConnell Valdés LLC**
PO Box 364225
San Juan, Puerto Rico 00936-4225
270 Ave. Muñoz Rivera
Hato Rey, PR 0918
T: 787-250-5604

By: s/ Antonio A. Arias-Larcada
Antonio A. Arias-Larcada, Esq.
USDC-PR 204906
aaa@mcvpr.com

IT IS HEREBY CERTIFIED that on this date we filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice electronically to all counsel at their address of record.

Date: July 30, 2021.  By: s/Antonio A. Arias-Larcada
　　　　　　　　　　　　　　　　　　　　　　　Attorney