**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **TEAL PEAK CAPITAL, LLC**<br><br>Plaintiff,<br><br>v.<br><br>**ALAN BRAM GOLDMAN**<br><br>Defendants. | Civil No. 3:20-cv-1747(PAD)<br><br><br><br>Breach Of Contract; Specific Performance Of Contract; Reimbursement Of Funds, Costs And Expenses |

## ANSWER TO AMENDED COUNTERCLAIM AND JOINDER OF PARTIES

**To the Honorable Court:**

**Come Now**, Mr. John Michael Grzan and his wife, Dr. Tamrata Khimani (jointly referred to as "Grzan-Khimani"), by and through the undersigned attorney, respectfully states and prays:

### I.  Nature of Action

1.      The averment contained in paragraph 1 of the Amended Counterclaim is denied. John Michael Grzan ("Mr. Grzan") and his wife, Namrata Khimani ("Dr. Khimani") (jointly referred to as "Grzan-Khimani") are natural persons; and Teal Peak Capital, LLC is a separate entity from them and with independent judicial personality. The Grzan-Khimari were never represented nor counseled in any shape or form by the Firm Ferraiuoli, LLC ("Ferraiuoli"), nor any of its attorneys, in the process of negotiating the purchase of Mr. Goldman's property at The Estates No. 13, Dorado, PR 00646 ("Property").  The Grzan-Khimari did not incur in any insidious machinations (or "*dolo*"),

neither before nor after the signing of the *Option to Purchase Agreement* executed on October 23, 2020, it was Mr. Alan Bram Goldman ("Mr. Goldman") who refused to execute the sale agreement after getting word that the properties in The Estates at Dorado could be sold for a higher price. The Amended Counterclaim and Joinder of Parties filed by Mr. Goldman is predicated on falsehoods, made up to hide his failure to abide by the covenant of good faith and close the transaction as stipulated in the *Option to Purchase Agreement* validly and informedly executed on October 23, 2020. Moreover, Mr. Goldman's accusation of fraud and conspiracy involving attorneys of the law Firm of Ferraiuoli is extremely reckless, to say the least, because Mr. Goldman possess no evidence to demonstrate that Ferraiuoli was involved in any shape or form in the process of negotiating the *Option to Purchase Agreement*. The Grzan-Khimari demand that such allegations be withdrawn and, if Mr. Goldman refuses, that this Court impose the highest sanctions possible against him.

2.     The averment contained in paragraph 2 is a petition for relief, not an allegation of facts that requires a responsive pleading, to the extend that a relief may be granted the same is denied.   In the alternative, The Grzan-Khimari deny that Mr. Goldman has any right to the remedies sought in the Amended Counterclaim.

## II. The Parties

3.     The allegation contained in paragraph 3 of the Amended Counterclaim and Joinder of Parties is admitted.

4.     The allegation contained in paragraph 4 of the Amended Counterclaim and Joinder of Parties is admitted.

2

5.      The averment contained in paragraph 5 is a petition for relief, not an allegation of fact that requires a responsive pleading, to the extent that a relief may be granted the same is denied.

6.      The allegation contained in paragraph 6 of the Amended Counterclaim and Joinder of Parties is admitted.

7.      The allegation contained in paragraph 7 of the Amended Counterclaim and Joinder of Parties is admitted.

### III.  Jurisdiction and Venue

8.      The allegation contained in paragraph 8 of the Amended Counterclaim and Joinder of parties is admitted.

9.      The allegation contained in paragraph 9 of the Amended Counterclaim and Joinder of Parties is admitted

### IV.  General Allegations

10.      The Grzan-Khimani deny the allegation contained in paragraph 10 of the Amended Counterclaim and Joinder of Parties on the basis that they lack knowledge or information sufficient to form a belief about the truth of the averment.  The Grzan-khimani also allege that Mr. Goldman's incident with his neighbor four years ago has nothing to do and is completely unrelated and irrelevant to Mr. Goldman's present agreement to sell his Property.

11.      The Grzan-Khimani deny the allegations contained in the first and second sentences of paragraph 11 of the Amended Counterclaim and Joinder of Parties on the basis that they lack knowledge or information sufficient to form a belief about the truth of

3

the averment.  In any event, the Grzan-Khimani allege that the "value" of a property is public information, easily obtainable through multiple means, not "inside information". Further, Mr. Goldman and/or his representatives possess no evidence whatsoever to prove or even allow for the inference that anyone at Ferraiuoli shared any "inside information" regarding the Property with them prior to the signing of the *Option to Purchase Agreement* on October 23, 2020.  The indirect accusation is reckless, to say the least.  In response to the third sentence, the Grzan-Khimani deny the averment. The Grzan-Khimani were never advised, counseled nor assisted in any way by anyone at Ferraiuoli in the process of negotiating with Mr. Goldman the *Option to Purchase Agreement* executed on October 23, 2020.   Likewise, the Grzan-Khimani never acquired nor received any information whatsoever from Ferraiuoli regarding the Property, its value or of Mr. Goldman prior to the signing of the *Option to Purchase Agreement.*  Furthermore, the price of the Property stipulated in the *Option to Purchase Agreement* was established by Mr. Goldman.  Lastly, in response to the fourth and fifth sentences contained in paragraph 11 of the Amended Counterclaim and Joinder of Parties, the Grzan-Khimani deny them on the basis that they lack knowledge or information sufficient to form a belief about the truth of the averment.

12.    The Grzan-Khimani deny the allegation contained in paragraph 12 of the Amended Counterclaim and Joinder of Parties.  Without forfeiting any attorney client privilege, they allege that they first sought the services of Ferraiuoli LLC on November 21, 2020, more than a month after the *Option to Purchase Agreement* had been signed,

and because Mr. Goldman had defaulted on his obligation to sell the Property as agreed.

13.    The allegation contained in paragraph 13 of the Amended Counterclaim and Joinder of Parties is denied. First, Mr. Goldman was approached by his neighbor, Mr. Adam Long, on behalf of the Grzan-Khimani.  Second, Mr. Goldman never told the Grzan-Khimani about the incident with his neighbor and of Ferraiuoli's involvement prior to the signing on October 23, 2020 of the *Option to Purchase Agreement*.    All communications between Mr. Goldman and the Grzan-khimani were by email, except for one call on the 20th of October, during which no mention of the incident of cutting trees or Ferraiuoli ever took place.   Third, although Mr. Goldman mentioned of his previous health issues with cancer, at no point did he expressed anything about mental or physical incapacity to engage in this process.  Instead, just the opposite. He talked much about his great experience in real estate, how he had major ongoing projects right now (like the one he needed the $800,000 deposit for), that he was actively managing residential properties he owned and personally leading renovation projects like moving to green energy in the units, that he had additional major projects planned for Vermont such as creating park areas and how he was socially active and was working on holding a major concert event in Vermont headlined by the famous band Phish who he mentioned was friends with.  Fourth, the Grzan-Khimani were never advised, counseled nor assisted by anyone at Ferraiuoli in the process of negotiating with Mr. Goldman the *Option to Purchase Agreement*.   Similarly, they never acquired nor received any information whatsoever from Ferraiuoli regarding the Property, its value or of Mr.

Goldman prior to the signing on October 23, 2020 of the *Option to Purchase Agreement*.  Moreover, the allegation in the sense that the Grzan-Khimani maliciously concealed that Ferraiuoli was their legal representative during the negotiations and that it hid from Mr. Goldman the conflict-of-interest, thereby giving them an unfair advantage in the negotiations and violating the basic principles of honesty and good faith is conclusory in nature, plainly illogical and incapable of supporting a reasonable inference that the conduct occurred; thus, frivolous.  To start, the Grzan-Khimani could not have concealed that Ferraiuoli was their legal representative during the negotiations because if that were the case, Mr. Goldman would have at least received one communication from someone at Ferraiuoli purporting to represent them prior to the signing of the *Option to Purchase Agreement*, which Mr. Goldman never received nor will he be able to produce.  Similarly, Mr. Goldman does not state what information, if any, did the Grzan-Khimani received that could have given it an advantage in the process of negotiating the *Option to Purchase Agreement*.  Regardless, that information does not exist.

14.     The allegations contained in paragraph 14 of the Amended Counterclaim and Joinder of Parties are denied. Specifically, in response to the first and second sentences contained in said paragraph 14, the Grzan-Khimani deny both on the basis that they lack knowledge or information sufficient to form a belief about the truth of the averment. The Grzan-Khimani allege that Mr. Goldman never told them that the other prospective buyer who made the $3,750,000.00 offer was represented by Ferraiuoli. moreover, Mr. Goldman did not notify them of said offer in good faith.  When Mr.

Goldman notified them of the new offer, he already had agreed to sell the Property to the Grzan-Khimani, for $3,250,000.00. Thus, Mr. Goldman broke the $3,250,000.00 agreement when he offered Grzan-Khimani to match the $3,750,000 offer, and he did so because he was greedy, as he admitted later in an email sent on October 23, 2020: "I was greedy and should have been more appreciative." Furthermore, Grzan-Khimani did not agree to match the offer on time, for the draft that Mr. Goldman sent contained many errors, as he admitted in his email, and there were several matters that needed to be ironed out. So, by the time they were resolved, the offer had expired. Also, Mr. Goldman leaves out the fact that he extended the deadline, but Grzan-Khimani decided to pull out and not buy the Property, decision Mr. Grzan informed Mr. Goldman twice by email. Last, the Grzan-Khimani did not concealed that Ferraiuoli represented them because Ferraiuoli never represented them prior to the signing of the Option to Purchase Agreement.

15. The allegation contained in paragraph 15 of the Amended Counterclaim and Joinder of Parties is admitted in part and denied in part. The Grzan-Khimano accept that on October 22, 2020, Ferraiuoli, on behalf of Hyung Soon Lee ("Mr. Lee"), withdrew the $3,750,000.00 offer, and deny the rest. Specifically, the Grzan-Khimani deny that after Mr. Lee's withdrawal TPC and Ferraiuoli were back in the "driver seat of the negotiations". First, after Mr. Goldman was "greedy" –to use his own words—and went back on his word by asking Grzan-Khimani to match the $3,750,000.00 offer, Grzan-Khimani pulled out and notified Mr. Goldman that they were not going to buy the Property. Hence, there was nothing to negotiate; the Grzan-Khimani had ended the

negotiations by pulling out and letting Mr. Goldman know he was free to sell the Property to whomever he wished.

16.     The allegations contained in paragraph 16 of the Amended Counterclaim and Joinder of Parties are admitted in part and denied in part. The Grzan-Khimani admit that on October 23, they and Mr. Goldman executed an *Option to Purchase Agreement*, through which they, or their assignee, were given an exclusive option to purchase the Property for $3,150,000.00, which was $600,000.00 less than Mr. Lee's alleged offer, who was represented by Ferraiuoli, LLC; and deny the rest of the allegations contained therein.

17.     The allegations contained in paragraph 17 of the Amended Counterclaim and Joinder of Parties are admitted in part and denied in part. The Grzan-Khimani admit that on November 5, 2020, Mr. Gerald Kleis Pasarell, Mr. Goldman's real estate broker, filed an action against him alleging that he was owed a commission for the sale of the Property, and deny the rest of the averment.  The Grzan-Khimani believe that the lawsuit was filed because Mr. Goldman –once again—went back on his word, this time with his broker.  The Grzan-Khimani had nothing to do with the filing of that complaint. In addition, the Grzan-Khimani allege that "sorting everything" with Mr. Kleis was not amongst the obligations entered in the *Option to Purchase Agreement*.  Mr. Goldman violates the parole evidence rule by trying to use extrinsic purported obligations to justify his failure to comply with the terms of the validly executed *Option to Purchase Agreement*, none of which was "sorting everything" with Mr. Kleis.  In the alternative, "sorting everything" with Mr. Kleis was contingent upon closing, condition that was

clearly communicated to Mr. Goldman through email and established in all the settlement documents approved and reviewed by Mr. Goldman.  The condition however was not met because Mr. Goldman –once again—went back on his word.  Lastly, the Complaint filed by Mr. Kleis is no longer active in the local courts.  It was dismissed.

18.    The allegations contained in paragraph 18 of the Amended Counterclaim and Joinder of Parties are admitted in part and denied in part. The Grzan-Khimani admit that pursuant to Clause 5 of the *Option to Purchase Agreement*, they had until November 23, 2020 to exercise and close the sale of the Property, and that to extend the closing period by 30 additional days, and that they had to pay Mr. Goldman an additional $600,000.00 before the first 30 days expired; and denies the rest of the averment.  The Grzan-Khimani allege that they did exercised the *Option to Purchase the Property* before the November 23, 2020 deadline, but were unable to purchase the Property because Mr. Goldman defaulted by failing to provide "fee simple, recordable, marketable and insurable title of the Property free and clear of all liens, encumbrances and defects," as stipulated in the Agreement.  The Grzan-Khimani also allege that the additional $600,000.00 were paid in accordance with the terms of the Agreement, for it was Mr. Goldman who provided them with incorrect bank information and later, upon recognizing the error, accepted receiving a total of $800,000.00 by November 24, 2020, amount he still retains despite alleging that the *Option to Purchase Agreement* is null and void.  In the alternative, if Mr. Goldman contends that the Grzan-Khimani defaulted because they did not paid the $600,000.00 directly to him on November 23, 2020, then Mr. Goldman incurred in fraud and illegal appropriation because he accepted the

money, kept it for himself and represented to all involved that the *Option to Purchase Agreement* was still on while knowing the Agreement had expired and while having no intentions of complying with its terms.

19.     The allegations contained in paragraph 19 of the Amended Counterclaim and joinder of Parties are denied.  The Grzan-Khimani allege, first, that Mr. Goldman knew that the *Option to Purchase Agreement* had been assigned to TPC weeks prior to December 18, through several emails sent by both Mr. Grzan and the notary chosen to close the transaction.  Second, the *Option to Purchase Agreement* did not require the Grzan-Khimani to notify Mr. Goldman of any assignment.   Third, nowhere in the December 18 letter does Ferraiuoli state or informed that it represented the Grzan-Khimani and/or TPC during the negotiations to purchase the Property. Fourth, solving the issue with Mr. Kleis was not amongst the obligations assumed by the Grzan-Khimani in the *Option to Purchase Agreement*.  Mr. Goldman violates the parole evidence rule by trying to introduce extrinsic purported obligations to justify his failure to comply with the validly executed *Option to Purchase Agreement*.  In the alternative, settling the lawsuit filed with Mr. Kleis was contingent upon closing, condition that was clearly communicated to Mr. Goldman through email and established in the settlement documents approved and reviewed by Mr. Goldman.

20.     The allegations contained in paragraph 20 of the Amended Counterclaim and Joinder of Parties are admitted in part and denied in part. The Grzan-Khimani admit that Mr. Goldman informed them of the passing of Mrs. Carmen Cividanes and deny the rest.  TPC and every party involved were ready to close on December 15, 2020, and

Mrs. Cividanes purported death happened on December 22, 2020.   Further, Mrs. Cividanes had nothing to do with the closing, for it was Mr. Rey Rios who was granted the power of attorney to close on behalf of Mr. Goldman.   It was Mr. Rios who was going to sign the Purchase and Sale Deed, not Mrs. Cividanes, so her passing was no impediment for the closing to take place.

21.   The allegation contained in paragraph 21 of the Amended Counterclaim and Joinder of Parties are admitted.

### First Cause of Action: Breach of Contract and the Implied Covenant of good Faith

22.    The Grzan-Khimani incorporate by reference as if fully alleged herein every response set forth in the preceding paragraphs.   Mr. Goldman's responsive allegations incorporated in paragraph 22 of the Amended Counterclaim and Joinder of Parties are of the type that do not require a responsive pleading, to the extent that a relief may be granted, they are denied.

23.   The allegation contained in paragraph 23 of the Amended Counterclaim and Joinder of Parties is admitted.

24.   The allegation contained in paragraph 24 of the Amended Counterclaim and Joinder of Parties are admitted in part and denied in part. The Grzan-Khimani admit that pursuant to the *Option to Purchase Agreement* TPC had until November 23, 2020 to pay Mr. Goldman the Extension Payment of $600,000.00, and denies the rest.   On November 23, 2020, with the information provided by Mr. Goldman, Mr. Grzan went to the bank to wire the $600,000.00.   The bank, however, told Mr. Grzan that the transaction could not go through because the bank information provided by Mr.

Goldman was incorrect.  Thus, it was Mr. Goldman who prevented the Grzan-Khimani and/or TPC from paying the $600,000.00 directly to him on the 23rd of November. Regardless, Mr. Goldman accepted that the Grzan-Khimani deposited the money in the escrow account on November 23rd.  He also agreed to have the money transferred on the following day, by signing a release and after being told, twice, the money would be wired on the 24th of November.  Last, at no point in time did Mr. Goldman state that the Agreement had been violated.  To the contrary, he accepted the money and continued to act as if he would close on the transaction.  In the alternative, if Mr. Goldman contends that the Grzan-Khimani and/or TPC defaulted because they did not pay the $600,000.00 directly to him on November 23, 2020, then Mr. Goldman incurred in fraud and illegal appropriation because he accepted the money, kept it for himself and represented to all involved that the *Option to Purchase Agreement* was still on while knowing the Agreement had expired and while having no intentions of complying with its terms.

25.    The allegations contained in paragraph 25 of the Amended Counterclaim and Joinder of Parties are denied.  TPC exercised its option on time and the transaction did not close because Mr. Goldman refused to do so.  Thus, TPC is entitled to specific performance.

26.    The averment contained in paragraph 26 of the Amended Counterclaim and Joinder of Parties is an argument of law that does not require a responsive pleading.  In the alternative, it is denied as an inaccurate representation of the law.

12

27.     The allegations contained in paragraph 27 of the Amended Counterclaim and Joinder of Parties are denied.  Ferraiuoli never advised nor counseled TPC, much less represented it in the process of negotiating the *Option to Purchase Agreement* with Mr. Goldman.   Furthermore, Ferraiuoli did not represent Mr. Goldman in a related matter; for the controversy for which Mr. Goldman hired Ferraiuoli did not involve matters relating to the sale of the home, but the cutting of trees by Mr. Goldman's neighbor.  In any event, the relationship of Mr. Goldman with Ferraiuoli ended in a bad note in 2018, two years before TPC negotiated the *Option to Purchase Agreement*. Last, TPC did produce evidence of source of funds for the cash payment required at the closing.

28.     The allegation contained in paragraph 28 of the Amended Complaint and Joinder of Parties is conclusory and an argument of law, for which no responsive pleading is required.  In the alternative, the Grzan-Khimani deny having breached the implied covenant of good faith because it was never represented by Ferraiuoli, and therefore it had nothing to reveal or disclose to Mr. Goldman prior to the signing of the *Option to Purchase Agreement*.

### Second Cause of Action: Deceit by Insidious Machinations ("Dolo")

29.     The Grzan-Khimani incorporates by reference as if fully alleged herein every response set forth in the preceding paragraphs.  Mr. Goldman's responsive allegations incorporated in paragraph 29 of the Amended Counterclaim and Joinder of Parties are of the type that do not require a responsive pleading, to the extent that a relief may be granted, they are denied.

13

30.     The allegation contained in paragraph 30 of the Amended Counterclaim and Joinder of Parties is an argument of law, for which a responsive pleading is not required.  In the alternative, it is denied as an inaccurate description of the law.

31.      The allegation contained in paragraph 31 of the Amended Counterclaim and Joinder of Parties is an argument of law, for which a responsive pleading is not required.  In the alternative, it is denied as an inaccurate description of the law.

32.     The allegation contained in paragraph 32 of the Amended Counterclaim and Joinder of Parties are denied.  The averments are simply false and illogical at best. The Grzan-Khimani incorporates by reference all denials and allegations pertaining to Ferraiuoli's lack of involvement in the negotiations to purchase the Property.

33.      The averment contained in paragraph 33 of the Amended Counterclaim and Joinder of Parties is a petition for relief, for which no responsive pleading is required.  In the alternative, the Grzan-Khimani deny that Mr. Goldman has the right to nullify the *Option to Purchase Agreement*.

34.      The allegation contained in paragraph 34 of the Amended Counterclain is denied.  Mr. Goldman has suffered no damages for he signed the *Option to Purchase Agreement* willingly.  It was Mr. Goldman who set the price and who pushed Mr. Grzan back into the transaction after he had pulled out.

### Third Cause of Action Piercing the Corporate Veil Against Teal Peak Capital, LLC

35.      The Grzan-Khimani incorporate by reference as if fully alleged herein every response set forth in the preceding paragraphs.  Mr. Goldman's responsive allegations incorporated in paragraph 35 of the Amended Counterclaim and Joinder of

Parties are of the type that do not require a responsive pleading, to the extent that a relief may be granted, they are denied.

36.    The averment contained in paragraph 36 of the Amended Counterclaim and Joinder of Parties is not a statement of fact that requires a responsive pleading.  In the alternative, the averment is denied and the Grzan-Khimani allege that the facts of this case do not support the piercing of TPC's corporate veil.

37.    The averment contained in paragraph 37 of the Amended Counterclaim and Joinder of Parties is an argument of law that does not require a responsive pleading.  In the alternative, it is denied as an inaccurate description of the law.

38.    The averment contained in paragraph 38 of the Amended Counterclaim and Joinder of Parties is an argument of law that does not require a responsive pleading.  In the alternative, it is denied as an inaccurate description of the law.

39.    The averment contained in paragraph 39 of the Amended Counterclaim and Joinder of parties is an argument of law or description of a doctrine that does not require a responsive pleading.   In the alternative, it is denied as an inaccurate description of the law or doctrine.

40.    The allegations contained in paragraph 40 of the Amended Counterclaim and Joinder of parties are denied.   There has never been unity of interest and ownership between John Michael Grzan, Namrata Khimani, and TPC.

41.    The allegation contained in paragraph 41 of the Amended Counterclaim and Joinder of Parties is denied.  There has never been unity of ownership between John Michael Grzan, Namrata Khimani, and TPC.

42.     The allegation contained in paragraph 42 of the Amended Counterclaim and Joinder of Parties is denied.  There has never been unity of interest and ownership between John Michael Grzan, Namrata Khimani, and TPC.  Further, TPC is not the "alter ego of John Michael Grzan, Namrata Khimani; and neither was it created or been used to commit fraud or for illicit purposes.  Mr. Goldman's allegations in that regard are conclusory and he lacks any evidence to even make a plausible claim, thus, the averments are frivolous.

43.     The allegation contained in paragraph 43 of the Amended Counterclaim and Joinder of Parties is denied.  TPC is not the "alter ego of John Michael Grzan, Namrata Khimani; and neither was it created or been used to commit fraud or for illicit purposes.  Mr. Goldman's allegations in that regard are conclusory and he lacks any evidence to even make a plausible claim.

44.     The allegation contained in paragraph 44 of the Amended Counterclaim and Joinder of Parties is denied.  Mr. Goldman's allegation is conclusory and he lacks any evidence to even make a plausible claim.

45.     The allegation contained in paragraph 45 of the Amended Counterclaim and Joinder of parties is denied.  The Grzan-Khimani incorporate by reference all denials contained in the preceding paragraphs relating to having breached any obligation with Mr. Goldman.

## Affirmative Defenses

1.     The Amended Counter claim is time barred by the applicable statute of limitations.

2.      Mr. Goldman is estopped from his own actions to claim the *Option to Purchase Agreement* is null and void.

3.      Mr. Goldman incurred in fraud and illegal appropriation because he accepted the $800,000 earnest money deposit, kept it for himself and represented to all involved that the *Option to Purchase Agreement* was still on while knowing the Agreement had expired and while having no intentions of complying with its terms.

4.      Mr. Goldman's claim is barred by the doctrine of res judicata.

5.      Mr. Goldman has come before this Honorable Court with unclean hands.

6.      Mr. Goldman's breach of his contractual obligations were due solely to his greed and bad faith through the process.

7.      Any alleged damages claimed by Mr. Goldman were self-inflicted.

8.       The Grzan-Khimani reserve the right to raise any other defense once known during the discovery process.

**Wherefore**, the Grzan-Khimani respectfully request from this Honorable Court to dismiss with prejudice the Amended Counterclaim filed by Mr. Goldman and impose upon him payment of costs and attorney's fees for filing a shameless frivolous counterclaim and joinder of parties.

**Respectfully Submitted.**

In San Juan, Puerto Rico, this 23rd day of August 2021.

**I hereby certify** that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notice of its filing electronically to the attorneys of record.

**Héctor Eduardo Pedrosa Luna, Esq.**
P.O. Box 9023963
San Juan, PR 00902-3963
Tel. 787-920-7983
Fax 787-754-1109

s/*Héctor Eduardo Pedrosa Luna*
**Héctor Eduardo Pedrosa Luna**
USDPR NO. 223202
hectorpedrosa@gmail.com